**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STUART KROHNENGOLD,

                  Plaintiff,

    v.                                                            Case No. 1:21-cv-01778

NEW YORK LIFE INSURANCE CO., et al.

                Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 2

I.     The NY Life Retirement Plans.............................................................................. 2

II.    Plaintiff Krohnengold ......................................................................................... 4

III.   The Complaint's Allegations ............................................................................... 5

ARGUMENT .................................................................................................................... 5

I.     Plaintiff Lacks Standing to Bring Most of His Claims. ......................................... 5

    A.   Plaintiff Lacks Standing to Sue Regarding the APSI Plan. .................................... 6

    B.   Plaintiff Lacks Standing to Challenge the Fixed Dollar Account as a
        Default Investment Option................................................................................... 7

    C.   Plaintiff Lacks Standing to Sue Regarding the Small Cap Fund. ............................ 8

    D.   Plaintiff Cannot Bootstrap Standing through Class Allegations.............................. 9

II.    Count I Does Not State a Claim for Fiduciary Breach. ......................................... 10

    A.   The Plans' Use of Proprietary Funds Does Not Give Rise to a Reasonable
        Inference of Fiduciary Breach. ........................................................................... 12

    B.   The Plans' Use of the Fixed Dollar Account as a Default Investment
        Option Does Not Give Rise to a Reasonable Inference of Fiduciary
        Breach. .............................................................................................................. 13

        1.   Plaintiff cannot use ERISA's safe harbor provision as a sword. .............. 13

        2.   Plaintiff only compares the Fixed Dollar Account to inapt
            comparators....................................................................................... 14

    C.   The Plans' Use of the MainStay Funds Does Not Give Rise to a
        Reasonable Inference of Fiduciary Breach. ......................................................... 17

        1.   Plaintiff's allegations that the MainStay Funds underperformed
            comparators fail. ............................................................................... 17

        2.   Plaintiff's allegations that the MainStay Funds had higher fees than
            comparators fail. ............................................................................... 19

III.   The Prohibited Transaction Claims (Counts II and III) Fail as a Matter of Law.............. 20

    A.   Offering the Fixed Dollar Account and MainStay Funds Is Exempt from
        ERISA's Prohibited Transaction Provisions........................................................ 21

    B.   The Complaint Fails to Otherwise Plead Self-Dealing......................................... 22

IV.    Count IV Fails Because Plaintiff Has Not Pled Antecedent Breaches. ............................ 23

V.     Count V Fails to State a Claim for Violation of ERISA's Anti-Inurement Provision....... 23

CONCLUSION................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                 **Page(s)**

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
    821 F.3d 352 (2d. Cir. 2016)............................................................................................6

*Anderson v. Intel Corp.*,
    No. 19-04618, 2021 WL 229235 (N.D. Cal. Jan. 21, 2021)....................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................13

*Austin v. Union Bond & Tr. Co.*,
    No. 14-00706, 2014 WL 7359058 (D. Or. Dec. 23, 2014)................................15, 17

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
    756 F. Supp. 2d 330 (S.D.N.Y. 2010)................................................................3, 16

*Bekker v. Neuberger Berman Grp. LLC*,
    No. 16-6123, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) ......................12, 15, 16

*In re Citigroup ERISA Litig.*,
    104 F. Supp. 3d 599 (S.D.N.Y. 2015)....................................................................23

*Conn. v. Physicians Health Servs. of Conn., Inc.*,
    287 F.3d 110 (2d Cir. 2002)..................................................................................6, 7

*Davis v. Wash. Univ. in St. Louis*,
    960 F.3d 478 (8th Cir. 2020) ..................................................................................16

*Dezelan v. Voya Ret. Ins. and Annuity Co.*,
    No. 16-1251, 2017 WL 2909714 (D. Conn. July 6, 2017) ......................6, 10, 15, 17

*Dole v. United Steelworkers of Am.*,
    494 U.S. 26 (1990)..................................................................................................24

*Donovan v. Bierwirth*,
    680 F.2d 263 (2d Cir. 1982)...................................................................................22

*Dorman v. Charles Schwab Corp.*,
    No. 17-000285, 2019 WL 580785 (N.D. Cal. Feb. 8, 2019) ...................................19

*Dupree v. Prudential Ins. Co. of Am.*,
    No. 99-8837, 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) ...............12, 21, 22, 24

*F.W. Webb Co. v. State St. Bank & Tr. Co.*,
    No. 09-1241, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010)...................................13

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ............................................................................................11, 17

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
  463 U.S. 1 (1983) .............................................................................................................7

*Greater Blouse, Skirt & Undergarment Ass'n, Inc. v. Morris*,
  No. 93-1257, 1996 WL 180019 (S.D.N.Y. Apr. 16, 1996) ......................................22

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ......................................................................................19

*Johnson v. Delta Air Lines, Inc.*,
  No. 17-2608, 2017 WL 10378320 (N.D. Ga. Dec. 12, 2017)......................................9

*Kendall v. Emps. Ret. Plan of Avon Prod.*,
  561 F.3d 112 (2d Cir. 2009)...........................................................................................8

*Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*,
  95 F. Supp. 3d 402 (S.D.N.Y. 2015) .............................................................................3

*Leber v. Citigroup, Inc.*,
  No. 07-9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010).........................20, 21, 22

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).........................................................................................................8

*Majad ex rel. Nokia Ret. Savs. & Inv. Plan v. Nokia, Inc.*,
  528 F. App'x 52 (2d Cir. 2013) ...................................................................................23

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) .......................................................................14, 15, 19

*Morrison v. Nat'l Austl. Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008).........................................................................................4

*Nachman Corp. v. Pension Ben. Guar. Corp.*,
  446 U.S. 359 (1980).....................................................................................................25

*NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*,
  60 F. Supp. 2d 194 (S.D.N.Y. 1999).........................................................................24

*Ortiz v. Am. Airlines, Inc.*,
  No. 16-151, 2016 WL 8678361 (N.D. Tex. Nov. 18, 2016)...................................17

*Patterson v. Capital Grp. Cos.*,
  No. 17-4399, 2018 WL 748104 (C.D. Cal. Jan. 23, 2018)......................................22

*Patterson v. Morgan Stanley*,
　　No. 16-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)..........................9, 10, 18, 19, 20, 22

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
Morgan Stanley Inv. Mgmt. Inc.*,
　　712 F.3d 705 (2d Cir. 2013)..........................................................................................10, 11

*Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank
of N.Y. Mellon*,
　　775 F.3d 154 (2d Cir. 2014)..................................................................................................9

*Rozo v. Principal Life Ins., Co.*,
　　No. 14-00463, 2021 WL 1837539 (S.D. Iowa April 8, 2021)..........................................15, 17

*Sandoval v. Exela Enter. Sols., Inc.*,
　　No. 17-01573, 2020 WL 9259108 (D. Conn. Mar. 30, 2020) .................................................17

*In re SLM Corp. ERISA Litig.*,
　　No. 08-4334, 2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010) ...........................................7, 10

*Steger v. Franco, Inc.*,
　　228 F.3d 889 (8th Cir. 2000) ...............................................................................................8

*Taveras v. UBS AG*,
　　612 F. App'x 27 (2d Cir. 2015) ............................................................................................8

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
　　484 U.S. 365 (1988)..........................................................................................................24

*Wehner v. Genentech, Inc.*,
　　No. 20-06894, 2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ..................................................19

*White v. Chevron Corp.*,
　　No. 16-0793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ..........................................11, 13

*White v. Chevron Corp.*,
　　No. 16-0793, 2017 WL 2352137 (N.D. Cal. May 31, 2017)..................................................20

*Wilcox v. Georgetown Univ.*,
　　No. 18-422, 2019 WL 132281 (D.D.C. Jan. 8, 2019)............................................................9

**Statutes**

29 U.S.C. § 1103(c)(1) (ERISA § 403(c)(1)) ................................................................5, 23, 24, 25

29 U.S.C. § 1103(c)(2)(A) (ERISA § 403(c)(2)(A)) ....................................................................24

29 U.S.C. § 1103(c)(3) (ERISA § 403(c)(3)) ..............................................................................24

iv

29 U.S.C. § 1104(a) (ERISA § 404(a))........................................................................13

29 U.S.C. § 1104(a)(1)(A) (ERISA § 404(a)(1)(A)) .....................................................5

29 U.S.C. § 1104(a)(1)(B) (ERISA § 404(a)(1)(B)).......................................................5

29 U.S.C. § 1104(c) (ERISA § 404(c))........................................................................13

29 U.S.C. § 1105(a) (ERISA § 405(a))...................................................................5, 23

29 U.S.C. § 1106(a) (ERISA § 406(a))...................................................................5, 20

29 U.S.C. § 1106(b) (ERISA § 406(b)) .............................................................5, 20, 22

29 U.S.C. § 1108(b)(4) (ERISA § 408(b)(4))...............................................................25

29 U.S.C. § 1108(b)(5) (ERISA § 408(b)(5)).................................................12, 21, 25

29 U.S.C. § 1108(c)(2) (ERISA § 408(c)(2))................................................................25

29 U.S.C. § 1108(c)(3) (ERISA § 408(c)(3))................................................................22

29 U.S.C. § 1132(a)(2) (ERISA §§ 502(a)(2)) ......................................................5, 6, 7

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) ........................................................5, 6, 7

29 U.S.C. § 1132(d) (ERISA § 502(d)) ..........................................................................3

**Other Authorities**

29 C.F.R. § 2550.404c-5(a)(2) (2008) ........................................................................14

Class Exemption Involving Mutual Fund In-House Plans Requested by the
    Investment Company Institute, 42 Fed. Reg. 18734, 18735 (Mar. 31, 1977). .................12, 22

Default Investment Alternatives Under Participant Directed Individual Account
    Plans, 72 Fed. Reg. 60452-01 (Oct. 24, 2007)...................................................2, 14

H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N.
    5038..............................................................................................12, 20, 24, 25

Notice of Proposed Rule-Making, Participant Directed Individual Account Plans,
    56 Fed. Reg. 10724, 10730 (Mar. 13, 1991)...........................................................12

## INTRODUCTION

Plaintiff's Complaint should be dismissed.  In 47 pages of pleading, Plaintiff unremarkably demonstrates that a stable value fund performs differently from balanced and target date funds that invest in stocks and bonds.  That does not support a claim under any law, let alone the one he claims is violated, the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  The stable value fund at issue, the Fixed Dollar Account, is one of only four funds Plaintiff challenges out of over two dozen investment options from which participants may choose under two separate retirement plans sponsored by New York Life Insurance Company ("NY Life"), one for employees and one for agents.[1]  Plaintiff asserts that the Fixed Dollar Account had returns of between 4.28% and 5.05% each year—returns that far exceed returns for stable value funds as recognized in courts across the country.  And he asks the Court to find that these facts—coupled with the common practice, expressly authorized by law, of an insurance company offering its own funds for its own employees' 401(k) plans—plausibly infer a deficient fiduciary process in overseeing the Plans.  Adding all of these pieces together, the Complaint does not state a claim, and is precisely the type of pleading that the Court should weed out at the motion to dismiss stage.

Even before the Court looks at the merits of the claims, many should be dismissed for lack of standing.  First, Plaintiff challenges the use of the Fixed Dollar Account as a default investment (for participants who did not affirmatively select their investments), but Plaintiff himself was never defaulted into the Fixed Dollar Account—he affirmatively selected it and, thus, cannot claim to have been injured by that default mechanism.  Second, Plaintiff challenges

---

[1] The "Plans" are the New York Life Insurance Employee Progress Sharing Investment Plan ("EPSI Plan") and the New York Life Insurance Company Agents Progress Sharing Investment Plan ("APSI Plan") (each a "Plan").  The other funds are: MainStay Income Builder Fund ("Income Builder Fund"), MainStay Epoch U.S. All Cap Fund ("All Cap Fund"), and MainStay Epoch U.S. Small Cap Fund ("Small Cap Fund") (collectively, the "MainStay Funds").

the investment options offered in the APSI Plan, the plan for agents, but Plaintiff was not an

agent, did not participate in that Plan, and therefore cannot claim to have been injured by those

options.  Third, he challenges the Plans' inclusion of the Small Cap Fund as an investment

option, but he did not invest in that option and, thus, cannot claim to have been injured by it.

Plaintiff's claims also fail on the merits.  Plaintiff's fiduciary duty claim (Count I) fails

because the use of affiliated fund options has been expressly permitted by Congress and the U.S.

Department of Labor (the "DOL").  Moreover, its challenges to the use of the Fixed Dollar

Account as the Plans' default investment option fail in part because the regulatory preamble

Plaintiff relies on expressly allows companies like NY Life to "conclude that a stable value

product or fund is an ***appropriate default investment*** for their employees and use such product or

fund for contributions on behalf of defaulted employees . . . ."[2]  Count I further fails because

Plaintiff relies on apples-to-oranges comparisons and distorted performance measurements in an

attempt to establish a claim as to both the Fixed Dollar Account and MainStay Funds.

Additionally, Plaintiff's prohibited transaction claims (Counts II-III) fail because the alleged

transactions either do not constitute a prohibited transaction or are covered by relevant

exemptions allowing for in-house management of plan assets.  His co-fiduciary liability claim

(Count IV) fails because he cannot plead an underlying fiduciary breach.  Finally, his anti-

inurement claim (Count V) fails because it misinterprets ERISA's anti-inurement provision.

For these and the other reasons set forth below, the Complaint should be dismissed.

## **BACKGROUND**

I.      **The NY Life Retirement Plans**

NY Life sponsors two defined contribution plans that serve different constituents:  the

---

[2] Default Investment Alternatives Under Participant Directed Individual Account Plans, 72 Fed. Reg. 60452-01, 60464 (Oct. 24, 2007) (emphasis added).

APSI Plan is offered to eligible full-time insurance agents, and the EPSI Plan is offered to eligible employees.[3]  Individuals may not participate in both Plans at the same time—should an employee become an agent or vice versa, the participant's account balance will be transferred from his current Plan to the other one.[4]

The Plans are separate legal entities.  *See* ERISA § 502(d), 29 U.S.C. § 1132(d).  They have separate governing Plan Documents, setting forth different rules.[5]  For example, the EPSI Plan currently enrolls employees automatically and provides that a portion of their compensation shall be invested in the EPSI Plan's default investment option, unless the individual selects another option.[6]  By contrast, the APSI Plan has no automatic enrollment feature.[7]

Each Plan's investment options as of the end of 2019, the most recent year such information was filed, consisted of a broad array of twenty-four mutual funds and the Fixed Dollar Account, a stable value fund.[8]  Of these twenty-five investments, only four (15%) were managed by NY Life or its affiliates, including their MainStay funds, and the remaining twenty-two investments (85%) were managed by a variety of third parties, including Vanguard, Fidelity, and Blackrock.[9]  Participants in each Plan were free to choose among any of these options.[10]

During the putative class period, the Plans' fiduciaries have increased participants' ability to utilize investment management from external sources, increasing the number of externally

---

[3] *See* EPSI Plan 2019 Form 5500 at MTD365, Declaration of Dave Rosenberg ("Rosenberg Decl.") Ex. 3; APSI Plan 2019 Form 5500 at MTD369, *id.* Ex. 4. Courts may consider publicly-filed documents like the Forms 5500 and fund prospectuses and summary prospectuses (*see, e.g.*, *infra* notes 12, 28) on a motion to dismiss, particularly where Plaintiff relied on them in bringing suit.  *See In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 756 F. Supp. 2d 330, 344-45 (S.D.N.Y. 2010); *see also* Compl. ¶¶ 99-102 (allegations based on summary prospectuses).
[4] EPSI Plan governing document ("Plan Document") at MTD034-35, Rosenberg Decl. Ex. 1; APSI Plan Document at MTD247-48, Rosenberg Decl. Ex. 2.  Courts may consider governing plan documents on a motion to dismiss. *See Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 408 (S.D.N.Y. 2015).
[5] *See generally* EPSI Plan Document, Rosenberg Decl. Ex. 1; APSI Plan Document, Rosenberg Decl. Ex. 2.
[6] EPSI Plan Document at MTD036, 61-62, Rosenberg Decl. Ex. 1.
[7] *See generally* APSI Plan Document, Rosenberg Decl. Ex. 2.
[8] *See* Master Trust 2019 Form 5500 at MTD373-75, Rosenberg Decl. Ex. 5.
[9] *Id.*
[10] EPSI Plan Document at MTD063-65, Rosenberg Decl. Ex. 1; APSI Plan Document at MTD272-74, *id.* Ex. 2.

managed funds available in the Plans from four as of year-end 2015, to twenty-one as of year-end 2019.[11]  During that same time, the Plans have removed eight proprietary and one external fund, and have added nineteen external funds and no proprietary options.[12]  Throughout the putative class period, the Plans' fiduciaries have utilized the services of a third-party investment consultant, paid for by NY Life, in fulfilling their duties.[13]

Participants who enroll in the Plans, voluntarily or through automatic enrollment, but choose to not select particular investment options have their contributions invested into the Plans' default investment option, the Fixed Dollar Account.[14]  The Fixed Dollar Account is a stable value fund.  Compl. ¶¶ 39, 72, 81, 86.  Its returns have varied between 4.28% to 5.05% from 2015 to 2020.  *Id.* ¶ 87.

## II.    <u>Plaintiff Krohnengold</u>

Plaintiff Krohnengold has participated in the EPSI Plan since June 1989 and has never participated in the APSI Plan.[15]  He began participating in the EPSI Plan by his own choice, not through automatic enrollment.[16]  Further, Mr. Krohnengold affirmatively chose to invest in the Fixed Dollar Account throughout the entire putative class period.[17]  He was not invested in the Fixed Dollar Account by operation of the EPSI Plan's default investment option provisions.[18]  Of

---

[11] EPSI 2015 Form 5500 at MTD412-14, Rosenberg Decl. Ex. 12; APSI 2015 Form 5500 at MTD417-19, *id.* Ex. 13; Master Trust 2019 Form 5500 at MTD373-75, *id.* Ex. 5.

[12] EPSI 2015 Form 5500 at MTD412-14, Rosenberg Decl. Ex. 12; APSI 2015 Form 5500 at MTD417-19, *id.* Ex. 13; EPSI 2016 Form 5500 at MTD402-04, *id.* Ex. 10; APSI 2016 Form 5500 at MTD407-09, *id.* Ex. 11; EPSI 2017 Form 5500 at MTD393-95, *id.* Ex. 8; APSI 2017 Form 5500 at MTD399, *id.* Ex. 9; EPSI 2018 Form 5500 at MTD381-83, *id.* Ex. 6; APSI 2018 Form 5500 at MTD388-90, *id.* Ex. 7; Master Trust 2019 Form 5500 at MTD373-75, *id.* Ex. 5.

[13] *See* EPSI 2018 Form 5500 at MTD379, Rosenberg Decl. Ex. 6; APSI 2018 Form 5500 at MTD386, *id.* Ex. 7.

[14] *See* EPSI Plan Document at MTD022, Rosenberg Decl. Ex. 1; APSI Plan Document at MTD233, *id.* Ex. 2.

[15] Decl. of Maria Mauceri ("Mauceri Decl.") ¶¶ 3-5; Compl. ¶ 13.  Defendants submit the Mauceri Declaration in furtherance of their Rule 12(b)(1) arguments.  "In resolving a motion to dismiss . . . under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

[16] Mauceri Decl. ¶ 3.

[17] *Id.* ¶¶ 6-7.

[18] *Id.* ¶ 7.

the remaining funds about which he complains, he has invested in the Income Builder Fund and

All Cap Fund during the putative class period, but not in the Small Cap Fund.[19]

## III.    The Complaint's Allegations

Plaintiff's claims relate to only four of the dozens of investment options from which the

Plans' participants could choose during the putative class period, namely, the Fixed Dollar

Account and three MainStay Funds.  *See* Compl. ¶¶ 4-5.  Count I alleges that the Plans'

fiduciaries breached their duties of loyalty and prudence under ERISA §§ 404(a)(1)(A) and (B),

29 U.S.C. §§ 1104(a)(1)(A) and (B), by maintaining the Fixed Dollar Account as the Plans'

default investment option and by maintaining the MainStay Funds as investment options.  *See id.*

¶¶ 4, 5, 69, 87-88, 92, 134.  Counts II and III allege that these same decisions caused the Plans'

fiduciaries to engage in prohibited transactions under ERISA §§ 406(a) and (b), 29 U.S.C.

§§ 1106(a) and (b).  *See id.* ¶¶ 145, 156.  The Complaint additionally alleges other prohibited

transactions under ERISA § 406(b) (Count III), that NY Life violated ERISA § 405(a), 29 U.S.C.

§ 1105(a), by knowingly participating in co-fiduciaries' breaches (Count IV), and that

Defendants violated ERISA's anti-inurement provision (Count V), ERISA § 403(c)(1), 29 U.S.C.

§ 1103(c)(1).  *See id.* ¶¶ 151-78.  Plaintiff has sued NY Life, the Board of Trustees of the Plans,

and the individual members of that board, under ERISA §§ 502(a)(2)-(3), 29 U.S.C. §§ 1132(a)-

(3).  *Id.* ¶ 160.  Plaintiff seeks to represent a class of all participants in the Plans that invested in

the MainStay Funds or Fixed Dollar Account since March 2, 2015.  *Id.* ¶ 121.

## ARGUMENT

## I.    Plaintiff Lacks Standing to Bring Most of His Claims.

To avoid dismissal under Rule 12(b)(1), a plaintiff must establish both constitutional

---

[19] *Id.* ¶ 6.

standing and that he has a cause of action that enables him to bring each of his claims (which was formerly known as "prudential" or "statutory" standing).  *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358-59 (2d. Cir. 2016).  Constitutional standing requires that a plaintiff demonstrate that he has "[1] suffered an 'injury of fact' . . . (2) that there is a 'causal connection between the injury and the conduct' of which the plaintiff complains; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision."  *Id.* at 358 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Plaintiff sues under ERISA §§ 502(a)(2)-(3), which provide causes of action only to the Secretary of the DOL or to "a participant, beneficiary or fiduciary" of the plan in question.

Here, Plaintiff has neither constitutional standing nor an ERISA cause of action to assert claims regarding the APSI Plan because he never participated in that Plan.  He further lacks constitutional standing to assert claims (i) that the Fixed Dollar Account was an improper default investment option because he affirmatively chose to invest in that investment option, and (ii) regarding the Small Cap Fund, because he did not invest in it during the putative class period.

### A.    Plaintiff Lacks Standing to Sue Regarding the APSI Plan.

Plaintiff seeks to assert claims related to the APSI Plan, a separate legal entity from the EPSI Plan in which he never participated.  *Supra* p. 3.  He lacks standing to assert these claims.

***First***, Plaintiff lacks constitutional standing.  He cannot, and has not, alleged how he was injured by alleged mismanagement of the APSI Plan where he was not a participant in that Plan. *See Dezelan v. Voya Ret. Ins. and Annuity Co.*, No. 16-1251, 2017 WL 2909714, at *6 (D. Conn. July 6, 2017) (dismissing claim on standing grounds).  He additionally lacks standing because "[n]one of the remedies being sought [in connection with claims regarding the APSI Plan] would flow to" him.  *Conn. v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 118 (2d Cir. 2002) (affirming decision that the plaintiff lacked standing).  Here, Plaintiff requests that, in the event

6

of a favorable judgment, losses incurred by the APSI Plan or its participants be paid to the APSI Plan and then presumably to its participants.  *See* Compl. at Prayer for Relief ¶¶ 4-5, 7.  Judge Pauley held, in a similar situation, that plaintiffs who were not participants in the plan in question lacked constitutional standing to sue regarding that plan because "[i]f the finder of fact were ultimately to conclude that participants in the [plan] were entitled to recover the remedy sought here—repayment of losses—that recovery would flow to participants of the [plan], not [plaintiffs]."  *In re SLM Corp. ERISA Litig.*, No. 08-4334, 2010 WL 3910566, at *12 (S.D.N.Y. Sept. 24, 2010).  The same is true here.

*Second*, ERISA does not provide Plaintiff a cause of action to assert claims regarding or on behalf of the APSI Plan where he was not "a participant, beneficiary, or fiduciary" of that plan.  29 U.S.C. §§ 1132(a)-(3).  Those sections "carefully enumerate[] the parties entitled to seek relief" and "do[] not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action."  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27 (1983) (interpreting ERISA § 502(a)(3)).  Therefore, "parties other than those explicitly named therein—plan participants, beneficiaries, and fiduciaries—may not bring suit."  *Phys. Health Servs.*, 287 F.3d at 112, 120-21 (affirming dismissal).  Because "Plaintiff[] do[es] not claim to be [a] participant[], beneficiar[y], or fiduciar[y]" of the APSI Plan, he lacks a cause of action to bring claims regarding or on behalf of that Plan, and those claims must be dismissed.  *In re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *12 (dismissing claims and interpreting the issue as one of statutory standing).

### B.    Plaintiff Lacks Standing to Challenge the Fixed Dollar Account as a Default Investment Option.

Plaintiff alleges that the Fixed Dollar Account is an imprudent default investment and that any injury sustained by investors in that fund were due to its use as a default investment.

*See* Compl. ¶¶ 69, 87-88, 134.  Plaintiff lacks standing to bring these claims because he was not defaulted into that fund; instead, he affirmatively chose to invest his EPSI Plan account into the Fixed Dollar Account and therefore could not have suffered the injury alleged.  *Supra* pp. 4-5.

To show an injury-in-fact, a plaintiff must "be himself among the injured."  *Lujan*, 504 U.S. at 563 (internal quotations omitted).  Therefore, "[a]n ERISA plan participant lacks standing to sue for ERISA violations that [allegedly] cause injury to a plan but not individualized injury to the plan participant."  *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) (affirming dismissal on standing grounds).  The Second Circuit explains that ERISA plan participants may not sue regarding provisions of their plans that do not impact them because ERISA "does not confer a right to every plan participant to sue the plan fiduciary for alleged ERISA violations without a showing that they were injured by the alleged breach of the duty." *Kendall v. Emps. Ret. Plan of Avon Prod.*, 561 F.3d 112, 117, 121 (2d Cir. 2009) (citing *Flanigan v. Gen. Elec. Co.,* 242 F.3d 78, 85–86 (2d Cir. 2001)), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).[20]

Because Plaintiff chose to invest in the Fixed Dollar Account, the Plans' use of the Fixed Dollar Account as a default investment option could not have injured him, and, thus, he lacks standing to sue regarding that aspect of the Plans.  *See, e.g.*, *Kendall*, 561 F.3d at 121.

C.     **Plaintiff Lacks Standing to Sue Regarding the Small Cap Fund.**

Further, Plaintiff did not invest in the Small Cap Fund during the putative class period (*supra* pp. 4-5), and he therefore lacks standing to sue regarding that fund.  Courts have repeatedly dismissed ERISA claims on the grounds that the plaintiffs lacked standing to sue

---

[20] These decisions are in accord with decisions from outside the ERISA context holding that plaintiffs lack standing to bring claims where the challenged practice may have affected others but did not affect them.  *See, e.g.*, *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000) (affirming dismissal of Americans with Disabilities Act claims regarding barriers to accessing a building where the plaintiffs had not attempted to access that building).

regarding investment options in which they chose not to invest.  For example, in a similar lawsuit challenging proprietary investments made available in a 401(k) plan, Judge Sullivan recently dismissed claims regarding options in which the named plaintiffs did not invest, reasoning that "[l]osses incurred by funds in which [p]laintiffs did not invest cannot have impaired the value of [p]laintiffs' individual accounts" and therefore "[p]laintiffs have not been injured as to those funds."  *Patterson v. Morgan Stanley*, No. 16-6568, 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019).  Courts around the country have dismissed similar claims as those presented here for that same reason.[21]  Therefore, Plaintiff's claim as to the Small Cap Fund should be dismissed.  *See Patterson*, 2019 WL 4934834, at *5.

### D.     Plaintiff Cannot Bootstrap Standing through Class Allegations.

Plaintiff's class allegations do not allow him to avoid a standing inquiry.  *See* Compl. ¶ 121.  Class standing requires that Plaintiff demonstrate that the only conduct from which he has allegedly suffered actual personal injury here, the EPSI's use of the Income Builder Fund and All Cap Fund, "implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class[;]" in other words, that the claims to which he has standing and the ones asserted on behalf of others require similar proof.  *Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 161-62 (2d Cir. 2014) (internal quotations omitted).

The challenges to the use of the Fixed Dollar Account as the default investment option or to the Small Cap Fund do not require similar proof as the claims regarding the Income Builder

---

[21] *See, e.g.*, *Wilcox v. Georgetown Univ.*, Civ. A. No. 18-422, 2019 WL 132281, at *9 (D.D.C. Jan. 8, 2019) ("Plaintiffs clearly cannot allege an individual violation of ERISA as to the Vanguard funds, which is an investment option neither Plaintiff selected."); *Johnson v. Delta Air Lines, Inc.*, No. 17-2608, 2017 WL 10378320, at *2 (N.D. Ga. Dec. 12, 2017) (dismissing claims where "[p]laintiffs have not alleged that they were invested in the criticized funds or paid the allegedly excessive fees").

Fund and All Cap Fund because "liability will vary from fund to fund, and Plaintiff['s] ability to establish liability as to decisions made in connection with one fund will do little to advance [his] case for liability as to other[s]." *Patterson*, 2019 WL 4934834, at *6 (finding no class standing in a similar case); *see also Dezelan*, 2017 WL 2909714, at *8 (plaintiff lacked class standing to sue under ERISA regarding investments she did not own). Nor will challenges on behalf of ASPI Plan participants require similar proof as those on behalf of ESPI Plan participants, as the former is constituted differently from the latter in material ways, including as to the use of automatic enrollment and therefore the use of the Fixed Dollar Account for participants enrolled that way. *Supra* p. 3; *see In re SLM Corp. ERISA Litig.*, 2010 WL 3910566, at *12 (plan's participants lacked standing to bring class action on behalf of participants of another).[22]

*    *    *

Not only does Plaintiff lack standing for the majority of his claims, but each count of the Complaint itself fails to state a claim and should be dismissed for that reason as well.

## II.   <u>Count I Does Not State a Claim for Fiduciary Breach.</u>

Count I should be dismissed because it does not plausibly allege that Defendants engaged in a disloyal or imprudent process. To withstand a motion to dismiss, "the complaint must demonstrate more than a sheer possibility that a defendant has acted unlawfully." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*PBGC*"), 712 F.3d 705, 718 (2d Cir. 2013). The complaint must allege "*nonconclusory* factual content raising a *plausible* inference of misconduct" and must not rely on "the vantage point of hindsight." *Id.* (emphasis in original). "[I]f the complaint relies on circumstantial factual

---

[22] Relatedly, Plaintiff cannot pursue these claims derivatively; "[t]he mere fact that Plaintiff[] purport[s] to bring this action in a derivative capacity does not absolve [him] of the need to establish" constitutional standing or a cause of action. *Patterson*, 2019 WL 4934834, at *5.

allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a '*reasonable* inference' that the defendant committed the alleged misconduct, thus permit[ting] the court to infer more than the *mere possibility* of misconduct[.]" *Id.* at 718-19 (same).

Here, the Complaint contains only conclusory allegations regarding the Plan fiduciaries' processes. In this event, it can only survive if the circumstantial facts alleged plausibly give rise to a reasonable inference that fiduciaries lacked an adequate process. *PBGC*, 712 F.3d at 716. In this analysis, a fiduciary's decisions cannot be judged from the "vantage point of hindsight" given the inherent uncertainty of investment performance in ever-changing markets. *Id.* at 718. Because fiduciaries are judged by their decision-making process, the test for whether one satisfied ERISA's fiduciary duties is one of "conduct," and not the "results" of investment performance. *Id.* at 716 (internal quotations omitted). That means that ERISA plaintiffs cannot plead a fiduciary breach by simply alleging "that [p]lan participants would have done better in alternative investments" that were not offered through the plan. *White v. Chevron Corp.*, No. 16-0793, 2016 WL 4502808, at *18 (N.D. Cal. Aug. 29, 2016).

The Court's inquiry at this stage is necessarily rigorous. The Supreme Court instructs that "careful, context-sensitive scrutiny of a complaint's allegations," through a motion to dismiss, is the appropriate way to accomplish the "important task" of "divid[ing] the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). This is necessary because the motion to dismiss is an "important mechanism for weeding out meritless [ERISA] claims." *Id.* at 425-26. Absent careful scrutiny, there is a serious risk that a "plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *PBGC*, 712 F.3d at 719 (alteration in original and citation omitted).

11

A.       **The Plans' Use of Proprietary Funds Does Not Give Rise to a Reasonable Inference of Fiduciary Breach.**

The allegation that the Plans offered at least four NY Life-affiliated investment options—along with many other, third party options—does not support a reasonable inference of a deficient fiduciary process.  Congress and the DOL have recognized that it is "common practice" for financial services companies to offer participants the opportunity to invest in their employers' investment funds.[23]  Both have created exemptions that expressly allow the use of proprietary investments, including Prohibited Transaction Exemption ("PTE") 77-3 (mutual funds)[24] and ERISA § 408(b)(5), 29 U.S.C. § 1108(b)(5) (certain insurance products).  Thus, it is well established that using proprietary funds does not "give rise to an inference of" wrongdoing. *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8837, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 7, 2007) (using proprietary funds is virtually "universal").  Because "sponsor-affiliated funds are permitted under ERISA[,]" allegations regarding use of proprietary investments "do not, standing alone, support an inference that a defendant breached its fiduciary duties by including such a fund as an investment option . . . ." *Bekker v. Neuberger Berman Grp. LLC*, No. 16-6123, 2018 WL 4636841, at *6 (S.D.N.Y. Sept. 27, 2018) (dismissing breach claim).

Even if an inference of impropriety could be raised generally from using proprietary funds—which it cannot—such inference is unwarranted here because the number of proprietary investment options offered under the Plans has ***decreased*** over the putative class period, with the Plans replacing proprietary investments with non-proprietary ones. *Supra* pp. 3-4.  These changes to the Plans' lineups "support[] the inference that the fiduciaries were monitoring the

---

[23] H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5096; *accord* Notice of Proposed Rule-Making, Participant Directed Individual Account Plans, 56 Fed. Reg. 10724, 10730 (Mar. 13, 1991).
[24] Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment Company Institute, 42 Fed. Reg. 18734, 18735 (Mar. 31, 1977).

investment options[,]" and not the inference Plaintiff asks the Court to draw that the Plans' fiduciaries were improperly managing the Plans. *White*, 2016 WL 4502808, at *11 (dismissing claims). These changes and the Plans' fiduciaries use of a third-party investment consultant also refute Plaintiff's theory that Defendants were using the Plans to enrich NY Life. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (court may draw on its "common sense").

### B. The Plans' Use of the Fixed Dollar Account as a Default Investment Option Does Not Give Rise to a Reasonable Inference of Fiduciary Breach.

#### 1. *Plaintiff cannot use ERISA's safe harbor provision as a sword.*

Use of the Fixed Dollar Account as the default investment option does not give rise to a plausible inference of breach. Plaintiff argues that because the DOL did not include stable value funds as a qualified default investment alternative ("QDIA"), they cannot be used as a default option. Compl. ¶¶ 33-41, 81-84, 86, 88, 134. But Plaintiff cites no basis for requiring a default option to satisfy the QDIA safe harbor; instead, he assumes impropriety from it being outside the safe harbor. Plaintiff erroneously misconstrues a narrow shield, seeking to turn it into a broad sword. In doing so, he fails to state a valid basis to support an inference of fiduciary breach.

***First***, whether the Fixed Dollar Account does or does not satisfy ERISA § 404(c), 29 U.S.C. § 1104(c), is not dispositive of the issue of fiduciary breach. ERISA § 404(c) "is simply a safe harbor provision that limits the liability of fiduciaries in some instances." *F.W. Webb Co. v. State St. Bank & Tr. Co.*, No. 09-1241, 2010 WL 3219284, at *14 (S.D.N.Y. Aug. 12, 2010); *accord* Compl. ¶¶ 33-35. ERISA § 404(c) does not set the bounds of permissible fiduciary behavior under § 404(a). Like here, plaintiffs in *F.W. Webb Co.* asserted that a defendant breached ERISA § 404(a) fiduciary duties because the challenged investment allegedly did not comply with § 404(c). 2010 WL 3219284, at *14. Then-Judge Holwell dismissed that claim, recognizing that "a person does not 'violate' ERISA by straying from 404(c)'s guidelines." *Id.*

13

(citing cases).  Plaintiff's claim here should be dismissed for that reason alone.

**Second**, stable value funds in particular are permissible default vehicles.  In the very regulatory preamble that Plaintiff quotes, the DOL stated that "fiduciaries may, without regard to this regulation, conclude that a stable value product or fund is an ***appropriate default investment*** for their employees and use such product or fund for contributions on behalf of defaulted employees after the effective date of this regulation."  72 Fed. Reg. at 60464 (emphasis added); *see* Compl. ¶ 86.  The DOL expressly cautioned against using this regulation, precisely as Plaintiff does, for purposes other than identifying QDIAs, stating that

> [t]he standards set forth in this section apply ***solely*** for the purposes of determining whether a fiduciary meets the requirements of this regulation.  Such standards are not intended to be the exclusive means by which a fiduciary might satisfy his or her responsibilities under [ERISA] with respect to the investment of assets in the individual account of a participant or beneficiary.

29 C.F.R. § 2550.404c-5(a)(2) (2008) (emphasis added).

> 2.   *Plaintiff only compares the Fixed Dollar Account to inapt comparators.*

Plaintiff also asserts that using the Fixed Dollar Account as a default investment was disloyal and imprudent because, over some periods in the past six years, that fund underperformed two funds and one index Plaintiff hand-picked:  the Vanguard Target Retirement Plus target-date funds (the "TDFs"), the Vanguard Balanced Index Fund ("Balanced Fund"), and the Bloomberg Barclays U.S. 5-10 Yr. Government/Credit Float Adjusted Index (the "Bond Index").  Compl. ¶¶ 85, 87-88.  These allegations fail because Plaintiff does not and cannot plead that these funds or the index are appropriate comparators for the Fixed Dollar Account.

"To show that a prudent fiduciary . . . would have selected a different fund based on the . . . performance of the selected fund, a plaintiff must provide a sound basis for comparison—a meaningful benchmark."  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (internal quotations omitted).  Thus, Plaintiff must plead that the comparators "employ[] similar

operations or investment strategies" or other facts that would make the comparison "meaningful and plausibly suggestive of a fiduciary breach." *Bekker*, 2018 WL 4636841, at *7.  Plaintiff's failure to do so here is fatal:  "[t]he fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged fund was] an imprudent choice." *Meiners*, 898 F.3d at 823 (affirming dismissal of claims).

Stable value funds like the Fixed Dollar Account are low-risk investments that are "designed to minimize the impact of market fluctuations" while providing investors with a rate of return guaranteed in advance. *See Austin v. Union Bond & Tr. Co.*, No. 14-00706, 2014 WL 7359058, at *3 (D. Or. Dec. 23, 2014).  They are "safe, stable product[s] that preserve[] their capital and earn[] predictable returns, even if the rate of return is usually lower than other investment options available." *Rozo v. Principal Life Ins., Co.*, No. 14-00463, 2021 WL 1837539, at *2 (S.D. Iowa April 8, 2021), *appeal docketed*, No. 21-2026 (8th Cir. May 4, 2021). Because of their attractive qualities, stable value funds are "one of the most popular investment strategies for pension plans." *Dezelan*, 2017 WL 2909714, at *1 (internal quotations omitted).

Plaintiff does not, though, compare the Fixed Dollar Account's performance to that of other stable value funds, but rather to inapposite comparators.  These allegations fail.

***First***, Plaintiff compares the Fixed Dollar Account to the Balanced Fund and TDFs. Compl. ¶¶ 87-88.  These comparisons are wildly inappropriate.  To justify these comparisons, Plaintiff alleges only that "[t]hese . . . funds are appropriate comparators because they are widely used as plan options in defined contribution plans similar in size to the [Plans]." *Id.* ¶ 87, n. 5. Saying that apples and napkins are both widely stocked in grocery stores says nothing about whether they are appropriate comparators to each other.  And "simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks

against which to compare the performance of [the at-issue fund]." *Anderson v. Intel Corp.*, No. 19-04618, 2021 WL 229235, at *8 (N.D. Cal. Jan. 21, 2021).  Because Plaintiff does not plead any factual allegation that would establish that the Balanced Fund and TDFs are appropriate comparators to the Fixed Dollar Account, the allegations fail.  *See id.* (dismissing claim for this reason); *Bekker*, 2018 WL 4636841, at *7 (same).  Nor could Plaintiff so plead; neither investment offers a guaranteed rate of return like the Fixed Dollar Account.  Instead, they invest in both stocks and bonds and are designed to provide a return, positive or negative, similar to that of certain stock and bond indices.[25]  These investments therefore "have different aims, different risks, and different potential rewards that cater to different investors," than the Fixed Dollar Account and are inappropriate comparators for it.  *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (affirming dismissal of claim).[26]

**Second**, Plaintiff also compares the Fixed Dollar Account to the Bond Index.  Compl. ¶ 85.  Again, Plaintiff does not allege that the Bond Index is an appropriate comparator; in this instance, all he asserts is that it is a "commonly recognized intermediate investment grade bond index."  *See id.*  Because Plaintiff does not plead that the Fixed Dollar Account and Bond Index "employ[] similar operations or investment strategies," allegations that the Fixed Dollar Account underperformed the Bond Index are not "meaningful or suggestive of" fiduciary breach.  *See Bekker*, 2018 WL 4636841, at *7 (dismissing fiduciary breach claims for this reason).  Nor could Plaintiff so plead; stable value funds differ materially from "traditional bond fund[s]" (for which the Bond Index is presumably a proxy) because, in bond funds, "the change in the market value

---

[25] Vanguard Balanced Fund Prospectus at MTD426, Rosenberg Decl. Ex. 14; *see, e.g.*, Vanguard Target Retirement 2020 Trust Plus Fact Sheet at MTD431, *id.* Ex. 15.  The Court may consider the Fact Sheet, Morningstar, and Russell documents (*infra* note 28) because Plaintiff relied on them or the data within them in bringing suit.  *See In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 756 F. Supp. 2d at 344-45; *see also* Compl. ¶¶ 87, 102, 104.

[26] Moreover, Plaintiff concedes that the Fixed Dollar Account outperformed the Balanced Fund and TDFs in two of six years, 2015 and 2018.  Compl. ¶ 87.  This is one more reason that his performance comparisons fail.  *Infra* p. 19.

of the underlying assets is immediately reflected in the value of the fund, resulting in substantial swings in market value as interest rates change."  *Austin*, 2014 WL 7359058, at *3; *see Dezelan*, 2017 WL 2909714, at *1 (contrasting stable value and bond funds for this reason).

**Third**, the pleaded performance of the Fixed Dollar Account—when compared to the returns of stable value funds in cases dismissing similar claims—demonstrates why dismissal is appropriate here.  The Complaint pleads that the Fixed Dollar Account provided a guaranteed rate of return between 4.28% to 5.05% from 2015 to 2020.  Compl. ¶ 87.  This return was far superior to that of other stable value funds, which is generally less than 3.5% and often far less. *See Sandoval v. Exela Enter. Sols., Inc.*, No. 17-01573, 2020 WL 9259108, at *7 (D. Conn. Mar. 30, 2020) (dismissing ERISA claim regarding stable value fund where March 2019 complaint acknowledged a guaranteed 1.5% gross return); *Ortiz v. Am. Airlines, Inc.*, No. 16-151, 2016 WL 8678361, at *9 (N.D. Tex. Nov. 18, 2016) (noting statement in declaration that stable value funds returned an average of 2.25% with certain "well-performing" funds returning 2.97% and 3.03% in the five-year period before February 2016); *Austin*, 2014 WL 7359058, at *14 (dismissing ERISA fiduciary duty breach claims where stable value fund returned 1.79%, 1.27%, and 0.84% in 2011, 2012, and 2013, respectively).[27]

For these reasons, Plaintiff's performance allegations fail as to the Fixed Dollar Account.

### C.     The Plans' Use of the MainStay Funds Does Not Give Rise to a Reasonable Inference of Fiduciary Breach.

#### 1.     *Plaintiff's allegations that the MainStay Funds underperformed comparators fail.*

Similarly, Plaintiff's allegations about purported underperformance of the MainStay

---

[27] *See also Rozo*, 2021 WL 1837539, at *1, 2, 15 (annual return between 1.10% and 3.50% from November 2008 to April 2021 was "attractive to plan participants"); *Dezelan*, 2017 WL 2909714, at *2 (dismissing ERISA claim where stable value fund had a 3.0% guaranteed gross return in 2014).

Funds (Compl. ¶¶ 97-104) do not raise a reasonable inference of fiduciary breach.

*First*, Plaintiff has failed to plead that any underperformance was substantial, as he must. *See Patterson*, 2019 WL 4934834, at *10 (dismissing claim for this failure).  The at-issue funds either outperformed the pleaded comparators over the prior ten years or modestly underperformed them.  Compl. ¶ 102.  Any underperformance over that period is not substantial enough to permit an inference of fiduciary breach.  *See Patterson*, 2019 WL 4934834, at *10.

*Second*, Plaintiff has failed to plead that any underperformance was consistent, as he also must.  He concedes that one fund, the Income Builder Fund, outperformed a pleaded comparator over the prior ten years.  Compl. ¶ 102.  Additionally, on an annual basis, each of the at-issue funds has outperformed at least one of its pleaded comparators almost ***50% of the time*** during the putative class period.  Indeed, in some years, the MainStay fund outperformed both of the pleaded comparators, as the Income Builder Fund did in 2016 and 2019 and the All Cap Fund did in 2017 and 2019:

| Annual Performance Chart[28] | | | | | | |
|---|---|---|---|---|---|---|
| (Shading Indicates that Fund Outperformed At Least One Comparator That Year) | | | | | | |
| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
| **Income Builder Fund** | **-3.51%** | **9.42%** | **12.37%** | **-5.35%** | **18.57%** | **7.29%** |
| *Blended Benchmark Index* | 0.08% | 5.23% | 12.62% | -4.19% | 18.11% | 12.50% |
| *Global Allocation* | -1.98% | 7.00% | 17.12% | -5.56% | 18.53% | 13.55% |
| **All Cap Fund** | **-2.38%** | **9.19%** | **22.73%** | **-10.85%** | **31.55%** | **10.40%** |
| *Russell 3000* | 0.48% | 12.74% | 21.13% | -5.24% | 31.02% | 20.89% |
| *Russell 1000* | 0.92% | 12.05% | 21.69% | -4.78% | 31.43% | 20.96% |
| **Small Cap Fund** | **-3.90%** | **16.02%** | **15.62%** | **-16.39%** | | |
| *Russell 2000* | -4.41% | 21.31% | 14.65% | -11.01% | | |
| *Russell 2500* | -2.90% | 17.59% | 16.81% | -10.00% | | |

[28] Returns for the Income Builder, All Cap, and Small Cap Funds, and for their prospectus benchmarks as of each year, are disclosed in the funds' summary prospectuses, which were publicly filed and relied on by Plaintiff. Summary Prospectuses, Rosenberg Decl. Exs. 16-31; *see* Compl. ¶¶ 99-102 & nn. 7-9. Fund returns reflect the share classes that were offered in the Plan at the beginning of each year.  *See* Compl. ¶¶ 112, 116.  Russell 1000 and Russell 2000 Index returns relied on by Plaintiff were obtained from Russell's website.  Russell, Rosenberg Decl. Exs. 32-33; *see* Compl. ¶ 102.  Global Allocation Index returns were obtained from Morningstar, the source on

18

Because the challenged funds outperformed the comparators half of the time, Plaintiff's allegations of underperformance fail to infer a breach.  *See Patterson*, 2019 WL 4934834, at *11 (comparison failed where challenged fund outperformed in just one year); *Dorman v. Charles Schwab Corp.*, No. 17-000285, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (dismissing claim in part because at-issue funds outperformed comparators in certain years).

> ### 2.    *Plaintiff's allegations that the MainStay Funds had higher fees than comparators fail.*

Plaintiff's allegations at Compl. ¶¶ 110-119 about the MainStay Funds' fees also fail to state a claim.

"[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)."  *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).  For this reason, courts regularly dismiss allegations like Plaintiff's that a breach should be inferred because the challenged funds had higher fees than other investments or industry averages.  *Patterson*, 2019 WL 4934834, at *12 ("conclusory allegation" that at-issue fund had higher fees than another fund "not enough to state a claim of imprudence"); *Wehner v. Genentech, Inc.*, No. 20-06894, 2021 WL 507599, at *9 (N.D. Cal. Feb. 9, 2021) (rejecting comparison to industry averages).  As the Eighth Circuit explained in affirming dismissal, "the existence of a cheaper fund does not mean that a particular fund is too expensive *in the market generally* or that it is otherwise an imprudent choice."  *Meiners*, 898 F.3d at 823-24 (emphasis in original).

Moreover, although Plaintiff alleges that, until June 26, 2018, the Plans were invested in higher-cost share classes of two of the MainStay Funds (Compl. ¶¶ 112, 116), these allegations

_____

which Plaintiff alleges he relied.  Morningstar, Rosenberg Decl. Ex. 34; *see* Compl. ¶ 102 & n.10.  The Small Cap Fund was removed from the Plan in 2019 (Compl. ¶ 97) and therefore data for that fund are provided through 2018.

also do not permit an inference of fiduciary breach.  "[M]erely alleging that a Plan offer[ed] [one share class] rather than [a cheaper one] is insufficient to state a claim for breach of the duty of prudence . . . ."  *White*, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017) (dismissing claim), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).  The allegations are particularly lacking here because the cheaper share class now available under the Plans, the "R6" share class, first came to market on February 28, 2018,[29] less than four months before being added to the Plans.

## III.     The Prohibited Transaction Claims (Counts II and III) Fail as a Matter of Law.

Counts II and III, which assert prohibited transaction claims, should also be dismissed.

ERISA expressly exempts the use of proprietary investment products, including insurance products such as the Fixed Dollar Account and mutual funds like the at-issue MainStay Funds, from the transactions prohibited by ERISA §§ 406(a) and (b).  These exemptions— described in more detail below—facilitate Congress' and the DOL's long-held position that offering such products in a retirement plan is both common and permissible.  Indeed, as both recognize, "it would be 'contrary to normal business practice' for [an] insurer to purchase the products of another company for its own in-house plans."[30]  Because it is clear from the face of the Complaint that the relevant exemptions apply, the Court should dismiss the claims.  *See*, *e.g.*, *Patterson*, 2019 WL 4934834, at *16-17 (dismissing claim where the complaint failed to allege lack of compliance with PTE 77-3); *Leber v. Citigroup, Inc.*, No. 07-9329, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (dismissing claim under PTE 77-3).

Count III also fails to the extent it alleges that Defendants violated ERISA § 406(b) because corporate employees were fiduciaries.  As explained below, this practice is also common

---

[29] *See* Income Builder Fund 2021 Summary Prospectus at 11, Rosenberg Decl. Ex. 22; All Cap Fund 2021 Summary Prospectus at 6, *id.* Ex. 16.
[30] 56 Fed. Reg. at 10730; H.R. Conf. Rep. No. 93-1280, *reprinted in* 1974 U.S.C.C.A.N. at 5096.

and expressly permitted by ERISA.

      **A.**    **Offering the Fixed Dollar Account and MainStay Funds Is Exempt from ERISA's Prohibited Transaction Provisions.**

      *First*, Counts II and III fail as to the Fixed Dollar Account because ERISA § 408(b)(5) provides a prohibited transaction exemption that "allows plans sponsored by insurance companies to buy the sponsor's insurance products," including stable value funds and annuities. *Dupree*, 2007 WL 2263892, at *40. Here, the Fixed Dollar Account is offered through a group annuity contract between the Plans and NY Life. *See* Compl. ¶¶ 15, 74. Because NY Life is both the insurer that provides the Fixed Dollar Account and the sponsor of the Plans, "[ERISA § 408(b)(5)] applies if no more than adequate consideration was paid by the Plan[s] for the contract." *Dupree*, 2007 WL 2263892, at *40. The Complaint makes no allegations that more than adequate consideration was paid in connection with the Fixed Dollar Account. "[E]ven in the light most favorable to plaintiffs, the complaint asserts nothing more than that defendants" complied with the relevant prohibited transaction exemptions, which requires dismissal. *Leber*, 2010 WL 935442, at *10. Counts II and III should therefore be dismissed with respect to the Fixed Dollar Account. *See supra* p. 20.

      *Second*, Counts II and III fail as against the MainStay Funds because the alleged prohibited transactions are exempt under PTE 77-3, which permits a plan sponsor to offer mutual funds managed in-house so long as, among other things, "[t]he plan does not pay any investment management, investment advisory or similar fee to [an affiliated] investment adviser . . . or affiliated person" aside from "the payment of investment advisory fees by the [mutual fund] under the terms of its investment advisory agreement adopted in accordance with . . . the Investment Company Act," and "[a]ll other dealings between the plan and the [mutual fund], the investment adviser . . . or any affiliated person . . . are on a basis no less favorable to the plan

than such dealings are with other shareholders of the [mutual fund]."  42 Fed. Reg. at 18735.

Here, the Complaint "alleges the very type of activity that th[is] exemption expressly allows to occur—the investment by a plan in its affiliated mutual funds on the terms generally available to other investors."  *Leber*, 2011 WL 5428784, at *10.  The Complaint "makes no allegations to support a finding that the conduct fell beyond the exemption."  *Id.*  Because it is clear from the face of the Complaint that the Plans' use of the MainStay Funds is consistent with PTE 77-3, Counts II and III should also be dismissed with respect to the MainStay Funds.  *See Patterson*, 2019 WL 4934834, at *16-17 (dismissing claim).[31]

## B.     The Complaint Fails to Otherwise Plead Self-Dealing.

Count III additionally alleges in conclusory form that Defendants violated ERISA § 406(b) because the Plans' fiduciaries were employees of NY Life who, in their fiduciary roles, made decisions that produced incidental benefits to NY Life or to themselves.  *See* Compl. ¶ 156.  Both practices are common and permissible.  "Officers of a corporation often are trustees of its benefit plan."  *Dupree*, 2007 WL 2263892, at *37 (internal quotations omitted).  Indeed, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), "expressly permits a corporate officer or employee to serve as a Plan fiduciary."  *Greater Blouse, Skirt & Undergarment Ass'n, Inc. v. Morris*, No. 93-1257, 1996 WL 180019, at *9 (S.D.N.Y. Apr. 16, 1996).  Nor is ERISA violated "simply because [an action taken by fiduciaries] incidentally benefits the corporation or, indeed, [the fiduciaries] themselves."  *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982).  Because these allegations only allege conduct permitted by ERISA, the sections of Count III implicated by them should also be dismissed.  *See supra* pp. 20-21.

---

[31] *See also Patterson v. Capital Grp. Cos.*, No. 17-4399, 2018 WL 748104, at *5 (C.D. Cal. Jan. 23, 2018) (dismissing prohibited transaction claim where the plaintiff failed to allege "any facts that suggest" the conditions of PTE 77-3 were not met).

**IV.**   **Count IV Fails Because Plaintiff Has Not Pled Antecedent Breaches.**

Count IV alleges that NY Life is liable under ERISA § 405(a) as a co-fiduciary for its knowing participation in the "Plan"[32] fiduciaries' alleged breaches of their duties.  Compl. ¶¶ 161-72.  However, "[c]laims for . . . co-fiduciary liability require antecedent breaches in order to be viable*."  In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 617 (S.D.N.Y. 2015), *aff'd on other grounds*, 649. App'x 110 (2d Cir. 2018).  Because the Complaint fails to plead any antecedent breaches as to the Plans, the co-fiduciary liability claim must also be dismissed.  *See id.* (dismissing co-fiduciary claim for this reason); *Majad ex rel. Nokia Ret. Savs. & Inv. Plan v. Nokia, Inc.*, 528 F. App'x 52, 57 (2d Cir. 2013) (ERISA § 405(a) claim was "properly dismissed for . . . failure adequately to plead a predicate breach").

**V.**   **Count V Fails to State a Claim for Violation of ERISA's Anti-Inurement Provision.**

Count V of the Complaint, brought under ERISA's anti-inurement provision, § 403(c)(1), should be dismissed for lack of a cognizable legal theory.  The anti-inurement provision does not bar plan sponsors from receiving compensation with respect to their plans' investment options.

ERISA's anti-inurement provision states that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."  29 U.S.C. § 1103(c)(1).  Plaintiff asserts that the anti-inurement provision bars NY Life from being compensated directly or indirectly through receipt of an advisory fee from proprietary investment options or use of funds invested in the Fixed Dollar Account.  *See* Compl. ¶ 177.  Plaintiff is wrong.  Indeed, one court has already dismissed claims that ERISA's anti-inurement provision bars a company from making its own funds available to

---

[32] Compl. ¶¶ 162-172 does not identify or define the "Plan" to which those allegations relate.

participants and receiving normal fees from those investment management activities.  *See Dupree*, 2007 WL 2263892, at *44.

As a matter of statutory interpretation, ERISA § 403(c)(1) does not bar an employer from providing investment services to its plan or being compensated if it does so.  Instead, the section is directed at payments or distributions from the plan to an employer for its own purposes, such as paying its own debts, as opposed to payments or distributions to the employer that facilitate plan investments that inure to the benefit of a plan or its participants.  This is confirmed by the explicit exceptions to the anti-inurement provision, all of which set forth circumstances under which an employer may receive plan assets ***when acting as an employer***.[33]  It is further confirmed by decisions in this Circuit that have found violations of the anti-inurement provisions for conduct far different than that alleged here.  For example, in a number of cases, courts found that the defendants had breached the anti-inurement clause by using available funds to pay corporate creditors rather than making due and owing plan contributions.  *See, e.g.*, *NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*, 60 F. Supp. 2d 194, 203 (S.D.N.Y. 1999).

The inapplicability of the anti-inurement provision here is additionally confirmed when ERISA § 403(c)(1) is placed into context within the entire act.  *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (statutes should be read as a whole and individual provisions should be interpreted to "produce[] a substantive effect that is compatible with the rest of the law").  Congress recognized that it is "common practice" for financial services companies to invest their own plans' assets in their own investment funds,[34]

---

[33] *See, e.g.*, ERISA § 403(c)(2)(A), 29 U.S.C. § 1103(c)(2)(A) (employer may receive back contributions it makes to the plan by mistake); ERISA § 403(c)(3), 29 U.S.C. § 1103(c)(3) (return of overpayment to the employer).  It is a well-settled maxim of statutory construction that these statutory provisions shed light on the meaning of the first part of that same statutory section.  *See, e.g.*, *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (phrases in a statute are to be understood with relation to others in the same provision).
[34] H.R. Conf. Rep. No. 93-1280, *reprinted in* 1974 U.S.C.C.A.N. at 5096.

24

and has provided express exemptions for plans to offer products advised by the sponsor or its affiliates, for compensation.  *See* ERISA §§ 408(b)(5), (8), 29 U.S.C. §§ 1108(b)(5) and (8).[35]  It expressly allows fiduciaries to receive "reasonable compensation for services rendered."  ERISA § 408(c)(2), 29 U.S.C. § 1108(c)(2).

Plaintiff's view of the anti-inurement provision would necessarily render these other statutory provisions meaningless because, under his view, no employer could ever obtain any money directly or indirectly from a plan.  *See Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 379-81 (1980) (rejecting interpretation of one ERISA statutory provision because it would have rendered "meaningless" another ERISA provision).  That Congress did not intend the anti-inurement provision to bar the use of proprietary investments is further confirmed by ERISA's legislative history, which contemplates permissible scenarios—subject to DOL oversight—where "investments may inure to the direct or indirect benefit of the plan sponsor."[36]

Indeed, the DOL has issued exemptions for the precise conduct at issue here—enabling plans sponsored by insurance companies like NY Life to offer their own investment products to the participants in the plans they sponsor, for compensation.  *See supra* p. 20.  If ERISA's anti-inurement provision meant what Plaintiff argues, that the conduct at issue here is a *per se* violation of the anti-inurement provision, then each of those DOL exemptions would be nullities.

In sum, Count V should be dismissed because Plaintiff misinterprets ERISA § 403(c)(1).

## **CONCLUSION**

For these reasons, the Complaint should be dismissed in its entirety with prejudice.

---

[35] Congress has provided other exemptions for similar transactions.  For example, ERISA § 408(b)(4), 29 U.S.C. § 1108(b)(4), allows a bank that sponsors a plan for its employees to invest plan assets in deposits held by the employer-bank.

[36] H.R. Conf. Rep. No. 93-1280, *reprinted in* 1974 U.S.C.C.A.N. at 5086.

Dated: May 24, 2021                          Respectfully submitted,

                                             /s/ *James O. Fleckner*
                                             James O. Fleckner, *admitted pro hac vice*
                                             Dave Rosenberg, *admitted pro hac vice*
                                             GOODWIN PROCTER LLP
                                             100 Northern Avenue
                                             Boston, MA 02210
                                             Tel.: (617) 570-1000
                                             Fax: (617) 523-1231
                                             jfleckner@goodwinlaw.com
                                             drosenberg@goodwinlaw.com

                                             William J. Harrington
                                             GOODWIN PROCTER LLP
                                             The New York Times Building
                                             620 Eighth Avenue
                                             New York, NY 10018
                                             Tel.: (212) 813-8800
                                             Fax: (212) 355-3333
                                             wharrington@goodwinlaw.com

                                             *Counsel for Defendants*