**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STUART KROHNENGOLD, et al.,

                    Plaintiffs,

      v.

NEW YORK LIFE INSURANCE CO., et al.

                    Defendants.

Case No. 1:21-cv-01778

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

I.    The NY Life Retirement Plans ............................................................................. 2

II.   The Plaintiffs....................................................................................................... 3

III.  The Amended Complaint's Allegations................................................................. 3

ARGUMENT ...................................................................................................................... 5

I.    Plaintiffs Cannot Challenge the Use of the Fixed Dollar Account as a Default Investment Option. ......................................................................................................... 4

     A.    Plaintiffs Lack Standing to Challenge the Use of the Fixed Dollar Account as a Default Because They Were Not Defaulted into that Fund ............................ 4

     B.    Claims Regarding the Fixed Dollar Account Are Also Time-Barred.................... 6

II.   Count I Does Not State a Claim for Fiduciary Breach. ....................................... 7

     A.    The Plans' Use of Proprietary Funds Does Not Give Rise to a Reasonable Inference of Fiduciary Breach. ............................................................................. 9

     B.    The Plans' Use of the Fixed Dollar Account as a Default Investment Option Does Not Give Rise to a Reasonable Inference of Fiduciary Breach. ................................................................................................................ 10

          1.    Plans may utilize stable value funds as default investment options.. ....... 10

          2.    Plaintiffs only compare the Fixed Dollar Account to inapt comparators........................................................................................... 11

     C.    The Plans' Use of the MainStay Funds Does Not Give Rise to a Reasonable Inference of Fiduciary Breach. .......................................................... 14

          1.    Plaintiffs' allegations that the MainStay Funds underperformed comparators fail. .................................................................................... 14

          2.    Plaintiffs' allegations that the MainStay Funds had higher fees than comparators fail. .................................................................................... 18

III.  The Prohibited Transaction Claims (Counts II and III) Fail as a Matter of Law.............. 20

     A.    Offering the Fixed Dollar Account and MainStay Funds Is Exempt from ERISA's Prohibited Transaction Provisions........................................................ 21

     B.    The Amended Complaint Fails to Otherwise Plead Self-Dealing. ...................... 22

IV.  Count IV Fails Because Plaintiffs Have Not Pled Antecedent Breaches. ........................ 23

V.   Count V Fails to State a Claim for Violation of ERISA's Anti-Inurement Provision...... 23

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
    821 F.3d 352 (2d. Cir. 2016).................................................................................4

*Anderson v. Intel Corp.*,
    No. 19-04618, 2021 WL 229235 (N.D. Cal. Jan. 21, 2021).............................13, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................10

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003)..............................................................................5

*Austin v. Union Bond & Tr. Co.*,
    No. 14-00706, 2014 WL 7359058 (D. Or. Dec. 23, 2014)...............................12, 14

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
    756 F. Supp. 2d 330 (S.D.N.Y. 2010)..........................................................2, 13

*Bekker v. Neuberger Berman Grp. LLC*,
    No. 16-6123, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) ...........9, 12, 13, 17, 19

*Bona v. Barasch*,
    No. 01-2289, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003)...............................6, 7

*Brotherston v. Putnam Invs., LLC*,
    No. 15-13825, 2017 WL 2634361 (D. Mass. June 19, 2017)................................20

*Carey v. Int'l Brotherhood of Elec. Workers Local 363 Pen. Plan*,
    201 F.3d 44 (2d Cir. 1999)..............................................................................6, 7

*In re Citigroup ERISA Litig.*,
    104 F. Supp. 3d 599 (S.D.N.Y. 2015)................................................................23

*Davis v. Wash. Univ. in St. Louis*,
    960 F.3d 478 (8th Cir. 2020) ...........................................................................13

*Dezelan v. Voya Ret. Ins. and Annuity Co.*,
    No. 16-1251, 2017 WL 2909714 (D. Conn. July 6, 2017) ..............................12, 14

*Dole v. United Steelworkers of Am.*,
    494 U.S. 26 (1990)..........................................................................................24

*Donovan v. Bierwirth*,
    680 F.2d 263 (2d Cir. 1982)..............................................................................22

*Dorman v. Charles Schwab Corp.*,
No. 17-000285, 2019 WL 580785 (N.D. Cal. Feb. 8, 2019) ...................................16

*Dupree v. Prudential Ins. Co. of Am.*,
No. 99-8837, 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) ....................................9, 21, 22, 24

*F.W. Webb Co. v. State St. Bank & Tr. Co.*,
No. 09-1241, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010)................................113

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)...............................................................................................8

*Greater Blouse, Skirt & Undergarment Ass'n, Inc. v. Morris*,
No. 93-1257, 1996 WL 180019 (S.D.N.Y. Apr. 16, 1996) ...................................22

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ................................................................................18

*Jarvis v. Cardillo*,
No. 98-5793, 1999 WL 187205 (S.D.N.Y. Apr. 6, 1999) .........................................5

*Kendall v. Emps. Ret. Plan of Avon Prod.*,
561 F.3d 112 (2d Cir. 2009).....................................................................................5

*Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*,
95 F. Supp. 3d 402 (S.D.N.Y. 2015).........................................................................2

*Laboy v. Bd. of Tr. of Bldg. Serv. 32 BJ SRSP*,
No. 11-5127, 2012 WL 3191961 (S.D.N.Y. Aug. 7, 2012)....................................17

*Leber v. Citigroup, Inc.*,
No. 07-9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010)........................20, 21, 22

*LeBlanc v. Cleveland*,
198 F.3d 353 (2d Cir. 1999) .....................................................................................5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..................................................................................................4

*Majad ex rel. Nokia Ret. Savs. & Inv. Plan v. Nokia, Inc.*,
528 F. App'x 52 (2d Cir. 2013) ..............................................................................23

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ...................................................................12, 17, 19

*Morrison v. Nat'l Austl. Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008)......................................................................................4

*Nachman Corp. v. Pension Ben. Guar. Corp.*,
446 U.S. 359 (1980)..................................................................................25

*NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*,
60 F. Supp. 2d 194 (S.D.N.Y. 1999)........................................................24

*Ortiz v. Am. Airlines, Inc.*,
No. 16-151, 2016 WL 8678361 (N.D. Tex. Nov. 18, 2016)......................14

*Parker Madison Partners v. Airbnb, Inc.*,
283 F. Supp. 3d 174 (S.D.N.Y. 2017)........................................................4

*Patterson v. Capital Grp. Cos.*,
No. 17-4399, 2018 WL 748104 (C.D. Cal. Jan. 23, 2018)......................22

*Patterson v. Morgan Stanley*,
No. 16-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)......................15, 16, 17, 19, 20, 22

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)..................................................................7, 8

*Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013)........................................................................6

*Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank
of N.Y. Mellon*,
775 F.3d 154 (2d Cir. 2014)......................................................................9

*Rozo v. Principal Life Ins., Co.*,
No. 14-00463, 2021 WL 1837539 (S.D. Iowa April 8, 2021).............12, 14

*Sandoval v. Exela Enter. Sols., Inc.*,
No. 17-01573, 2020 WL 9259108 (D. Conn. Mar. 30, 2020)..................14

*Taveras v. UBS AG*,
612 F. App'x 27 (2d Cir. 2015)..................................................................4

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988)..................................................................................24

*Wehner v. Genentech, Inc.*,
No. 20-06894, 2021 WL 507599 (N.D. Cal. Feb. 9, 2021)......................19

*White v. Chevron Corp.*,
No. 16-0793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016)................8, 10

iv

*White v. Chevron Corp.*,
No. 16-0793, 2017 WL 2352137 (N.D. Cal. May 31, 2017)...................................................19

**Statutes**

29 U.S.C. § 1103(c)(1) (ERISA § 403(c)(1)) .............................................................3, 23, 24, 25

29 U.S.C. § 1103(c)(2)(A) (ERISA § 403(c)(2)(A)) ......................................................................24

29 U.S.C. § 1103(c)(3) (ERISA § 403(c)(3)) ................................................................................24

29 U.S.C. § 1104(a) (ERISA § 404(a))..........................................................................................11

29 U.S.C. § 1104(a)(1)(A) (ERISA § 404(a)(1)(A)) ......................................................................3

29 U.S.C. § 1104(a)(1)(B) (ERISA § 404(a)(1)(B))........................................................................3

29 U.S.C. § 1104(c) (ERISA § 404(c))..........................................................................................11

29 U.S.C. § 1105(a) (ERISA § 405(a)).....................................................................................3, 23

29 U.S.C. § 1106(a) (ERISA § 406(a)).....................................................................................3, 20

29 U.S.C. § 1106(b) (ERISA § 406(b)) .........................................................................3, 20, 21, 22

29 U.S.C. § 1108(b)(4) (ERISA § 408(b)(4)) ...............................................................................25

29 U.S.C. § 1108(b)(5) (ERISA § 408(b)(5)) .....................................................................9, 21, 25

29 U.S.C. § 1108(c)(2) (ERISA § 408(c)(2)) ................................................................................25

29 U.S.C. § 1108(c)(3) (ERISA § 408(c)(3)) ................................................................................22

29 U.S.C. § 1113(1)(A) (ERISA § 413(1)(A)) ...............................................................................6

**Other Authorities**

29 C.F.R. § 2550.404c-5(a)(2) (2008) ..........................................................................................10

Class Exemption Involving Mutual Fund In-House Plans Requested by the
Investment Company Institute, 42 Fed. Reg. 18734, 18735 (Mar. 31, 1977). ...................9, 22

Default Investment Alternatives Under Participant Directed Individual Account
Plans, 72 Fed. Reg. 60452-01 (Oct. 24, 2007)..................................................................1, 10

H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N.
5038..........................................................................................................................9, 20, 24, 25

Notice of Proposed Rule-Making, Participant Directed Individual Account Plans,
    56 Fed. Reg. 10724, 10730 (Mar. 13, 1991)......................................................................9, 20

Pension Prot. Act of 2006, Pub. L. No. 109-280, 120 Stat. 780 (2006) .........................................11

## INTRODUCTION

Plaintiffs' Amended Complaint fails to correct the deficiencies in the original complaint and should be dismissed.  Most notably, the Amended Complaint joins six additional plaintiffs who participated in two retirement plans sponsored by New York Life Insurance Company ("NY Life").  But like the original Plaintiff, Mr. Krohnengold, all of the newly-joined Plaintiffs who invested in the Plans' Fixed Dollar Account[1] did so *by choice*, and therefore have no standing to pursue their claims that the fund should not have been utilized as a default option for participants who made no election.  And even if they had standing (which they do not), ERISA's statute of repose bars their claims, which Plaintiffs allege go back over 30 years.

Plaintiffs' claims also fail on the merits.

- Plaintiffs' ERISA fiduciary duty claim (Count I) fails because the use of affiliated fund options has been expressly permitted by Congress and the U.S. Department of Labor (the "DOL").

- Moreover, its challenge to the use of the Fixed Dollar Account as the Plans' default investment option fails because, even though Plaintiffs claim the use of a stable value fund—the Fixed Dollar Account—as a default investment is *per se* imprudent, the DOL expressly allows companies like NY Life to "conclude that a stable value product or fund is an ***appropriate default investment*** for their employees and use such product or fund for contributions on behalf of defaulted employees . . . ."[2]

- Count I further fails because Plaintiffs rely on apples-to-oranges comparisons and distorted performance measurements in an attempt to establish a claim as to both the Fixed Dollar Account and MainStay Funds.

- Additionally, Plaintiffs' prohibited transaction claims (Counts II-III) fail because the alleged transactions either do not constitute a prohibited transaction or are covered by relevant exemptions allowing for in-house management of plan assets.

---

[1] The "Plans" are the New York Life Insurance Company Employee Progress Sharing Investment Plan ("EPSI Plan") and the New York Life Insurance Company Agents Progress Sharing Investment Plan ("APSI Plan") (each a "Plan").  The other funds are: MainStay Income Builder Fund ("Income Builder Fund"), MainStay Epoch U.S. All Cap Fund ("All Cap Fund"), MainStay Epoch U.S. Small Cap Fund ("Small Cap Fund"), and the MainStay Retirement Funds ("Retirement Funds") (collectively, the "MainStay Funds").

[2] Default Investment Alternatives Under Participant Directed Individual Account Plans, 72 Fed. Reg. 60452-01, 60464 (Oct. 24, 2007) (emphasis added).

- Their co-fiduciary liability claim (Count IV) fails because Plaintiffs cannot plead an underlying fiduciary breach.

- Their anti-inurement claim (Count V) fails because it misinterprets ERISA's anti-inurement provision.

For these and the reasons set forth below, the Amended Complaint should be dismissed.

## BACKGROUND

### I.     The NY Life Retirement Plans

NY Life sponsors two defined contribution plans:  the EPSI Plan and the APSI Plan.[3] Throughout the putative class period, the Plans' fiduciaries have utilized the services of a third-party investment consultant, paid for by NY Life, in fulfilling their duties.[4]  Each Plan's investment options as of the end of 2019, the most recent year such information was filed, consisted of a broad array of twenty-four mutual funds and the Fixed Dollar Account.[5]  Of these, only four (15%) were managed by NY Life or its affiliates; the remaining twenty-two (85%) were managed by a variety of third parties, including Vanguard, Fidelity, and Blackrock.[6] Participants in each Plan are free to choose among any of these options.[7]

Participants who enroll in the Plans but choose to not select particular investment options have their contributions invested into the Plans' default investment option, the Fixed Dollar

---

[3] *See* EPSI Plan 2019 Form 5500 at D2-0363, 65, Decl. of Dave Rosenberg ("Rosenberg Decl.") Ex. 3; APSI Plan 2019 Form 5500 at D2-0367, 69, *id.* Ex. 4.  Courts may consider publicly-filed documents like the Forms 5500 and fund prospectuses and summary prospectuses (*see, e.g.*, *infra* notes 14, 17-21) on a motion to dismiss, particularly where Plaintiffs relied on them in bringing suit.  *See In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 756 F. Supp. 2d 330, 344-45 (S.D.N.Y. 2010); Am. Compl. ¶¶ 102-06 (allegations based on summary prospectuses).
[4] *See* EPSI 2018 Form 5500 at D2-0379, Rosenberg Decl. Ex. 6; APSI 2018 Form 5500 at D2-0386, *id.* Ex. 7.
[5] *See* Master Trust 2019 Form 5500 at D2-0373-75, Rosenberg Decl. Ex. 5.
[6] *Id.*
[7] EPSI Plan governing document ("Plan Document") at D2-0063-65, Rosenberg Decl. Ex. 1; APSI Plan Document at D2-0272-74, *id.* Ex. 2.  Courts may consider governing plan documents on a motion to dismiss.  *See Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 408 (S.D.N.Y. 2015).  During the putative class period, the number of externally managed funds increased from four as of year-end 2015, to twenty-one as of year-end 2019, and Defendants removed eight proprietary and one external fund.  *See* EPSI 2015 Form 5500 at D2-0412-14, Rosenberg Decl. Ex. 12; APSI 2015 Form 5500 at D2-0417-19, *id.* Ex. 13; EPSI 2016 Form 5500 at D2-0402-04, *id.* Ex. 10; APSI 2016 Form 5500 at D2-0407-09, *id.* Ex. 11; EPSI 2017 Form 5500 at D2-0393-95, *id.* Ex. 8; APSI 2017 Form 5500 at D2-0399, *id.* Ex. 9; EPSI 2018 Form 5500 at D2-0381-83, *id.* Ex. 6; APSI 2018 Form 5500 at D2-0388-90, *id.* Ex. 7; Master Trust 2019 Form 5500 at D2-0373-75, *id.* Ex. 5.

Account.[8]  The Fixed Dollar Account is a stable value fund.  Am. Compl. ¶ 5.  Its returns have

varied between 4.28% to 5.05% from 2015 to 2020.  *Id.* ¶ 84.

## II.    <u>The Plaintiffs</u>

Plaintiffs are seven current and former participants in the Plans.  Am. Compl. ¶¶ 15-21.

The Plaintiffs affirmatively chose to invest in the Fixed Dollar Account during the putative class

period—with Mr. Krohnengold alleging that he invested in 1988, and Messrs. Antione and

Webber choosing to invest their entire EPSI Plan account balances in it.[9]  None of the Plaintiffs

were invested in the Fixed Dollar Account by operation of the EPSI Plan's or APSI Plan's

default investment option provisions.[10]

## III.   <u>The Amended Complaint's Allegations</u>

Count I alleges that the Plans' fiduciaries breached their duties of loyalty and prudence

under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), by maintaining the

Fixed Dollar Account as the Plans' default investment option and by selecting and/or

maintaining the MainStay Funds as investment options.  *See* Am. Compl.  ¶¶ 151-53.  Counts II

and III allege that these same decisions caused the Plans' fiduciaries to engage in prohibited

transactions under ERISA §§ 406(a) and (b), 29 U.S.C. §§ 1106(a) and (b).  *See id.* ¶¶ 162-63,

174.  The Amended Complaint additionally alleges other prohibited transactions under ERISA §

406(b) (Count III); that NY Life violated ERISA § 405(a), 29 U.S.C. § 1105(a), by knowingly

participating in co-fiduciaries' breaches (Count IV); and that Defendants violated ERISA's anti-

inurement provision (Count V), ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).  *See id.* ¶¶ 169-96.

Plaintiffs seek to represent a class of all participants in the Plans that invested in the MainStay

---

[8] *See* EPSI Plan Document at D2-0022, Rosenberg Decl. Ex. 1; APSI Plan Document at D2-0233, *id.* Ex. 2.
[9] Decl. of Maria Mauceri ("Mauceri Decl.") ¶¶ 5-12; Am. Compl. ¶ 16.  Defendants submit the Mauceri Decl. in furtherance of their Fed. Rule Civ. P. 12(b)(1) motion.
[10] Mauceri Decl. ¶¶ 5-12.

Funds or Fixed Dollar Account since "March 3," without identifying a year.  *Id.* ¶ 138.

## ARGUMENT

**I.**      **Plaintiffs Cannot Challenge the Use of the Fixed Dollar Account as a Default Investment Option.**

        **A.**      **Plaintiffs Lack Standing to Challenge the Use of the Fixed Dollar Account as a Default Because They Were Not Defaulted into that Fund.**

Plaintiffs allege that the Fixed Dollar Account is an imprudent default investment.  *See* Am. Compl. ¶¶ 77, 80, 151.  Some Plaintiffs allege that they were defaulted into the Fixed Dollar Account.  *Id.* ¶¶ 16-17, 21.  Mr. Krohnengold alleges that he "could not confirm whether his account was defaulted into NYL's Fixed Dollar Account in 1988."  *Id.* ¶ 15.  Their allegations are contradicted by the records maintained by NY Life and the Plans' recordkeeper, which demonstrate that Plaintiffs chose to invest their Plan accounts into the Fixed Dollar Account.  *Supra* p. 3.  Accordingly, Plaintiffs lack standing to bring this claim because they were not defaulted into that fund, and therefore could not have been injured by its use as a default.

To avoid dismissal under Fed. Rule Civ. P. 12(b)(1), Plaintiffs must establish constitutional standing.  *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358-59 (2d. Cir. 2016).  Whether Plaintiffs have established standing is a "threshold matter that a court must resolve before reaching the merits."  *Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 179 (S.D.N.Y. 2017).  Standing requires, in part, that plaintiffs demonstrate that they have "suffered an 'injury in fact'" and that they are "[themselves] among the injured."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 563 (1992) (internal quotations omitted).  Therefore, "[a]n ERISA plan participant lacks standing to sue for ERISA violations that [allegedly] cause injury to a plan but not individualized injury to the plan participant."  *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) (affirming dismissal on standing grounds).  ERISA "does not confer a right to every plan participant to sue the plan fiduciary for alleged

4

ERISA violations without a showing that they were injured by the alleged breach of the duty." *Kendall v. Emps. Ret. Plan of Avon Prod.*, 561 F.3d 112, 121 (2d Cir. 2009) (citing *Flanigan v. Gen. Elec. Co.,* 242 F.3d 78, 85–86 (2d Cir. 2001)), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).

Because Plaintiffs chose to invest in the Fixed Dollar Account, the Plans' use of the Fixed Dollar Account as a default option could not have injured them, and, thus, they lack standing to sue regarding that aspect of the Plans. *See, e.g.*, *Kendall*, 561 F.3d at 121.

Indeed, although Plaintiffs make bare, unsupported allegations that they were defaulted into the Fixed Dollar Account, the Court need not accept these in the face of NY Life's and the Plans' recordkeeper's business records. When, as here, "a defendant challenges the factual basis of the court's jurisdiction, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant . . . ." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotations omitted). Instead, "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits" like the Mauceri Declaration submitted by Defendants and the exhibits to it. *See LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999). Because the material submitted by Defendants demonstrates that the Plaintiffs chose to invest in the Fixed Dollar Account, the Court must dismiss the claim. *See Jarvis v. Cardillo*, No. 98-5793, 1999 WL 187205, at *2, *8 (S.D.N.Y. Apr. 6, 1999) (dismissing complaint after reviewing material outside the pleadings).

Finally, Plaintiffs may not bootstrap standing by suing on behalf of others who were defaulted into the Fixed Dollar Account. *See* Am. Compl. ¶ 138. Class standing requires that Plaintiffs demonstrate that the conduct that allegedly caused them personal injury "implicates the same set of concerns[,]" and requires similar proof, "as the conduct alleged to have caused injury

to other members of the putative class . . . ." *Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 161-62 (2d Cir. 2014) (internal quotations omitted). That is not the case here. Since no Plaintiff was defaulted into the Fixed Dollar Account, none incurred the type of injury allegedly suffered by absent class members who were defaulted. Plaintiffs themselves plead that the question of whether the Fixed Dollar Account is a prudent default investment option for the Plans is a different inquiry, requiring different proof, than whether other investment options should have been offered in the Plans at all. Am. Compl. ¶¶ 42-47, 67-92 (allegations specific to the Fixed Dollar Account's use as a default investment option). Therefore, whether or not absent class members might have incurred harm by being defaulted into the Fixed Dollar Account does not confer standing on Plaintiffs.

**B.      Claims Regarding The Fixed Dollar Account Are Also Time-Barred.**

Additionally, many of Plaintiffs' claims regarding the Fixed Dollar Account are also time-barred under ERISA's statute of repose, which precludes challenges to conduct that occurred more than six years before suit. *See* ERISA § 413(1)(A); 29 U.S.C. § 1113(1)(A). Statutes of repose "create a substantive right in those protected to be free from liability after a legislatively-determined period of time." *Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013) (internal quotations omitted). ERISA's statute of repose "serve[s] several important policies, including rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses." *Carey v. Int'l Brotherhood of Elec. Workers Local 363 Pen. Plan*, 201 F.3d 44, 47 (2d Cir. 1999). Courts regularly dismiss ERISA claims regarding conduct that occurred more than six years prior to suit. *See Bona v. Barasch*, No. 01-2289, 2003 WL 1395932, at *19 (S.D.N.Y. Mar. 20, 2003) (dismissing claims regarding conduct that occurred outside repose period).

ERISA's statute of repose therefore bars Plaintiffs' claims regarding the Fixed Dollar Account to the extent Plaintiffs were defaulted into it more than six years prior to the date each joined this lawsuit. Only Messrs. Krohnengold, Antoine, Webber, and Musni allege that they were potentially defaulted into the Fixed Dollar Account, but each joined NY Life more than six years prior to bringing suit, and none allege that they were defaulted within the repose period (Am. Compl. ¶¶ 15-17, 21), nor could they.[11] Mr. Krohnengold's allegations (*id.* ¶ 15)—that he cannot confirm what occurred in 1988 when he joined a Plan—shows precisely why invocation of the statute of repose is sensible here, to "avoid[] litigation involving lost evidence or distorted testimony of witnesses." *Carey*, 201 F.3d at 47. Thus, even if Plaintiffs have standing to sue over the use of a default fund into which they were not defaulted (which they do not), their claims should be dismissed as untimely. *See Bona*, 2003 WL 1395932, at *19.

*     *     *

Not only are Plaintiffs unable to bring claims about the default fund, but each count of the Amended Complaint fails to state a claim and should be dismissed for that reason as well.

## II.     Count I Does Not State a Claim for Fiduciary Breach.

Count I should be dismissed because it does not plausibly allege that Defendants engaged in a disloyal or imprudent process. To withstand a motion to dismiss, "the complaint must demonstrate more than a sheer possibility that a defendant has acted unlawfully." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*PBGC*"), 712 F.3d 705, 718 (2d Cir. 2013). The complaint must allege "*nonconclusory* factual content raising a *plausible* inference of misconduct" and must not rely on "the vantage point of hindsight." *Id.* (emphasis in original). "[I]f the complaint relies on circumstantial factual

---

[11] *See* Mauceri Decl. ¶¶ 5-12.

7

allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a '*reasonable* inference' that the defendant committed the alleged misconduct, thus permit[ting] the court to infer more than the *mere possibility* of misconduct[.]" *Id.* at 718-19 (same).

Here, the Amended Complaint contains only conclusory allegations regarding the Plan fiduciaries' processes. In this event, it can only survive if the circumstantial facts alleged plausibly give rise to a reasonable inference that fiduciaries lacked an adequate process. *PBGC*, 712 F.3d at 716. In this analysis, a fiduciary's decisions cannot be judged from the "vantage point of hindsight" given the inherent uncertainty of investment performance in ever-changing markets. *Id.* at 718. Because fiduciaries are judged by their decision-making process, the test for whether one satisfied ERISA's fiduciary duties is one of "conduct," and not the "results" of investment performance. *Id.* at 716 (internal quotations omitted). That means that ERISA plaintiffs cannot plead a fiduciary breach by simply alleging "that [p]lan participants would have done better in alternative investments" that were not offered through the plan. *White v. Chevron Corp.*, No. 16-0793, 2016 WL 4502808, at *18 (N.D. Cal. Aug. 29, 2016).

The Court's inquiry at this stage is necessarily rigorous. The Supreme Court instructs that "careful, context-sensitive scrutiny of a complaint's allegations," through a motion to dismiss, is the appropriate way to accomplish the "important task" of "divid[ing] the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). This is necessary because the motion to dismiss is an "important mechanism for weeding out meritless [ERISA] claims." *Id.* at 425-26. Absent careful scrutiny, there is a serious risk that a "plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *PBGC*, 712 F.3d at 719 (alteration in original and citation omitted).

A.     **The Plans' Use of Proprietary Funds Does Not Give Rise to a Reasonable Inference of Fiduciary Breach.**

The allegation that the Plans offered NY Life-affiliated investment options—along with third party options—does not support a reasonable inference of a deficient fiduciary process. Congress and the DOL have recognized that it is "common practice" for financial services companies to offer participants the opportunity to invest in their employers' investment funds.[12] Both have created exemptions that allow the use of proprietary investments, including Prohibited Transaction Exemption ("PTE") 77-3 (mutual funds)[13] and ERISA § 408(b)(5), 29 U.S.C. § 1108(b)(5) (certain insurance products). Thus, it is well established that using proprietary funds does not "give rise to an inference of" wrongdoing. *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8837, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 7, 2007) (using such funds is virtually "universal"). Because "sponsor-affiliated funds are permitted under ERISA[,]" allegations regarding use of these investments "do not, standing alone, support an inference that a defendant breached its fiduciary duties by including such a fund as an investment option . . . ." *Bekker v. Neuberger Berman Grp. LLC*, No. 16-6123, 2018 WL 4636841, at *6 (S.D.N.Y. Sept. 27, 2018).

Even if an inference of impropriety could be raised generally from using proprietary funds—which it cannot—such inference is unwarranted here because the number of proprietary investment options offered under the Plans has ***decreased*** over the putative class period, with the Plans replacing proprietary investments with non-proprietary ones. *Supra* note 7. These changes to the Plans' lineups "support[] the inference that the fiduciaries were monitoring the investment options[,]" and not the inference Plaintiffs ask the Court to draw that the Plans' fiduciaries were

---

[12] H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5096; *accord* Notice of Proposed Rule-Making, Participant Directed Individual Account Plans, 56 Fed. Reg. 10724, 10730 (Mar. 13, 1991).
[13] Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment Company Institute, 42 Fed. Reg. 18734, 18735 (Mar. 31, 1977).

improperly managing the Plans.  *White*, 2016 WL 4502808, at *11 (dismissing claims).  These

changes and the Plans' fiduciaries use of a third-party investment consultant also refute

Plaintiffs' theory that Defendants were using the Plans to enrich NY Life.  *See Ashcroft v. Iqbal*,

556 U.S. 662, 679 (2009) (court may draw on its "common sense").

**B.**     **The Plans' Use of the Fixed Dollar Account as a Default Investment Option Does Not Give Rise to a Reasonable Inference of Fiduciary Breach.**

*1.      Plans may utilize stable value funds as default investment options.*

Plaintiffs first assert that stable value funds like the Fixed Dollar Account are *per se*

imprudent, alleging that such funds can never be prudent default investment options "because

[they] do not provide a mix of asset classes."  Am. Compl. ¶ 77.  But they are wrong as a matter

of law:  the DOL considered this precise question and concluded that fiduciaries ***may*** elect to

utilize stable value funds as default investment options for their plans.

Indeed, in the preamble Plaintiffs cite (Am. Compl. ¶ 79), the DOL stated:  "fiduciaries

may, without regard to this regulation, conclude that a stable value product or fund ***is an***

***appropriate default investment*** for their employees and use such product or fund for

contributions on behalf of defaulted employees . . . ."  72 Fed. Reg. at 60464 (emphasis added).

The DOL expressly cautioned against using this regulation, precisely as Plaintiffs do, for

purposes other than identifying Qualified Default Investment Alternatives ("QDIA"), stating,

> [t]he standards set forth in this section apply ***solely*** for the purposes of
> determining whether a fiduciary meets the requirements of this regulation.  Such
> standards are not intended to be the exclusive means by which a fiduciary might
> satisfy his or her responsibilities under [ERISA] with respect to the investment of
> assets in the individual account of a participant or beneficiary.

29 C.F.R. § 2550.404c-5(a)(2) (2008) (emphasis added).  Similarly, the Pension Protection Act

of 2006, which Plaintiffs additionally cite (Am. Compl. ¶ 45), also refused to adopt the

categorical approach espoused by Plaintiffs.  Instead, Congress stated that appropriate default

investment options could include investments "consistent with capital preservation *or* long-term capital appreciation, *or* a blend of both." Pension Prot. Act of 2006, Pub. L. No. 109-280, 120 Stat. 780 (2006) (29 U.S.C. § 1104(c)(5)(A)) (emphasis added).

Accordingly, neither the DOL or Congress preclude the use of a stable value fund as a default investment option. And the fact that the Plans utilize a stable value fund as a default investment option does not permit an inference of breach. This is particularly true where the Fixed Dollar Account provides a rate of return significantly higher than that of other stable value funds and where Plaintiffs concede that the appropriateness of a default investment option is measured at least in part by the makeup of the plan's participant population (Am. Compl. ¶ 46), which for the Plans are employees or agents of an insurance company or its affiliates, who may prefer to invest in an insurance product like the Fixed Dollar Account. *Infra* p. 1; *supra* p. 21.

Nor is the question of whether the Fixed Dollar Account satisfies the limited QDIA safe harbor under ERISA § 404(c), 29 U.S.C. § 1104(c), dispositive of the issue of fiduciary breach. *See* Am. Compl. ¶ 67, 154. ERISA § 404(c) "is simply a safe harbor provision that limits the liability of fiduciaries in some instances." *F.W. Webb Co. v. State St. Bank & Tr. Co.*, No. 09-1241, 2010 WL 3219284, at *14 (S.D.N.Y. Aug. 12, 2010). It does not set the bounds of permissible fiduciary behavior under § 404(a) and a "a person does not 'violate' ERISA by straying from 404(c)'s guidelines." *Id.* (dismissing claim).

         2.     *Plaintiffs only compare the Fixed Dollar Account to inapt comparators.*

Plaintiffs also assert that using the Fixed Dollar Account as a default investment was disloyal and imprudent because, over some periods in the past six years, that fund underperformed two funds Plaintiffs hand-picked: the Vanguard Target Retirement Plus target-date funds (the "TDFs"), and the Vanguard Balanced Index Fund ("Balanced Fund"). Am. Compl. ¶ 84. These allegations fail because Plaintiffs do not and cannot plead that these funds

11

are appropriate comparators for the Fixed Dollar Account.

"To show that a prudent fiduciary . . . would have selected a different fund based on the . . . performance of the selected fund, a plaintiff must provide a sound basis for comparison—a meaningful benchmark." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (internal quotations omitted). Thus, Plaintiffs must plead that the comparators "employ[] similar operations or investment strategies" or other facts that would make the comparison "meaningful and plausibly suggestive of a fiduciary breach." *Bekker*, 2018 WL 4636841, at *7. Plaintiffs' failure to do so here is fatal: "[t]he fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged fund was] an imprudent choice." *Meiners*, 898 F.3d at 823 (affirming dismissal of claims).

Stable value funds like the Fixed Dollar Account are low-risk investments that are "designed to minimize the impact of market fluctuations" while providing investors with a rate of return guaranteed in advance. *See Austin v. Union Bond & Tr. Co.*, No. 14-00706, 2014 WL 7359058, at *3 (D. Or. Dec. 23, 2014). They are "safe, stable product[s] that preserve[] their capital and earn[] predictable returns, even if the rate of return is usually lower than other investment options available." *Rozo v. Principal Life Ins., Co.*, No. 14-00463, 2021 WL 1837539, at *2 (S.D. Iowa April 8, 2021), *appeal docketed*, No. 21-2026 (8th Cir. May 4, 2021). Because of their attractive qualities, stable value funds are "one of the most popular investment strategies for pension plans." *Dezelan v. Voya Ret. Ins. and Annuity Co.*, No. 16-1251, 2017 WL 2909714, at *2 (D. Conn. July 6, 2017) (internal quotations omitted).

Plaintiffs do not, though, compare the Fixed Dollar Account's performance to that of other stable value funds, but rather to the Balanced Fund and TDFs. These allegations fail because the comparisons are wildly inappropriate. To justify these comparisons, Plaintiffs allege

only that "[t]hese . . . funds are appropriate comparators because they are widely used as plan options in defined contribution plans similar in size to the [Plans]." *Id.* ¶ 84, n. 2. Saying that apples and oranges are both widely stocked in stores says nothing about whether they are comparable to each other. "[S]imply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of [the at-issue fund]." *Anderson v. Intel Corp.*, No. 19-04618, 2021 WL 229235, at *8 (N.D. Cal. Jan. 21, 2021). Because Plaintiffs do not plead any allegation establishing that the Balanced Fund and TDFs are appropriate comparators to the Fixed Dollar Account, the allegations fail. *See id.* (dismissing claim for this reason); *Bekker*, 2018 WL 4636841, at *7 (same).

Nor could Plaintiffs so plead; neither investment offers a guaranteed rate of return like the Fixed Dollar Account. Instead, they invest in both stocks and bonds and are designed to provide a return, positive or negative, similar to that of certain stock and bond indices.[14] These investments therefore "have different aims, different risks, and different potential rewards that cater to different investors," than the Fixed Dollar Account and are inappropriate comparators for it. *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (affirming dismissal of claim).[15] Furthermore, the Amended Complaint concedes that the Fixed Dollar Account outperformed the Balanced Fund and TDFs in two of six years, 2015 and 2018. Am. Compl. ¶ 84. So even Plaintiffs' inapt return comparisons fail to establish that the Fixed Dollar Account

---

[14] Vanguard Balanced Fund Prospectus at D2-0426, Rosenberg Decl. Ex. 14; *e.g.*, Vanguard Target Retirement 2020 Trust Plus Fact Sheet at D2-0431, *id.* Ex. 15. The Court may consider the Fact Sheet, Morningstar, and Russell documents (*infra* notes 17-18) because Plaintiffs relied on them or the data within them in bringing suit. *See In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 756 F. Supp. 2d at 344-45; *see also* Am. Compl. ¶¶ 84, 102.

[15] Plaintiffs also compare the Fixed Dollar Account to the Bloomberg Barclays U.S. 5-10 Yr. Government/Credit Float Adjusted Index ("Bond Index"). Am. Compl. ¶ 91. To the extent Plaintiffs ask the Court to infer a breach based on this comparison, such an inference is not reasonable because Plaintiffs also do not plead that the two "employ[] similar operations or investment strategies." *Bekker*, 2018 WL 4636841, at *7. Instead, Plaintiffs merely plead that the Bond Index is a "commonly recognized intermediate investment grade bond index." Am. Compl. ¶ 91. Stable value funds differ materially from bonds because bonds experience "substantial swings in market value as interest rates change," unlike stable value funds. *Austin*, 2014 WL 7359058, at *3.

does not "provide the long-term capital appreciation necessary for retirement" and is therefore an imprudent default investment option. *See id.* ¶ 83.

Indeed, the pleaded performance of the Fixed Dollar Account—when compared to the returns of stable value funds in cases dismissing other claims—demonstrates why dismissal is appropriate here. Plaintiffs plead that the Fixed Dollar Account provided a guaranteed rate of return between 4.28% to 5.05% from 2015 to 2020. Am. Compl. ¶ 84. This return was far superior to that of other stable value funds during recent periods, which has generally been less than 3.5% and often far less. *See Sandoval v. Exela Enter. Sols., Inc.*, No. 17-01573, 2020 WL 9259108, at *7 (D. Conn. Mar. 30, 2020) (dismissing ERISA claim regarding stable value fund where March 2019 complaint acknowledged a guaranteed 1.5% gross return); *Austin*, 2014 WL 7359058, at *14 (dismissing ERISA fiduciary duty breach claims where stable value fund returned 1.79%, 1.27%, and 0.84% in 2011, 2012, and 2013, respectively).[16]

For these reasons, Plaintiffs' allegations as to the Fixed Dollar Account fail, and the Plans' use of it as a default investment option does not permit a reasonable inference of breach. That use is instead consistent with the Plans' fiduciaries making a reasonable decision to protect participant assets from potential losses while also providing them with a competitive yield.

## C. The Plans' Use of the MainStay Funds Does Not Give Rise to a Reasonable Inference of Fiduciary Breach.

### 1. *Plaintiffs' allegations that the MainStay Funds underperformed comparators fail.*

Plaintiffs' allegations about purported underperformance of the MainStay Funds also do

---

[16] *See also Ortiz v. Am. Airlines, Inc.*, No. 16-151, 2016 WL 8678361, at *9 (N.D. Tex. Nov. 18, 2016) (noting statement in declaration that stable value funds returned an average of 2.25% with certain "well-performing" funds returning 2.97% and 3.03% in the five-year period before February 2016); *Rozo*, 2021 WL 1837539, at *1, 2, 15 (annual return between 1.10% and 3.50% from November 2008 to April 2021 was "attractive to plan participants"); *Dezelan*, 2017 WL 2909714, at *2 (dismissing ERISA claim where stable value fund had a 3.0% guaranteed gross return in 2014).

not raise a reasonable inference of fiduciary breach.

*First*, although Plaintiffs plead performance data for the Income Builder Fund, All Cap Fund, and Small Cap Fund, they have failed to plead that any underperformance by these funds was substantial or consistent, as they must to survive dismissal. *See Patterson v. Morgan Stanley*, No. 16-6568, 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (dismissing claim for these failures). These three funds either outperformed the pleaded comparators over the prior ten years or modestly underperformed them. Am. Compl. ¶ 102. Any underperformance over that period is therefore not substantial enough to permit an inference of fiduciary breach. *See Patterson*, 2019 WL 4934834, at *10.

Nor is any underperformance by these funds consistent. Plaintiffs concede that one of the funds, the Income Builder Fund, outperformed a pleaded comparator over the prior ten years. Am. Compl. ¶ 102. Additionally, on an annual basis, each of these three funds has outperformed at least one of its pleaded comparators almost ***50% of the time*** during the putative class period. Indeed, in some years, these funds outperformed both of the pleaded comparators, as the Income Builder Fund did in 2016 and 2019 and the All Cap Fund did in 2017 and 2019:

| Income Builder, All Cap, and Small Cap Funds Annual Performance Chart[17] (Shading Indicates that Fund Outperformed At Least One Comparator That Year) | | | | | | |
|---|---|---|---|---|---|---|
| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
| **Income Builder Fund** | **-3.51%** | **9.42%** | **12.37%** | **-5.35%** | **18.57%** | **7.29%** |
| *Blended Benchmark Index* | 0.08% | 5.23% | 12.62% | -4.19% | 18.11% | 13.31% |
| *Global Allocation* | -1.98% | 7.00% | 17.12% | -5.56% | 18.53% | 13.55% |
| **All Cap Fund** | **-2.38%** | **9.19%** | **22.73%** | **-10.85%** | **31.55%** | **10.40%** |
| *Russell 3000* | 0.48% | 12.74% | 21.13% | -5.24% | 31.02% | 20.89% |
| *Russell 1000* | 0.92% | 12.05% | 21.69% | -4.78% | 31.43% | 20.96% |
| **Small Cap Fund** | **-3.89%** | **16.02%** | **15.62%** | **-16.39%** | | |
| *Russell 2000* | -4.41% | 21.31% | 14.65% | -11.01% | | |
| *Russell 2500* | -2.90% | 17.59% | 16.81% | -10.00% | | |

---

[17] Returns for the Income Builder, All Cap, and Small Cap Funds, and for their prospectus benchmarks as of each year, are disclosed in the funds' summary prospectuses, which were publicly filed and relied on by Plaintiffs. Income Builder, All Cap, and Small Cap Funds Summary Prospectuses, Rosenberg Decl. Exs. 18-33; *see* Am.

Because these funds outperformed the pleaded comparators almost half of the time, Plaintiffs' allegations fail to infer a breach. *See Patterson*, 2019 WL 4934834, at *11 (comparison failed where challenged fund outperformed in just one year); *Dorman v. Charles Schwab Corp.*, No. 17-000285, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (dismissing claim in part because at-issue funds outperformed comparators in certain years).

**Second**, although Plaintiffs allege that the International Equity Fund was an imprudent investment option, they make no allegations that the International Equity Fund underperformed any comparators. *See generally* Am. Compl. It is easy to see why. The International Equity Fund has outperformed its primary prospectus benchmark in five of the past six years, and outperformed both that benchmark and its Morningstar index comparator (the two types of comparators Plaintiffs use for the above three funds) in three of the past six years:

| International Equity Fund Annual Performance Chart (Shading Indicates that Fund Outperformed At Least One Comparator That Year)[18] | | | | | | |
|---|---|---|---|---|---|---|
| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
| **International Equity Fund** | 5.44% | -5.08% | 32.34% | -11.62% | 24.47% | 21.00% |
| *MSCI ACWI ex-US Index (Prospectus)* | -5.66% | 4.50% | 27.19% | -14.20% | 21.50% | 10.65% |
| *MSCI ACWI Ex USA Growth NR USD (Morningstar)* | -1.25% | 0.13% | 32.02% | -14.42% | 27.34% | 22.20% |

Plaintiffs' allegations as to the International Equity Fund therefore fail to infer a breach.

**Third**, although Plaintiffs allege that the Retirement Funds underperformed the Vanguard

Compl. ¶¶ 102-06 & nn. 6-8. Fund returns reflect the share classes that were offered in the Plans at the beginning of each year. *See* Am. Compl. ¶¶ 113, 119. Russell 1000 and Russell 2000 Index returns relied on by Plaintiffs were obtained from Russell's website. Russell, Rosenberg Decl. Exs. 46-47; *see* Am. Compl. ¶ 102. Global Allocation Index returns were obtained from Morningstar, the source on which Plaintiffs allege they relied. Global Allocation Returns, Rosenberg Decl. Ex. 48; *see* Am. Compl. ¶ 102 & n.4. The Small Cap Fund was removed from the Plans in 2019 (Am. Compl. ¶ 101) and therefore data for that fund are provided through 2018.

[18] Returns for the International Equity Fund and its prospectus benchmark are disclosed in the fund's summary prospectuses, which were publicly filed. International Equity Fund Summary Prospectuses, Rosenberg Decl. Exs. 34-39. Fund returns reflect the share class that was offered in the Plans at the beginning of each year. *See* Am. Compl. ¶ 125. Returns for the Morningstar index comparator were obtained from Morningstar, the source on which Plaintiffs relied for similar data. Morningstar, Rosenberg Decl. Exs. 49-50; *see* Am. Compl. ¶ 102 & n.4.

Target Retirement Funds ("Vanguard Retirement Funds") (Am. Compl. ¶ 129), they have failed to adequately allege that the two sets of funds are comparable. The Retirement Funds were actively-managed and invested predominately in actively-managed mutual funds, while the Vanguard Retirement Funds are index funds that invest predominately in other index funds.[19] Index funds are not appropriate comparators for actively-managed funds because of the differences in their strategies, regardless of any similarities Plaintiffs allege between the funds' asset allocations (Am. Compl. ¶ 133). *Patterson*, 2019 WL 4934834, at *12 (rejecting comparison between actively-managed funds and index funds); *Bekker*, 2018 WL 4636841, at *7 (same). Indeed, the Eighth Circuit has affirmed dismissal of claims like this one that proprietary, actively-managed target-date funds were imprudent because they underperformed target-date funds managed by Vanguard, reasoning that "the fact that [the Vanguard funds,] with a different investment strategy[,] ultimately performed better does not establish anything about whether the [at-issue funds] were an imprudent choice at the outset." *Meiners*, 898 F.3d at 823.

Nor is it relevant that the Plans' fiduciaries elected to map assets previously invested in the Retirement Funds into the Vanguard Retirement Funds (Am. Compl. ¶ 134); fiduciaries may elect to replace a series of funds with funds that have a different investment strategy, but doing so does not mean that the two strategies are comparable or that it was imprudent to offer the initial strategy. *See Laboy v. Bd. of Tr. of Bldg. Serv. 32 BJ SRSP*, No. 11-5127, 2012 WL 3191961, at *3 (S.D.N.Y. Aug. 7, 2012) ("Defendants' decision to change funds will not sustain allegations that the . . . [original f]und was an imprudent choice previously.").

Finally, Plaintiffs' allegations also fail because each of the Retirement Funds has

---

[19] Retirement Fund 2018 Annual Report at D2-0719, 25, 32, 38, 45, 51, 58, 64, 71, 76, Rosenberg Decl. Ex. 40; Vanguard Retirement Target Fund 2019 Prospectus at D2-0439, 46, 53, 60, 67, 76, 83, 90, 97, 504, Rosenberg Decl. Ex. 16.

outperformed, on an annual basis, even the inapposite Vanguard fund of the same target

retirement year at least once during putative class period, and three of the five challenged

Retirement Funds did so 50% of the time during the putative class period:

| Retirement Funds Annual Performance Chart (Shading Indicates that Fund Outperformed At Least One Comparator That Year)[20] | | | | |
|---|---|---|---|---|
| | 2015 | 2016 | 2017 | 2018 |
| **MainStay 2010 Fund** | **-0.70%** | **5.38%** | **10.23%** | **-4.75%** |
| *Vanguard 2010 Fund* | -0.20% | 5.31% | -- | -- |
| *Vanguard Income Fund* | -0.17% | 5.29% | 8.54% | -1.98% |
| **MainStay 2020 Fund** | **-0.80%** | **5.71%** | **14.21%** | **-6.57%** |
| *Vanguard 2020 Fund* | -0.68% | 7.04% | 14.13% | -4.21% |
| **MainStay 2030 Fund** | **-0.71%** | **6.08%** | **17.77%** | **-8.09%** |
| *Vanguard 2030 Fund* | -1.03% | 7.97% | 17.57% | -5.82% |
| **MainStay 2040 Fund** | **-0.80%** | **6.03%** | **20.31%** | **-9.63%** |
| *Vanguard 2040 Fund* | -1.59% | 8.81% | 20.73% | -7.31% |
| **MainStay 2050 Fund** | **-0.54%** | **5.54%** | **21.92%** | **-9.94%** |
| *Vanguard 2050 Fund* | -1.58% | 8.95% | 21.47% | -7.87% |

For these reasons, Plaintiffs' allegations regarding the performance of the MainStay

Funds fail to permit a reasonable inference of fiduciary breach. *See supra* p. 16.

> 2. *Plaintiffs' allegations that the MainStay Funds had higher fees than comparators fail.*

Plaintiffs' allegations about the MainStay Funds' fees also fail to state a claim.

"[N]othing in ERISA requires every fiduciary to scour the market to find and offer the

cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker v.*

*Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). For this reason, courts regularly dismiss

allegations like Plaintiffs' that a breach should be inferred because the challenged funds had

---

[20] Returns for the Retirement Funds and Vanguard Retirement Funds are disclosed in the funds' summary prospectuses and prospectuses, which were publicly filed. Retirement Funds Summary Prospectuses, Rosenberg Decl. Exs. 41-45; Vanguard Retirement Funds Prospectuses, Rosenberg Decl. Exs. 16-17. Returns utilized reflect the share class offered by the Plans for the Retirement Funds and Vanguard Retirement Funds. Defendants compare the MainStay 2010 Fund both to the Vanguard fund of the same target retirement year for the years that fund was available and to the Vanguard Institutional Target Retirement Income Fund. Am. Compl. ¶ 129 n.15. The Retirement Funds were removed from the Plans in 2019 (*id.* ¶ 130) and therefore data are provided through 2018.

higher fees than did other investments. *See, e.g.*, *Patterson*, 2019 WL 4934834, at *12

("conclusory allegation" that at-issue fund had higher fees than another fund "not enough to state

a claim of imprudence"). This is particularly true where Plaintiffs compare each of the MainStay

Funds' fees to those of only one or two other investment options (Am. Compl. ¶¶ 112, 115, 118,

121, 128). As the Eighth Circuit explained in affirming dismissal, "the existence of a cheaper

fund does not mean that a particular fund is too expensive *in the market generally* or that it is

otherwise an imprudent choice." *Meiners*, 898 F.3d at 823-24 (emphasis in original).

Plaintiffs' allegations that the All Cap Fund, Income Builder Fund, and International

Equity Fund had fees higher than fund averages in a June 2019 report regarding a survey of

retirement plans (Am. Compl. ¶¶ 114, 120, 123-24) also fail. One court has already rejected

similar allegations comparing a plan's fees to those in that same report because the complaint

lacked allegations, as the Amended Complaint does, regarding what plans were included in the

report's survey "and why they are comparable" to the at-issue plan. *See Wehner v. Genentech,

Inc.*, No. 20-06894, 2021 WL 507599, at *7 (N.D. Cal. Feb. 9, 2021); *see also Bekker*, 2018 WL

4636841, at *7 (rejecting excessive fee allegations where plaintiffs had not "demonstrate[d] the

requisite comparability" between the at-issue fund and the alleged comparable fund).

Moreover, although Plaintiffs allege that, until June 26, 2018, the Plans were invested in

higher-cost share classes of the All Cap Fund and Income Builder Fund (Am. Compl. ¶¶ 113,

119), and until March 29, 2019, were invested in a higher-cost share class of the International

Equity Fund (*id.* ¶ 125), these allegations also do not permit an inference of fiduciary breach.

"[M]erely alleging that a Plan offer[ed] [one share class] rather than [a cheaper one] is

insufficient to state a claim for breach of the duty of prudence . . . ." *White*, 2017 WL 2352137,

at *14 (N.D. Cal. May 31, 2017) (dismissing claim), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

The allegations are particularly lacking here because the cheaper share class now available under the Plans, the "R6" share class, first came to market on February 28, 2019 for the International Equity Fund and on February 28, 2018 for the All Cap Fund and Income Builder Fund,[21] *less than one month* or less than four months, respectively, before they were added to the Plans.[22]

## III.  The Prohibited Transaction Claims (Counts II and III) Fail as a Matter of Law.

Counts II and III, which assert prohibited transaction claims, should also be dismissed.

ERISA expressly exempts the use of proprietary investment products, including insurance products such as the Fixed Dollar Account and mutual funds like the at-issue MainStay Funds, from the transactions prohibited by ERISA §§ 406(a) and (b).  These exemptions— described in more detail below—facilitate Congress' and the DOL's long-held position that offering such products in a retirement plan is both common and permissible.  Indeed, as both recognize, "it would be 'contrary to normal business practice' for [an] insurer to purchase the products of another company for its own in-house plans."[23]  Because it is clear from the face of the Amended Complaint that the relevant exemptions apply, the Court should dismiss the claims. *See*, *e.g.*, *Patterson*, 2019 WL 4934834, at *16-17 (dismissing claim where the complaint failed to allege lack of compliance with PTE 77-3); *Leber v. Citigroup, Inc.*, No. 07-9329, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (dismissing claim under PTE 77-3).

---

[21] *See* International Equity Fund 2021 Summary Prospectus at D2-0673, Rosenberg Decl. Ex. 34; Income Builder Fund 2021 Summary Prospectus at D2-0578, Rosenberg Decl. Ex. 24; All Cap Fund 2021 Summary Prospectus at D2-0526, *id.* Ex. 18.

[22] Plaintiffs also suggest that the All Cap Fund and Retirement Funds were imprudent because few individual investors or other retirement plans invested in them.  Am Compl. ¶¶ 116-18, 127-28, 130, 136.  These allegations fail to give rise to an inference of breach because "ERISA . . . does not require that fiduciaries mimic the industry standard when making investments."  *Anderson*, 2021 WL 229235, at *10 (allegations regarding fiduciaries' "deviation[s] from industry allocation standards" do not state a claim for breaches of fiduciary duty).  This is especially true for fiduciaries of plans sponsored by fund managers, or companies affiliated with those managers, because "[t]he prudence of [those plans'] investments is measured against what a prudent investor would do in [those fiduciaries'] shoes" and "[i]t is irrelevant" to that analysis "whether [the manager's] competitors invested in [the manager's] funds*." Brotherston v. Putnam Invs., LLC*, No. 15-13825, 2017 WL 2634361, at *8 n.12 (D. Mass. June 19, 2017), *vacated on other grounds by* 907 F.3d 17 (1st Cir. 2018).

[23] 56 Fed. Reg. at 10730; H.R. Conf. Rep. No. 93-1280, *reprinted in* 1974 U.S.C.C.A.N. at 5096.

Count III also fails to the extent it alleges that Defendants violated ERISA § 406(b) because corporate employees were fiduciaries. As explained below, this practice is also common and expressly permitted by ERISA.

### A. Offering the Fixed Dollar Account and MainStay Funds Is Exempt from ERISA's Prohibited Transaction Provisions.

*First*, Counts II and III fail as to the Fixed Dollar Account because ERISA § 408(b)(5) provides a prohibited transaction exemption that "allows plans sponsored by insurance companies to buy the sponsor's insurance products," including stable value funds and annuities. *Dupree*, 2007 WL 2263892, at *40. The Fixed Dollar Account is offered through a group annuity contract between the Plans and NY Life. Am. Compl. ¶ 70. Because NY Life is both the insurer that provides the Fixed Dollar Account and the Plans' sponsor, "[ERISA § 408(b)(5)] applies if no more than adequate consideration was paid by the Plan[s] for the contract." *Dupree*, 2007 WL 2263892, at *40. Because Plaintiffs do not allege that more than adequate consideration was paid in connection with the Fixed Dollar Account, "even in the light most favorable to plaintiffs, the complaint asserts nothing more than that defendants" complied with the relevant prohibited transaction exemption. *Leber*, 2010 WL 935442, at *10. Counts II and III should therefore be dismissed with respect to the Fixed Dollar Account. *See supra* p. 20.

*Second*, Counts II and III fail as against the MainStay Funds because the alleged prohibited transactions are exempt under PTE 77-3, which permits a plan sponsor to offer mutual funds managed in-house so long as, among other things, "[t]he plan does not pay any investment management, investment advisory or similar fee to [an affiliated] investment adviser . . . or affiliated person" aside from "the payment of investment advisory fees by the [mutual fund] under the terms of its investment advisory agreement adopted in accordance with . . . the Investment Company Act," and "[a]ll other dealings between the plan and the [mutual fund], the

investment adviser . . . or any affiliated person . . . are on a basis no less favorable to the plan than such dealings are with other shareholders of the [mutual fund]." 42 Fed. Reg. at 18735.

Here, the Amended Complaint "alleges the very type of activity that th[is] exemption expressly allows to occur—the investment by a plan in its affiliated mutual funds on the terms generally available to other investors." *Leber*, 2011 WL 5428784, at *10. It "makes no allegations to support a finding that the conduct fell beyond the exemption." *Id.* Because it is clear from the face of the Amended Complaint that the Plans' use of the MainStay Funds is consistent with PTE 77-3, Counts II and III should also be dismissed with respect to the MainStay Funds. *See Patterson*, 2019 WL 4934834, at *16-17 (dismissing claim).[24]

**B. The Amended Complaint Fails to Otherwise Plead Self-Dealing.**

Count III additionally alleges in conclusory form that Defendants violated ERISA § 406(b) because the Plans' fiduciaries were senior employees of NY Life who, in their fiduciary roles, made decisions that produced incidental benefits to NY Life or to themselves. *See* Compl. ¶ 156. Both practices are common and permissible. "Officers of a corporation often are trustees of its benefit plan." *Dupree*, 2007 WL 2263892, at *37 (internal quotations omitted). Indeed, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), "expressly permits a corporate officer or employee to serve as a Plan fiduciary." *Greater Blouse, Skirt & Undergarment Ass'n, Inc. v. Morris*, No. 93-1257, 1996 WL 180019, at *9 (S.D.N.Y. Apr. 16, 1996). Nor is ERISA violated "simply because [an action taken by fiduciaries] incidentally benefits the corporation or, indeed, [the fiduciaries] themselves." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982). Because these allegations only allege conduct permitted by ERISA, the sections of Count III implicated by them should also be dismissed. *See supra* pp. 20-21.

---

[24] *See also Patterson v. Capital Grp.*, No. 17-4399, 2018 WL 748104, at *5 (C.D. Cal. Jan. 23, 2018) (dismissing claim where the plaintiff failed to allege "any facts that suggest" that PTE 77-3's conditions were not met).

**IV.** **Count IV Fails Because Plaintiffs Have Not Pled Antecedent Breaches.**

Count IV alleges that NY Life is liable under ERISA § 405(a) as a co-fiduciary knowing participation in the "Plan"[25] fiduciaries' alleged breaches of their duties. Compl. ¶¶ 161-72. However, "[c]laims for . . . co-fiduciary liability require antecedent breaches in order to be viable." *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 617 (S.D.N.Y. 2015), *aff'd on other grounds*, 649 F. App'x 110 (2d Cir. 2018). Because the Amended Complaint fails to plead any antecedent breaches as to the Plans, the co-fiduciary liability claim must also be dismissed. *See id.* (dismissing co-fiduciary claim for this reason); *Majad ex rel. Nokia Ret. Savs. & Inv. Plan v. Nokia, Inc.*, 528 F. App'x 52, 57 (2d Cir. 2013) (ERISA § 405(a) claim was "properly dismissed for . . . failure adequately to plead a predicate breach").

**V.** **Count V Fails to State a Claim for Violation of ERISA's Anti-Inurement Provision.**

Count V, brought under ERISA's anti-inurement provision, § 403(c)(1), should be dismissed for lack of a cognizable legal theory. The anti-inurement provision does not bar plan sponsors from receiving compensation with respect to their plans' investment options.

ERISA's anti-inurement provision states that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Plaintiffs assert that the anti-inurement provision bars NY Life from being compensated directly or indirectly through receipt of an advisory fee from proprietary investment options or use of funds invested in the Fixed Dollar Account. *See* Am. Compl. ¶ 195. Plaintiffs are wrong. Indeed, one court has already dismissed claims that ERISA's anti-inurement provision bars a company from making its own funds

---

[25] Am. Compl. ¶¶ 179-90 does not identify or define the "Plan" to which those allegations relate.

available to participants and receiving normal fees from those investment management activities. *See Dupree*, 2007 WL 2263892, at *44.

As a matter of statutory interpretation, ERISA § 403(c)(1) does not bar an employer from providing investment services to its plan or being compensated if it does so. Instead, the section is directed at payments or distributions from the plan to an employer for its own purposes, such as paying its own debts, as opposed to payments or distributions to the employer that facilitate plan investments that inure to the benefit of a plan or its participants. This is confirmed by the explicit exceptions to the anti-inurement provision, all of which set forth circumstances under which an employer may receive plan assets *when acting as an employer*.[26] It is further confirmed by decisions in this Circuit that have found violations of the anti-inurement provisions for conduct far different than that alleged here. For example, in a number of cases, courts found that the defendants had breached the anti-inurement clause by using available funds to pay corporate creditors rather than making due and owing plan contributions. *See, e.g.*, *NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*, 60 F. Supp. 2d 194, 203 (S.D.N.Y. 1999).

The inapplicability of the anti-inurement provision here is additionally confirmed when ERISA § 403(c)(1) is placed into context within the entire act. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (statutes should be read as a whole and individual provisions should be interpreted to "produce[] a substantive effect that is compatible with the rest of the law"). Congress recognized that it is "common practice" for financial services companies to invest their own plans' assets in their own investment funds,[27]

---

[26] *See, e.g.*, ERISA § 403(c)(2)(A), 29 U.S.C. § 1103(c)(2)(A) (employer may receive back contributions it makes to the plan by mistake); ERISA § 403(c)(3), 29 U.S.C. § 1103(c)(3) (return of overpayment to the employer). It is a well-settled maxim of statutory construction that these statutory provisions shed light on the meaning of the first part of that same statutory section. *See, e.g.*, *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (phrases in a statute are to be understood with relation to others in the same provision).
[27] H.R. Conf. Rep. No. 93-1280, *reprinted in* 1974 U.S.C.C.A.N. at 5096.

and has provided express exemptions for plans to offer products advised by the sponsor or its affiliates, for compensation.  *See* ERISA §§ 408(b)(5), (8), 29 U.S.C. §§ 1108(b)(5) and (8).[28]  It expressly allows fiduciaries to receive "reasonable compensation for services rendered."  ERISA § 408(c)(2), 29 U.S.C. § 1108(c)(2).

Plaintiffs' view of the anti-inurement provision would necessarily render these other statutory provisions meaningless because, under their view, no employer could ever obtain any money directly or indirectly from a plan.  *See Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 379-81 (1980) (rejecting interpretation of one ERISA statutory provision because it would have rendered "meaningless" another ERISA provision).  That Congress did not intend the anti-inurement provision to bar the use of proprietary investments is further confirmed by ERISA's legislative history, which contemplates permissible scenarios—subject to DOL oversight—where "investments may inure to the direct or indirect benefit of the plan sponsor."[29]

Indeed, the DOL has issued exemptions for the precise conduct at issue here—enabling plans sponsored by insurance companies like NY Life to offer their own investment products to the participants in the plans they sponsor, for compensation.  *See supra* p. 20.  If ERISA's anti-inurement provision meant what Plaintiffs argue, that the conduct at issue here is a *per se* violation of the anti-inurement provision, then each of those DOL exemptions would be nullities.

In sum, Count V should be dismissed because Plaintiffs misinterpret ERISA § 403(c)(1).

## CONCLUSION

For these reasons, the Amended Complaint should be dismissed with prejudice.

---

[28] Congress has provided other exemptions for similar transactions.  For example, ERISA § 408(b)(4), 29 U.S.C. § 1108(b)(4), allows a bank that sponsors a plan for its employees to invest plan assets in deposits held by the employer-bank.
[29] H.R. Conf. Rep. No. 93-1280, *reprinted in* 1974 U.S.C.C.A.N. at 5086.

Dated: July 16, 2021                    Respectfully submitted,

/s/ *James O. Fleckner*
James O. Fleckner, *admitted pro hac vice*
Dave Rosenberg, *admitted pro hac vice*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
jfleckner@goodwinlaw.com
drosenberg@goodwinlaw.com

William J. Harrington
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
Fax: (212) 355-3333
wharrington@goodwinlaw.com

*Counsel for Defendants*