UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STUART KROHNENGOLD, et al.,

               Plaintiffs,

    v.

NEW YORK LIFE INSURANCE CO., et al.

               Defendants.

Case No. 1:21-cv-01778

**ORAL ARGUMENT REQUESTED**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.      Plaintiffs Have Not Salvaged Count I. ............................................................................... 1

     A.      Claims Regarding The Fixed Dollar Account Are Time-Barred. ........................... 1

     B.      Even if Not Time-Barred, Plaintiffs' Allegations Regarding the Fixed Dollar Account Fail to State a Claim. ................................................................... 2

     C.      Plaintiffs' Allegations Regarding the MainStay Funds Fail to State a Claim. ................................................................................................................... 3

         1.      Plaintiffs' underperformance allegations fail. ............................................. 3

         2.      Plaintiffs' fee allegations fail. ..................................................................... 5

II.     Plaintiffs Have Failed to Salvage Counts II and III. .......................................................... 7

III.    Plaintiffs Have Failed to Salvage Count IV. ..................................................................... 8

IV.    Plaintiffs Have Failed to Salvage Count V. ....................................................................... 8

V.     Plaintiffs' Standing Arguments Fail. .................................................................................. 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*APWU v. Potter*,
   343 F.3d 619 (2d Cir. 2003)..................................................................................................10

*Beach v. JPMorgan Chase Bank*,
   No. 17-563 (S.D.N.Y. Mar. 28, 2013) ..................................................................................6, 7

*Becker v. Wells Fargo & Co.*,
   No. 20-2016, 2021 WL 1909632 (D. Minn. May 12, 2021).......................................................4

*Birse v. CenturyLink, Inc.*,
   No. 17-02872, 2019 WL 1292861 (D. Colo. Mar. 20, 2019) ...................................................4

*Cunningham v. Cornell Univ.*,
   No. 16-6525, 2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ...................................................4

*Divane v. Nw. Univ.*,
   953 F.3d 980 (7th Cir. 2020) ....................................................................................................7

*Dupree v. Prudential Ins. Co. of Am.*,
   No. 99-8337, 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) ..................................................3, 9

*Falberg v. Goldman Sachs Grp., Inc.*,
   No. 19-9910, 2020 WL 3893285 (S.D.N.Y. July 9, 2020)...................................................4, 6

*Henry v. Champlain Enters., Inc.*,
   445 F.3d 610 (2d Cir. 2006).....................................................................................................8

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
   513 F. App'x 78 (2d Cir. 2013) ...............................................................................................4

*LLM Bar Exam, LLC v. Barbri, Inc.*,
   271 F. Supp. 3d 547 (S.D.N.Y. 2017).....................................................................................2

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ...........................................................................................5, 6, 7

*In re Omnicom ERISA Litigation*,
   No. 20-4141, 2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021).......................................................4

*Patterson v. Morgan Stanley*,
   No. 16-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)..............................................4, 6, 7

*Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*,
    541 U.S. 1 (2004)...........................................................................................................9

*Rozo v. Principal Life Ins. Co.*,
    No. 14-463, 2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) .........................................9

*Sacerdote v. N.Y. Univ.*,
    9 4th 95 (2d Cir. 2021)..................................................................................................5

*Sacerdote v. N.Y. Univ.*,
    No. 16-6284, 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017).......................................4

*Skin Pathology Assocs., Inc. v. Morgan Stanley & Co.*,
    27 F. Supp. 3d 371 (S.D.N.Y. 2014)............................................................................7

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
    Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013).......................................................................................10

*Sweda v. Univ. of Pa.*,
    923 F.3d 320 (3d Cir. 2019)..........................................................................................5

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015)......................................................................................................1

*Toomey v. DeMoulas Super Markets, Inc.*,
    No. 19-11633, 2020 WL 3412747 (D. Mass. Apr. 16, 2020)..............................2, 3

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019) .........................................................................5

**Statutes**

29 U.S.C. § 1002(18) (ERISA § 3(18)) ................................................................................8

29 U.S.C. § 1101(b)(2) (ERISA § 401(b)(2))......................................................................9

29 U.S.C. § 1104(c)(4)(B)(ii) (ERISA § 404(c)(4)(B)(ii)).................................................5

29 U.S.C. § 1108(b)(5) (ERISA § 408(b)(5))...........................................................3, 8, 9

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)........................................................................................................10

**INTRODUCTION**

Plaintiffs' Opposition fails to salvage their deficient Amended Complaint.[1] It provides no valid rationale to allow Plaintiffs to pursue untimely claims as to use of the Fixed Dollar Account as a default investment option. It further acknowledges that the few MainStay Funds Plaintiffs challenge outperformed Plaintiffs' own comparators on many occasions; the performance and fees of the minority of the Plans' options challenged by Plaintiffs raise no inference of a deficient process. And Plaintiffs' arguments regarding their ancillary ERISA counts all fail to provide viable grounds to allow any of those claims to proceed.

Finally, there is no dispute that Plaintiffs must establish that at least one of them was defaulted into the Fixed Dollar Account to have standing to sue over the use of that fund as a default. Because none were, dismissal is also warranted. To the extent that any issue of fact exists as to standing, as Plaintiffs recognize, only limited, jurisdictional discovery is warranted.

**ARGUMENT**

**I.   Plaintiffs Have Not Salvaged Count I.**

**A.   Claims Regarding The Fixed Dollar Account Are Time-Barred.**

Plaintiffs' arguments fail to establish that their claims are timely.

First, Plaintiffs assert that, even if their contributions were defaulted into the Fixed Dollar Account outside of the repose period, their claims are timely if "Defendants . . . failed to reinvest the assets previously defaulted to the FDA" during the repose period. Opp. at 7. But their case, *Tibble v. Edison International*, 575 U.S. 523 (2015), does not support their conclusion. *Tibble* held simply that fiduciaries have a "continuing duty to monitor investments and remove imprudent ones." *Id.* at 530. But, unlike in *Tibble*, Plaintiffs do not allege that the Fixed Dollar

---

[1] Capitalized terms have the same meaning as in Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss ("Mot."), ECF No. 42. Plaintiffs' Opposition is cited as "Opp."

Account is an imprudent option that should be removed from the Plans altogether; instead, they allege that they should not have been defaulted into it. In any event, Plaintiffs' own actions contradict their position. Each Plaintiff who claims he was defaulted elected to remain invested in the Fixed Dollar Account, and Messrs. Krohnengold and Webber have elected to contribute even more to that fund, demonstrating their belief that the fund should not be removed.[2]

Second, the Opposition seeks to introduce unpleaded facts to attempt to establish that Mr. Antoine's contributions were defaulted into the Fixed Dollar Account within the repose period. Opp. at 7. But "it is axiomatic that a complaint cannot be amended by the briefs in opposition to a motion to dismiss" on a Rule 12(b)(6) issue such as this. *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 580 (S.D.N.Y. 2017) (internal quotations omitted).

### B. Even if Not Time-Barred, Plaintiffs' Allegations Regarding the Fixed Dollar Account Fail to State a Claim.

Plaintiffs' allegations also fail as a matter of law. Plaintiffs argue that stable value funds are *per se* imprudent default investments for plans with "diverse plan populations in terms of age"—which would encompass nearly every retirement plan—and that only default funds "provid[ing] a mix of both capital preservation and appreciation asset classes" can be used. Opp. at 11-12 (citing Default Investment Alternatives Under Participant Directed Individual Account Plans, 72 Fed. Reg. 60452-01, 60460-63 (Oct. 24, 2007)). But nowhere does the guidance from the DOL and Congress—which allow fiduciaries to select stable value funds as defaults—limit itself to only plans for participants of a certain age. *See* Mot. at 10-11.[3]

Indeed, Plaintiffs' primary case, *Toomey v. DeMoulas Super Markets, Inc.*, No. 19-11633, 2020 WL 3412747 (D. Mass. Apr. 16, 2020), supports Defendants. The plan there

---

[2] Declaration of Michelle C. Yau ("Yau Decl.") Ex. 2 ¶ 3; *id.* Ex. 3 ¶ 5.
[3] In any event, the regulation and statute Plaintiffs cite were promulgated more than fifteen years after Plaintiff Krohnengold claims he was first defaulted, rendering them inapplicable to any claim of his. *See* Mot. at 10-11.

offered only one investment option, not the approximately twenty-four mutual funds of diverse strategies in addition to the Fixed Dollar Account that the Plans offer; unlike here, *Toomey* plan "[p]articipants ha[d] no choice over how their money is invested." *Id.* at *1.[4] And far from challenging stable value funds, *Toomey* plaintiffs had alleged that their plan should have invested ***more of its assets*** in stable value funds, asserting that, had their plan done so, it could have returned between 1.69% and 1.84%. Compl. ¶¶ 39-44, *Toomey* (July 30, 2019). By Plaintiffs' own allegations, here, the Fixed Dollar Account returned between 4.28% and 5.05%. Am. Compl. ¶ 84. Therefore, *Toomey* is not only distinguishable in its holding, but its pleaded facts only further demonstrate that—regardless whether a sweeping rule could be applied to other stable value funds (which it should not)—such a rule would not apply to the Fixed Dollar Account because its returns easily eclipse that of other stable value funds.

Finally, Plaintiffs incorrectly state that the Court can infer a breach because the Fixed Dollar Account's assets were held in NY Life's general account. Opp. at 11. ERISA § 408(b)(5), 29 U.S.C. § 1108(b)(5), provides an exemption that "allows plans sponsored by insurance companies to buy the sponsor's insurance products." *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337, 2007 WL 2263892, at *40 (S.D. Fla. Aug. 7, 2007). Conduct expressly permitted by one section of ERISA cannot give rise to a violation of another. *See infra* p. 10.

### C. Plaintiffs' Allegations Regarding the MainStay Funds Fail to State a Claim.

#### 1. *Plaintiffs' underperformance allegations fail.*

Plaintiffs' Opposition fails to demonstrate that the Amended Complaint alleged that the MainStay Funds' underperformance was substantial and consistent, as it must to survive dismissal. Opp. at 17-21. This is particularly the case where certain of the alleged comparators

---

[4] For this reason, Plaintiffs' assertion that assets were "funneled" into any investment is absurd. *See* Opp. at 23.

were not in fact comparable to the MainStay Funds. Mot. at 14-18.

Plaintiffs concede that the International Equity Fund outperformed its comparators. Opp. at 19 n.9. They ignore that the MainStay Retirement Funds outperformed the Vanguard Retirement Funds in certain years. *See* Mot. at 17-18. And they have failed to plead that any underperformance by the All Cap, Income Builder, and International Equity Funds was substantial and consistent. These funds outperformed one of Plaintiffs' comparators almost 50% of the time over the putative class period.[5] Mot. at 15. Plaintiffs respond without support that the proper metric is how often the MainStay Funds outperformed ***all comparators***, and that these funds did so 34% of the time. Opp. at 18-19. Even if Plaintiffs' high bar was correct—which it is not—no inference of breach is permissible.[6] *See Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, 513 F. App'x 78, 79-80 (2d Cir. 2013) (affirming dismissal where fund underperformed all comparators); *Patterson v. Morgan Stanley*, No. 16-6568, 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019) (dismissing where fund outperformed in 25% of periods).[7]

Plaintiffs also argue they have pleaded appropriate alternatives for the MainStay Retirement Funds (Opp. at 20), but they are incorrect. *In re Omnicom* is of no help to Plaintiffs because there the plaintiffs alleged that the funds had the same manager and "appear to follow essentially the same strategy." 2021 WL 3292487, at *13. By contrast, Plaintiffs only allege

---

[5] The Opposition incorrectly refers to the Morningstar benchmarks as benchmarks "selected" by NY Life (at 17), even though it then notes that the Amended Complaint itself failed to identify these comparators as ones selected by Morningstar, not NY Life. *See* Opp. at nn.7-8.

[6] Plaintiffs also argue that the funds' ten-year underperformance is substantial. Opp. at 17. But the funds that underperformed only did so by 2 to 3%, which is not substantial. *See Birse v. CenturyLink, Inc.*, No. 17-02872, 2019 WL 1292861, at *5 & n.2 (D. Colo. Mar. 20, 2019) (dismissing claim alleging similar performance).

[7] The vast majority of the decisions Plaintiffs cite are inapposite because there was no indication that the at-issue funds outperformed the plaintiffs' comparators in any years. *See Becker v. Wells Fargo & Co.*, No. 20-2016, 2021 WL 1909632, at *5 (D. Minn. May 12, 2021); *Falberg v. Goldman Sachs Grp., Inc.*, No. 19-9910, 2020 WL 3893285, at *9 (S.D.N.Y. July 9, 2020); *Cunningham v. Cornell Univ.*, No. 16-6525, 2017 WL 4358769, at *7 (S.D.N.Y. Sept. 29, 2017); *Sacerdote v. N.Y. Univ.*, No. 16-6284, 2017 WL 3701482, at *10 (S.D.N.Y. Aug. 25, 2017), *vacated on other grounds*, 9 F.4th 95 (2d Cir. 2021). In *In re Omnicom ERISA Litigation*, No. 20-4141, 2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021), the record was silent as to specific alleged underperformance. *Id.* at *3.

that one MainStay Retirement Fund and one Vanguard Retirement Fund had similar allocations among equity and fixed income investments (Am. Compl. ¶ 133), which is not sufficient, particularly where other funds in the two series had different allocations.[8]  Nor are the two sets of funds comparable because the Plans' fiduciaries replaced one set of funds with the other.  Mot. at 17.  Indeed, Plaintiffs' argument against use of the Fixed Dollar Account as a default is that it should be replaced by a fund with different characteristics (Opp. at 12)—meaning that under their own theory a fund can (and should) be replaced by one with different characteristics.[9]

        2.       *Plaintiffs' fee allegations fail.*

None of Plaintiffs' fee arguments salvage their complaint, either.

***First,*** Plaintiffs argue that, for three of the MainStay Funds, there were brief periods of time during which the Plans did not offer the cheapest-available share class.  Opp. at 14-16 & 19 n.9.  This shows nothing.  The cheaper share classes only became available less than one or four months before they were added to the Plans.  Mot. at 19-20.  This fails to permit an inference of breach.  *Cf. Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 709 (W.D. Mo. 2019) (delay of one year in switching to newly-available lower-cost share classes was not imprudent because the switch takes time for plans).  Moreover, that the share classes were quickly added to the Plans renders Plaintiffs' authorities on this point inapposite; in each of their cases the alleged lower-cost share classes were never included, unlike here.  *See Sacerdote*, 9 4th at 109-10; *Sweda v. Univ. of Pa.*, 923 F.3d 320, 332 (3d Cir. 2019).

---

[8] For example, as of 2019 the MainStay Retirement 2030 Fund's target allocation was 66% to equities and 34% to fixed income (bonds), compared to the Vanguard Retirement 2030 Fund's allocations:  70.2% to equities and 29.8% to fixed income.  *Compare* MainStay Retirement Funds at D-0807, Decl. of Dave Rosenberg (ECF No. 43) Ex. 43 *with* Vanguard Retirement Funds at D2-0453, *id.* Ex. 16; *see Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 n.2 (8th Cir. 2018) (Vanguard target-date funds not appropriate comparators for target-date funds with higher allocations to bonds).

[9] Plaintiffs' reliance (Opp. at 20) on ERISA § 404(c)(4)(B)(ii), 29 U.S.C. § 1104(c)(4)(B)(ii), is also misplaced because it sets forth a standard to meet certain protections when mapping—not a standard for courts to use for determining whether an inference of imprudence can be established due to alleged underperformance.

5

***Second,*** the Court cannot infer a breach because the Plans did not offer supposedly cheaper separate accounts. "[N]othing in ERISA requires a Plan to offer separate accounts in lieu of reasonably-priced mutual funds." *Patterson*, 2019 WL 4934834, at \*9 (dismissing similar claim).[10] Moreover, Plaintiffs do not even allege that a separate account was available for any of the MainStay Funds but the All Cap Fund. *See* Am Compl. ¶ 112; *see also* Opp. at 15.

***Third***, Plaintiffs' arguments that the MainStay Funds were more expensive than industry averages or than a cheaper fund that replaced a MainStay Fund also fail. *See* Opp. at 15, 17. The former allegations fail because Plaintiffs have not pled that the funds or plans in the survey they reference are similar to the MainStay Funds or the Plans, as even Plaintiffs acknowledge they must do. Mot. at 19; Opp. at 16. The latter allegations fail because they are comparisons of an at-issue fund to only one other fund, which do not adequately plead that "a particular fund is too expensive *in the market generally* or that it is otherwise an imprudent choice." *Meiners*, 898 at 823 (emphasis in original); Mot. at 18-19.

\* \* \*

Plaintiffs' other arguments regarding Count I also fail. For example, they assert that the Court should follow its ruling in *Beach v. JPMorgan Chase Bank*, No. 17-563. Opp. at 13. However, the allegations in these two cases differ significantly. The *Beach* plan's lineup consisted of approximately 50% proprietary funds, compared to 15% in the Plans' in 2019. *Compare* Second Am. Consol. Compl. ¶ 111, *Beach* (July 10, 2017) ("*Beach* Compl."), *with* Mot. at 2. The Plans here, therefore, offered "the types of funds plaintiffs wanted, . . . eliminating any claim that plan participants were forced to stomach an unappetizing menu."

---

[10] Because the allegations in *Patterson* are similar to those made here, Plaintiffs' attempt to rely on *Falberg* to distinguish *Patterson* fails. *See* Opp. at 16-17. Indeed, *Falberg* concerned allegations not at issue either here or in *Patterson* that the non-proprietary funds in the plan outperformed the proprietary funds and that proprietary funds were only removed from the plan due to litigation concerns. *Falberg*, 2020 WL 3893285, at \*10.

6

*Divane v. Nw. Univ.*, 953 F.3d 980, 991 (7th Cir. 2020), *cert. granted*, 2021 WL 2742780 (U.S. July 2, 2021) (No. 19-1401). Moreover, in *Beach*, unlike here, Plaintiffs had not acknowledged that the at-issue funds outperformed in any years. *Beach* Compl. ¶¶ 142-81.

Plaintiffs also argue that the Court should infer a breach here because the Plans offered a stable value fund as a default investment when most other plans did not,[11] or continued to offer the MainStay Funds after other investors had left the funds. Opp. at 9, 19-20. But as Plaintiffs do not deny, "ERISA . . . does not require that fiduciaries mimic the industry standard when making investments." Mot. at 20 n.22 (quoting *Anderson v. Intel Corp.*, No. 19-04618, 2021 WL 229235, at *10 (N.D. Cal. Jan. 21, 2021)). For this reason, Plaintiffs' additional arguments also fail. *See Meiners*, 898 F.3d at 824 (dismissing "seed[ing]" claim).

## II. Plaintiffs Have Failed to Salvage Counts II and III.

Counts II and III should be dismissed because they plead conduct expressly permitted by ERISA. Mot. at 20-22. Although Plaintiffs assert that compliance with prohibited transaction exemptions cannot be decided on a motion to dismiss (Opp. at 22-23), they also concede that the Amended Complaint, in fact, raises all facts needed to decide the issues now without resort to wasteful and costly discovery. *Id.* at 23-24. Further, other courts in this District routinely decide these questions on a Rule 12 motion. *See Patterson*, 2019 WL 4934834, at *13 (dismissing claim where exemption could be decided "on the face of the complaint" (internal quotations omitted)); *Skin Pathology Assocs., Inc. v. Morgan Stanley & Co.*, 27 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) (dismissing complaint based on prohibited transaction exemption).[12]

---

[11] Plaintiffs' data regarding default investments only highlights the absurdity of Plaintiff's proposed rule regarding defaults. Plaintiffs assert that 7.7% of plans used a stable value fund or an even more conservative money market fund as a default as of 2015 (Opp. at 9), which under Plaintiffs' proposed rule would mean that 7.7% of all plans' default investment options were likely imprudent as of this date, which was after all three Plaintiffs who claim they were defaulted into the Fixed Dollar Account claim were first defaulted.

[12] Moreover, the effect of Plaintiffs' position, given the Court's Individual Rule ¶ 3.C.i., would be to force a trial for any ERISA prohibited transaction claim—even absent a material disputed fact—which would be inefficient.

Plaintiffs also assert that PTE 77-3 is not satisfied because the Plans did not instantaneously switch to lower-cost share classes for certain funds. Opp. at 23. But PTE 77-3 only requires in relevant part that dealings between the Plans and the funds' managers "are on a basis no less favorable to the plan than such dealings" with other investors (Mot. at 21-22), and therefore that the share class the Plans offered be priced the same as it was for other investors. Even if PTE 77-3 could be read as Plaintiffs argue, Plaintiffs' claim should be dismissed because they have not and cannot plead that the short time the Plans took to offer the new share classes was outside of the range of when other investors could or did. *Supra* p. 5.

The applicability of ERISA § 408(b)(5) can also be decided now. Plaintiffs assert that the exemption is not met because the "Plan's [sic] investment in the FDA was not based on 'good faith' negotiations." Opp. at 23-24. But ERISA § 408(b)(5) only requires that the "fair market value" of the investment be determined "in good faith" (29 U.S.C. § 1002(18), ERISA § 3(18)), and here Plaintiffs make no allegations that the Fixed Dollar Account's value was not decided in good faith, particularly where its returns significantly exceed those of other stable value funds. *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006) ("good faith" turns in part on whether fiduciaries obtained a price consistent with the "market for that asset").

Finally, Plaintiffs concede that ERISA permits corporate officers to be plan fiduciaries, notwithstanding a potential conflict. Opp. at 24. Because Plaintiffs do not dispute that ERISA allows fiduciaries' actions to incidentally benefit their employer (Mot. at 22), Count III fails.

**III.    Plaintiffs Have Failed to Salvage Count IV.**

Count IV fails because Plaintiffs have not pleaded antecedent breaches. Mot. at 23.

**IV.    Plaintiffs Have Failed to Salvage Count V.**

Plaintiffs have also failed to adequately plead a violation of ERISA's anti-inurement provision. Plaintiffs argue that the claim should survive as to the Fixed Dollar Account because

NY Life did not structure that investment as a separate account, but rather commingled the Plans' assets with its own in its general account. Opp. at 25. Plaintiffs are wrong as a matter of law. When an insurer issues a guaranteed general account contract, as Plaintiffs concede occurred here, there is no commingling of plan assets with those of the insurer—the plan owns only the contract, and none of the general account assets. ERISA § 401(b)(2), 29 U.S.C. § 1101(b)(2).

Indeed, far from being a "prima facie" violation, the Fixed Dollar Account is one of the typical structures for stable value funds, and therefore cannot give rise to an anti-inurement claim. *See, e.g., Rozo v. Principal Life Ins. Co.*, No. 14-463, 2021 WL 1837539, at *3 (S.D. Iowa Apr. 8, 2021) (use of fund with the same structure did not violate ERISA), *appeal docketed*, No. 21-2026 (8th Cir. May 4, 2021). In all events, the anti-inurement provision "demands only that plan assets be held for supplying benefits to plan participants"; it does not dictate how funds are held. *See Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004).[13] Because Plaintiffs have not and cannot allege that NY Life failed to hold assets for the benefit of the Plans' participants—who received rates of return between 4.28% and 5.05% during the putative class period—Count V should be dismissed.[14]

## V.     Plaintiffs' Standing Arguments Fail.

Finally, Plaintiffs have failed to establish that they have standing to proceed as to their claims about the Fixed Dollar Account. While they first suggest that their bald assertions of standing should suffice, they then proceed to seek jurisdictional discovery "concerning the online and call records that track affirmative investment elections made by Plans [sic] participants and

---

[13] *Dupree*, 2007 WL 2263892, at *44, rejected an anti-inurement claim because funds "were being held for the statutory purposes of providing benefits and defraying reasonable expenses," contrary to the argument at Opp. at 25.
[14] To hold otherwise would conflict with ERISA § 408(b)(5), which permits a plan to purchase "any" contract for annuities from the sponsor-insurer, regardless of whether the contract is backed by a general or separate account.

9

depositions" to prove that.  *See* Opp. at 7.[15]  To the extent that the Court credits Plaintiffs' standing assertions over those of NY Life and it believes any of Plaintiffs' claims can proceed—which it should not—it should next order that discovery into this limited issue proceed first, before any discovery into other issues, because standing is a threshold question the Court must answer first (Mot. at 4) and because this issue may significantly affect the scope of discovery.

Plaintiffs' cases confirm that jurisdictional discovery should proceed prior to any merits discovery.  *See APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (affirming denial of plaintiffs' request for merits discovery in response to jurisdictional challenge).  Staging this discovery first would be appropriate here, should any claim as to the Fixed Dollar Account survive (which it should not).  As Plaintiffs do not dispute, their claim regarding the Fixed Dollar Account requires different proof than does their other claims.  Mot. at 6.  Additionally, Plaintiffs estimate losses in connection with the Fixed Dollar Account at approximately $950 million, compared to a total of about $80 million for all other loss quantified in the Amended Complaint.  Am. Compl. ¶¶ 84, 107; *see also* Fed. R. Civ. P. 26(b)(1) (scope of discovery dependent in part on "the amount in controversy").  The Court should therefore require Plaintiffs to prove that they have standing before subjecting Defendants to "probing and costly" merits discovery that would impose "asymmetric" costs on them, "with [Plaintiffs'] right to do so representing an *in terrorem* increment of the settlement value." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013).

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

---

[15] There are significant reasons to doubt the three Plaintiffs' statements that they were defaulted.  By not submitting an affidavit from Mr. Musni, Plaintiffs implicitly concede that their allegations that he was defaulted were false.  *See* Am. Compl. ¶ 21.  Additionally, although Plaintiffs pleaded that Mr. Krohnengold "could not confirm" whether he was defaulted, his subsequent affidavit now states that he was.  *Compare id.* ¶ 15 *with* Yau Decl. Ex. 3 ¶ 3.

Dated: September 24, 2021               Respectfully submitted,

/s/ *James O. Fleckner*
James O. Fleckner, *admitted pro hac vice*
Dave Rosenberg, *admitted pro hac vice*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
jfleckner@goodwinlaw.com
drosenberg@goodwinlaw.com

William J. Harrington
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
Fax: (212) 355-3333
wharrington@goodwinlaw.com

*Counsel for Defendants*