## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STUART KROHNENGOLD, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:21-cv-01778 |
| NEW YORK LIFE INSURANCE CO., et al. | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

I.       The NY Life Retirement Plans .................................................................................. 2

II.      The Plaintiffs and the Procedural Posture of the Case............................................... 4

ARGUMENT .......................................................................................................................... 6

I.       Count I Does Not State a Claim for Fiduciary Breach with Regard to the Fixed Dollar
         Account. ...................................................................................................................... 6

         A.      Under the Court's Prior Order, Plaintiffs Cannot Sustain a Claim As to the
                 Use of the Fixed Dollar Account as the Plans' Default. ................................... 8

         B.      The Plans' Use of the Fixed Dollar Account as a Default Investment
                 Option Does Not Give Rise to a Reasonable Inference of Fiduciary
                 Breach. .......................................................................................................... 10

                 1.      Plans may utilize stable value funds as default investment options. ........ 10

                 2.      The Fixed Dollar Account's performance raises no inference of breach.  11

                 3.      Plaintiffs' other allegations fail to give rise to an inference of breach. .... 13

II.      Counts II, III, and IV Do Not State a Claim with Regard to the Fixed Dollar Account... 16

         A.      Plaintiffs' Prohibited Transaction Claims as to the Fixed Dollar Account
                 Fail. ............................................................................................................... 16

         B.      Plaintiffs' Co-Fiduciary Claim as to the Fixed Dollar Account Fails. ................. 18

CONCLUSION..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
   692 F.3d 34 (2d Cir. 2012)..................................................................................12

*Albert v. Oshkosh Corp.*,
   No. 21-2789, 2022 WL 3714638 (7th Cir. Aug. 29, 2022) ....................................17

*Anderson v. Intel Corp.*,
   No. 19-04618, 2021 WL 229235 (N.D. Cal. Jan. 21, 2021)...................................15

*Austin v. Union Bond & Tr. Co.*,
   No. 14-00706, 2014 WL 7359058 (D. Or. Dec. 23, 2014)................................3, 12

*Barchock v. CVS Health Corp.*,
   886 F.3d 43 (1st Cir. 2018).................................................................................15

*Bekker v. Neuberger Berman Grp. LLC*,
   No. 16-6123-LTS, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018)....................9, 16

*In re Citigroup ERISA Litig.*,
   104 F. Supp. 3d 599 (S.D.N.Y. 2015).................................................................18

*Dezelan v. Voya Ret. Ins. and Annuity Co.*,
   No. 16-1251, 2017 WL 2909714 (D. Conn. July 6, 2017) ...............................4, 12

*Dupree v. Prudential Ins. Co. of Am.*,
   No. 99-8837, 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) ..............................9, 16

*F.W. Webb Co. v. State St. Bank & Tr. Co.*,
   No. 09-1241-RJH, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010) .........................13

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)...........................................................................6–8, 16, 18

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir. 2000).................................................................................12

*Hughes v. Nw. Univ.*,
   142 S. Ct. 737 (2022)...........................................................................................6

*Kokoshka v. Inv. Advisory Comm. of Columbia Univ.*,
   No. 19-10670-JPC, 2021 WL 3683508 (S.D.N.Y. Aug. 19, 2021)........................13

*Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*,
    95 F. Supp. 3d 402 (S.D.N.Y. 2015)..........................................................................2

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ...............................................................................14

*Ortiz v. Am. Airlines, Inc.*,
    No. 16-151, 2016 WL 8678361 (N.D. Tex. Nov. 18, 2016)...................................12

*Patterson v. Morgan Stanley*,
    No. 16-6568-RJS, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) .............................14

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)...........................................................................7–8, 18

*Rozo v. Principal Life Ins., Co.*,
    No. 14-00463, 2021 WL 1837539 (S.D. Iowa April 8, 2021)................................3, 12, 16–17

*Sandoval v. Exela Enter. Sols., Inc.*,
    No. 17-01573, 2020 WL 9259108 (D. Conn. Mar. 30, 2020) ..........................11–12

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013) ..............................................................................15

*Walsh v. Ruane, Cunnif & Goldfarb, Inc.*,
    No. 19-9302, 2022 WL 902285 (S.D.N.Y. Mar. 28, 2022).....................................2

*White v. Chevron Corp.*,
    No. 16-0793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .............................7–8

**Statutes**

29 U.S.C. § 1104(c)(5)(A) (ERISA § 404(c)(5)(A)) ......................................................11

29 U.S.C. § 1108(b)(5) (ERISA § 408(b)(5))..................................................................17

**Other Authorities**

29 C.F.R. § 2550.404c-5(a)(2) (2008) ..........................................................................10

Default Investment Alternatives Under Participant Directed Individual Account
    Plans, 72 Fed. Reg. 60452-01 (Oct. 24, 2007).......................................................11

Notice of Proposed Rule-Making, Participant Directed Individual Account Plans,
    56 Fed. Reg. 10724 (Mar. 13, 1991)........................................................................8

H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N. 5038.................8

Pension Prot. Act of 2006, Pub. L. No. 109-280, 120 Stat. 780 (2006) ........................................11

## INTRODUCTION

Plaintiffs continue to press a central claim that fiduciaries of two New York Life Insurance Company ("NY Life")-sponsored retirement plans should not have used New York Life's Fixed Dollar Account as the default investment option for those plans.[1]  Even in a year like 2022, in which the S&P 500 Index had already fallen by more than 17% by the time Plaintiffs filed their Second Amended Complaint ("SAC"), Plaintiffs would have the Court infer that the Plans' fiduciaries acted imprudently and disloyally by maintaining as the default investment option a fund designed to ensure a positive return for participants, rather than subject them to potentially devastating losses in the equities markets.  The inference of breach they seek is simply implausible.  The law does not require the Plans' fiduciaries to expose participants, especially those nearing retirement and who cannot afford such losses, to the maximum amount of risk in hopes of achieving a maximum amount of return.  ERISA is not a straight-jacket that prevents the Plans' fiduciaries from exercising their judgment to provide an investment that has delivered healthy, stable results for the Plans' participants—between 4.28% to 5.05% in each year identified in the SAC—in good years and bad across the broader markets.

The Court should also dismiss the SAC's claims relating to the Fixed Dollar Account for the same reasons that the Court dismissed Plaintiffs' earlier claims about the MainStay MacKay International Equity Fund—that the prior complaint contained no allegation of underperformance compared to benchmarks or similar funds—the Court should also dismiss the SAC's claims relating to the Fixed Dollar Account.

---

[1] The "Plans" are the New York Life Insurance Company Employee Progress Sharing Investment Plan ("EPSI Plan") and the New York Life Insurance Company Agents Progress Sharing Investment Plan ("APSI Plan") (each a "Plan").

## BACKGROUND

### I.    The NY Life Retirement Plans

NY Life sponsors two defined contribution plans:  the EPSI Plan and the APSI Plan.[2]

Throughout the putative class period (March 2, 2015 and thereafter), the Plans' fiduciaries have

utilized the services of a third-party investment consultant, paid for by NY Life, in fulfilling their

duties.[3]  Each Plan's investment options as of the end of 2020, the most recent year such

information was filed, consisted of a broad array of twenty-four mutual funds and the Fixed

Dollar Account, including a series of target-date funds and a balanced fund.[4]  Of these, only four

(16%) were managed by NY Life or its affiliates; the remaining twenty-one (84%) were

managed by a variety of third parties, including Vanguard, Fidelity, and Blackrock.[5]  During the

putative class period, the number of externally managed funds increased from four as of year-end

2015, to twenty-one as of year-end 2019, and Defendants removed eight proprietary and one

external fund during that time.[6]

Participation in the Plans is voluntary.  No eligible employee is required to participate.[7]

Further, participants in each Plan are free to choose how much of their salary (within IRS limits)

---

[2] *See* EPSI Plan 2018 Form 5500 at MTD3-392, Decl. of Dave Rosenberg ("Rosenberg Decl.") Ex. 7; APSI Plan 2018 Form 5500 at MTD3-399, *id.* Ex. 8.  The Court may consider publicly-filed documents like the Forms 5500 on a motion to dismiss.  *See Walsh v. Ruane, Cunniff & Goldfarb, Inc.*, No. 19-9302, 2022 WL 902285, at *2 n.2 (S.D.N.Y. Mar. 28, 2022) (taking judicial notice of Forms 5500).

[3] *See* EPSI 2018 Form 5500 at MTD3-394, Rosenberg Decl. Ex. 7; APSI 2018 Form 5500 at MTD3-401, *id.* Ex. 8.

[4] *See* Master Trust 2020 Form 5500 at MTD3-414–17, Rosenberg Decl. Ex. 12.

[5] *Id.*

[6] *See* EPSI 2015 Form 5500 at MTD3-365–67, Rosenberg Decl. Ex. 3; APSI 2015 Form 5500 at MTD3-370–72, *id.* Ex. 4; EPSI 2016 Form 5500 at MTD3-375–77, *id.* Ex. 5; APSI 2016 Form 5500 at MTD3-380–82, *id.* Ex. 6; EPSI 2017 Form 5500 at MTD3-385–88, *id.* Ex. 7; APSI 2017 Form 5500 at MTD3-391, *id.* Ex. 8; EPSI 2018 Form 5500 at MTD3-396–98, *id.* Ex. 9; APSI 2018 Form 5500 at MTD3-403–05, *id.* Ex. 10; Master Trust 2019 Form 5500 at MTD3-408–11, *id.* Ex. 11; Master Trust 2020 Form 5500 at MTD3-414–17, *id.* Ex. 12.

[7] EPSI Plan governing document ("Plan Document") at MTD3-023, 36, Rosenberg Decl. Ex. 1; APSI Plan Document at MTD3-235, *id.* Ex. 2.  Courts may consider governing plan documents on a motion to dismiss.  *See Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 408 (S.D.N.Y. 2015).

to contribute to the Plan, and they are free to choose among any of the NY Life-affiliated or unaffiliated investment options available for their investments.[8]  No participant is required to choose any NY Life-affiliated investment, and NY Life may match contributions (up to a certain limit) into any fund chosen by the participant—even if the matching contribution is used to buy a different company's investment that is available on the Plans' menus.[9]  If an employee enrolls in one of the Plans, but chooses to not select particular investment options, such participant is invested into the Plans' default investment option, the Fixed Dollar Account.[10]  The Fixed Dollar Account is a type of high-returning stable value fund.  SAC ¶ 6.  Its returns have varied between 4.28% and 5.05% from 2015 to 2020.  *Id.* ¶ 120.  Defaulted participants, like all participants, can elect to transfer assets out of the Fixed Dollar Account into any other available option, if they choose to remain a participant in the Plans (which they are not forced to do).[11]

Stable value funds like the Fixed Dollar Account are lower-risk investments that are "designed to minimize the impact of market fluctuations" while providing investors with a rate of return guaranteed in advance.  *Austin v. Union Bond & Tr. Co.*, No. 14-00706, 2014 WL 7359058, at *3 (D. Or. Dec. 23, 2014).  They are "safe, stable product[s] that preserve[] their capital and earn[] predictable returns, even if the rate of return is usually lower than other investment options available."  *Rozo v. Principal Life Ins., Co.*, No. 14-00463, 2021 WL 1837539, at *2 (S.D. Iowa April 8, 2021), *aff'd* 2022 WL 4005339 (8th Cir. May 12, 2022). Because of their attractive qualities, stable value funds are "one of the most popular investment

---

[8] EPSI Plan Document at MTD3-036, 40, 63–65, Rosenberg Decl. Ex. 1; APSI Plan Document at MTD3-251–53, 272-74, *id.* Ex. 2.

[9] EPSI Plan Document at MTD3-036, 40, 63–65, Rosenberg Decl. Ex. 1; APSI Plan Document at MTD3-272–74, *id.* Ex. 2.

[10] *See* EPSI Plan Document at MTD3-022, Rosenberg Decl. Ex. 1; APSI Plan Document at MTD3-233, *id.* Ex. 2.

[11] EPSI Plan Document at MTD3-063–65, 68–74, Rosenberg Decl. Ex. 1; APSI Plan Document at MTD3-272–74, 278–84, *id.* Ex. 2.

strategies for pension plans." *Dezelan v. Voya Ret. Ins. and Annuity Co.*, No. 16-1251, 2017 WL
2909714, at *2 (D. Conn. July 6, 2017) (internal quotations omitted).

## II.    <u>The Plaintiffs and the Procedural Posture of the Case</u>

The Second Amended Complaint asserts four claims.  SAC ¶¶ 180–219.  Relevant to this
motion, Count I alleges that the Plans' fiduciaries breached their duties of loyalty and prudence
under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), by maintaining the
Fixed Dollar Account as the Plans' default investment option, *id.* ¶¶ 180-82; Counts II and III
allege violations of ERISA's prohibited transaction provisions, ERISA §§ 406(a)(1)(A), (C), and
(D), and 406((b)(1) and (b)(3), 29 U.S.C. §§ 1106(a)(1)(A), (C), and (D), 1106(b)(1) and (b)(3),
by making available the Fixed Dollar Account, *id.* ¶¶ 186–207; and Count IV alleges that NYL
breached alleged co-fiduciary duties under ERISA §§ 405(a)(1) and (3), 29 U.S.C. §§ 1105(a)(1)
and (3), by knowingly participating in such conduct.  *Id.* ¶¶ 208–19.

Plaintiffs are ten current and former participants in the Plans.  SAC ¶¶ 16–58.  Three of
those ten, Mses. Scanni and Gonzalez and Mr. Lantz, have been added since the Court granted in
part, and denied in part, Defendants' Motion to Dismiss the Amended Complaint.  *See generally
id.* ¶¶ 47–58.  Only four of the current Plaintiffs—the three newly added Plaintiffs and Mr.
Antoine—allege that their individual account contributions were automatically invested in the
Fixed Dollar Account by operation of the Plans' default investment option provisions during the
putative class period.  *Id.* ¶¶ 22–23, 48, 52, 56.  While two others, Messrs. Krohnengold and
Webber, previously alleged or declared that their contributions were also defaulted into the Fixed
Dollar Account, they do not so allege in the SAC.  *Compare id.* ¶¶ 17, 28 *with* Am. Class Action
Compl. ¶ 17 (ECF No. 38) *and* Decl. of Stuart Krohnengold ¶¶ 3-4 (ECF No. 47-3).

In its prior decision ruling on Defendants' Motion to Dismiss the Amended Complaint
(the "Order"), the Court held in relevant part that four Plaintiffs—Messrs. Bendrihem, Gilbert,

4

Medici, and Musni—lacked standing to sue over whether the Plans' default was the Fixed Dollar Account, because they could not demonstrate that they were defaulted into that fund.  ECF No. 58, at 11–12.  The Court held that at this stage of the litigation, the other three Plaintiffs who were at that time part of the suit—Messrs. Krohnengold, Antoine, and Webber—had demonstrated sufficient standing to assert that they were defaulted into the Fixed Dollar Account, yet the statute of repose barred their claims as to being defaulted into the Fixed Dollar Account because it occurred more than six years before bringing suit.  *Id.* at 12–16.  The Court therefore declined to reach the merits of Defendants' arguments that the Plans' use of the Fixed Dollar Account as a default did not raise a plausible inference of breach of fiduciary duty.  *Id.* at 16 n.1.[12]

In its Order, the Court did address the merits of Defendants' arguments that the Court should dismiss Plaintiffs' claims as to three other MainStay funds on the Plans' menu as of the end of 2020 that were managed by affiliates of NY Life, as well as six other MainStay funds that had since been removed from the menu.  *See* Order at 4–5, 16–20.  The Court granted the motion except as to certain MainStay funds for which Plaintiffs sought an inference that the fiduciary process was deficient based on three types of allegations:  (1) that the "funds consistently underperformed performance benchmarks selected by NYL itself or other comparable funds," (2) "that the funds had higher costs and fees than funds with similar, if not identical, investment

---

[12] Plaintiffs appear to try to plead around the Court's holding that claims brought by Plaintiffs Krohnengold, Anotoine, and Webber for being defaulted into the Fixed Dollar Account are barred by the statute of repose.  *See, e.g.*, SAC ¶ 6 (alleging that the supposed breach involved in using the Fixed Dollar Account as the default fund is that Defendants "approved ongoing deposits" and "ongoing investment" into that fund as the default); Order at 16. Defendants disagree that the SAC cures the deficiency identified by the Court that the claims "implicate conduct within the relevant six-year period" for those Plaintiffs.  Order at 27.  However, because new Plaintiffs Scanni and Gonzalez allege that they were first defaulted into the Fixed Dollar Account within six years of their filing complaints in this action, whether Plaintiff Antoine (the only existing Plaintiff who continues to allege he was defaulted) is not currently dispositive as to whether the SAC may proceed.  Therefore, Defendants will not renew their statute of repose arguments at this juncture in the litigation.  As described below, Defendants principally move to dismiss the SAC based on the argument not reached in the Order.

strategies," and (3) "the funds either had very little in accumulated assets form outside investors or experienced significant outflows during the class period." *Id.* at 17–18 (internal marks omitted).[13]  The Court also agreed with Defendants that Count V of the First Amended Complaint, alleging a violation of ERISA's anti-inurement clause, was deficient.  *Id.* at 24–26. Plaintiffs do not renew allegations in the SAC as to the MainStay MacKay International Equity Fund—a fund as to which they had not alleged underperformance or declining assets—nor do they further include an anti-inurement count in the SAC.

## ARGUMENT

### I.   Count I Does Not State a Claim for Fiduciary Breach with Regard to the Fixed Dollar Account.

Count I should be dismissed to the extent it continues to challenge the use of the Fixed Dollar Account as the Plans' default investment option because, under the analysis in the Court's Order and the governing law, the SAC does not plausibly allege that Defendants engaged in a disloyal or imprudent process with regards to the process they used to monitor the Fixed Dollar Account as the Plans' default investment option.

As the Supreme Court explained, "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).  A motion to dismiss is an "important mechanism for weeding out

---

[13] The Court held that the "bulk of [Defendants'] arguments [as to these funds] rely on evidence outside of the pleadings."  *Id.* at 18.  Defendants do not seek to revisit that aspect of the Court's Order in this motion, as they are confident that discovery will demonstrate that their fiduciary process was diligent and in full conformity with ERISA's requirements.  Relatedly, since the Court's standing decision as to Plaintiffs Krohnengold, Antoine and Webber was based on the record then available (and Plaintiffs do not allege in their most current pleading that Messrs. Krohnengold and Webber were defaulted in the Fixed Dollar Account), and three new Plaintiffs have been added in the SAC who allege to have been defaulted into the Fixed Dollar Account, Defendants do not revisit the standing arguments as to Mr. Antoine.  Defendants do not, however, waive any appellate rights that they might have as to those issues.

meritless [ERISA] claims" that impermissibly seek to second-guess decisions that are within the range of permissible fiduciary judgments.  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425–26 (2014).

To withstand a motion to dismiss, "the complaint must demonstrate more than a sheer possibility that a defendant has acted unlawfully."  *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*PBGC*"), 712 F.3d 705, 718 (2d Cir. 2013).  The complaint must allege "*nonconclusory* factual content raising a *plausible* inference of misconduct" and must not rely on "the vantage point of hindsight."  *Id.* (emphasis in original).  "[I]f the complaint relies on circumstantial factual allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a '*reasonable* inference' that the defendant committed the alleged misconduct, thus permit[ting] the court to infer more than the *mere possibility* of misconduct[.]"  *Id.* at 718–19 (same).

Here, the Second Amended Complaint contains only conclusory allegations regarding the Plans' fiduciaries' processes concerning the Fixed Dollar Account.  *See, e.g.*, SAC ¶ 180. Plaintiffs' challenge to the Fixed Dollar Account can therefore only survive if the circumstantial facts alleged plausibly give rise to a reasonable inference that fiduciaries lacked an adequate process.  *PBGC*, 712 F.3d at 716.  In this analysis, a fiduciary's decisions cannot be judged from the "vantage point of hindsight" given the inherent uncertainty of investment performance in ever-changing markets.  *Id.* at 718.  Because fiduciaries are judged by their decision-making process, the test for whether one satisfied ERISA's fiduciary duties is one of "conduct," and not the "results" of investment performance.  *Id.* at 716 (internal quotations omitted).  That means that ERISA plaintiffs cannot plead a fiduciary breach by simply alleging "that [p]lan participants would have done better in alternative investments" that were not offered through the plan.  *White*

7

*v. Chevron Corp.*, No. 16-0793, 2016 WL 4502808, at *18 (N.D. Cal. Aug. 29, 2016), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

The Court's inquiry at this stage is necessarily rigorous.  The Supreme Court instructs that "careful, context-sensitive scrutiny of a complaint's allegations," through a motion to dismiss, is the appropriate way to accomplish the "important task" of "divid[ing] the plausible sheep from the meritless goats." *Fifth Third Bancorp*, 573 U.S. at 425.  Absent careful scrutiny, there is a serious risk that a "plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *PBGC*, 712 F.3d at 719 (alteration in original and citation omitted).

### A.   Under the Court's Prior Order, Plaintiffs Cannot Sustain a Claim As to the Use of the Fixed Dollar Account as the Plans' Default.

Under the rationale of the Court's prior Order, it is not plausible to infer that Defendants acted so far outside of the reasonable judgments allowed an ERISA fiduciary that a claim against them can proceed as to the Plans' use of the Fixed Dollar Account as a default investment option.

The Court allowed Plaintiffs' claims to proceed as to some funds managed by NY Life affiliates, but dismissed a claim as to another NY Life-affiliated fund, the MainStay MacKay International Equity Fund.  Therefore, as other courts have held, the fact that a fund is advised by the plan sponsor or its affiliate is not determinative of whether use of such fund plausibly infers a breach of duty.  Indeed, Congress and the U.S. Department of Labor ("DOL") have recognized that it is "common practice" for financial services companies to offer participants the opportunity to invest in their employers' funds.[14]  Thus, it is well established that using proprietary funds does not "give rise to an inference of" wrongdoing. *Dupree v. Prudential Ins. Co. of Am.*, No.

---

[14] H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5096; *accord* Notice of Proposed Rule-Making, Participant Directed Individual Account Plans, 56 Fed. Reg. 10724, 10730 (Mar. 13, 1991).

99-8837, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 7, 2007) (using such funds is virtually

"universal").  Because "sponsor-affiliated funds are permitted under ERISA[,]" allegations

regarding use of these investments "do not, standing alone, support an inference that a defendant

breached its fiduciary duties by including such a fund as an investment option . . . ."  *Bekker v.

Neuberger Berman Grp. LLC*, No. 16-6123-LTS, 2018 WL 4636841, at *6 (S.D.N.Y. Sept. 27,

2018) (dismissing claims).

    The Court identified in its Order that factual allegations that a fund (i) "consistently

underperformed" its benchmark or "comparable funds," (ii) "had higher costs and fees than

funds with similar, if not identical, investment strategies", and (iii) "had little accumulated assets

from outside investors or experienced significant net outflows" could sustain a claim for

imprudence as to such fund.  Order at 18.  Plaintiffs have alleged none of these facts as to the

Fixed Dollar Account in any of their three complaints.  They nowhere compare its return of

between 4.28% and 5.05% (SAC ¶ 120) or its costs with any other fund that is allegedly

comparable—instead, they compare the performance of the Fixed Dollar Account to ones that

they admit are of a fundamentally different nature, target-date and balanced funds.  *Id.* ¶¶ 120–

21.  Further, there is no allegation at all as to how the Fixed Dollar Account's asset levels

changed over time.  Accordingly, just as the Court dismissed allegations as to impropriety with

respect to the use of the MainStay MacKay International Equity Fund because Plaintiffs also did

not compare its performance to its benchmark or similar funds, nor did Plaintiffs make any

allegations about its asset levels, it should dismiss Plaintiffs' claims as to the Fixed Dollar

Account in the continued absence of all such allegations as to that fund.

**B.** **The Plans' Use of the Fixed Dollar Account as a Default Investment Option Does Not Give Rise to a Reasonable Inference of Fiduciary Breach.**

**1.** **Plans may utilize stable value funds as default investment options.**

Rather than focusing on the Fixed Dollar Account's performance or fees as compared to other stable value products, Plaintiffs instead assert that, as a stable value fund, the Fixed Dollar Account is a *per se* imprudent default investment option "because it does not provide a mix of asset classes, such as stocks and bonds." SAC ¶ 113.  But they are wrong as a matter of law:  the DOL considered this precise question and concluded that fiduciaries ***may*** elect to utilize stable value funds as default investment options for their plans.

The very regulatory pronouncement cited by Plaintiffs undermine their contention. Plaintiffs cite the 2007 U.S. Department of Labor ("DOL") preamble to the regulations codified at 29 C.F.R. § 2550.404c-5 in explaining that stable value funds are not afforded special protection as so-called qualified default alternatives ("QDIA") under ERISA § 404(c)(5), 29 U.S.C. § 1104(c)(5).  SAC ¶ 115.  However, Defendants do not seek QDIA protection under the special safe harbor created in ERISA § 404(c)(5), so this language is beside the point.  The DOL expressly caution against using this regulation, precisely as Plaintiffs do, for purposes other than identifying QDIAs, stating,

> [t]he standards set forth in this section apply ***solely*** for the purposes of determining whether a fiduciary meets the requirements of this regulation.  Such standards are not intended to be the exclusive means by which a fiduciary might satisfy his or her responsibilities under [ERISA] with respect to the investment of assets in the individual account of a participant or beneficiary.

29 C.F.R. § 2550.404c-5(a)(2) (2008) (emphasis added).

Not only do Plaintiffs misapply the inapposite preamble to the QDIA regulations, but they continue to misrepresent what the DOL actually stated in that preamble.  Rather than creating a *per se* prohibition on using stable value funds as defaults under ERISA—as Plaintiffs

10

would suggest—the DOL instead made clear that a fiduciary *could* permissibly use a stable value fund as a default vehicle for a plan, even if it was not intending the special protection of ERISA § 404(c)(5) for QDIAs:  "fiduciaries may, without regard to this regulation, conclude that a stable value product or fund *is an appropriate default investment* for their employees and use such product or fund for contributions on behalf of defaulted employees . . . ."  Default Investment Alternatives Under Participant Directed Individual Account Plans, 72 Fed. Reg. 60452-01, 60464 (Oct. 24, 2007).

Similarly, the Pension Protection Act of 2006, which Plaintiffs also cite (SAC ¶¶ 80–81), likewise refused to adopt the categorical approach espoused by Plaintiffs.  Instead, Congress stated that appropriate default investment options could include investments "consistent with capital preservation *or* long-term capital appreciation, *or* a blend of both."  Pension Prot. Act of 2006, Pub. L. No. 109-280, 120 Stat. 780 (2006) (29 U.S.C. § 1104(c)(5)(A)) (emphasis added).

Accordingly, both the DOL and Congress allow the use of a stable value fund as a default investment option, and after careful consideration neither precluded its use.  Thus, the fact that the Plans utilize a stable value fund as a default investment option does not permit an inference of breach.

### 2. The Fixed Dollar Account's performance raises no inference of breach.

Not only does the DOL expressly find it within the permissible range of fiduciary decision-making for plans to utilize a stable value investment option as a default, but the circumstances of the Fixed Dollar Account in particular raise no inference of a fiduciary breach.

Notably, the Fixed Dollar Account provides a rate of return significantly higher than that of other stable value funds identified in other court decisions.  Plaintiffs plead that the Fixed Dollar Account provided a guaranteed rate of return between 4.28% and 5.05% from 2015 to

2020.  SAC ¶ 120.  This return was far superior to that of other stable value funds during recent periods, which have generally been less than 3.5% and often far less.  *See Sandoval v. Exela Enter. Sols., Inc.*, No. 17-01573, 2020 WL 9259108, at \*7 (D. Conn. Mar. 30, 2020) (dismissing ERISA claim regarding stable value fund where March 2019 complaint acknowledged a guaranteed 1.5% gross return); *Austin*, 2014 WL 7359058, at \*14 (dismissing ERISA fiduciary duty breach claims where stable value fund returned 1.79%, 1.27%, and 0.84% in 2011, 2012, and 2013, respectively).[15]

When the SAC was filed on September 7, 2022, the S&P 500—a widely used index of stocks—had lost more than 17% of value year-to-date.[16]  And the SAC itself notes that in other years of declining equities markets—2015 and 2018 (years in which new Plaintiffs Scanni and Gonalez were defaulted into the Fixed Dollar Account)—the Fixed Dollar Account continued its steady positive returns for participants, at 5.05% and 4.275%, respectively, well outperforming Plaintiffs' supposedly preferred comparative investment styles, target-date and balanced funds, which had returns between negative 5.49% and positive 0.52% in those two years.  *See* SAC ¶¶ 52, 56, 120.

Indeed, elsewhere, Plaintiffs concede that the appropriateness of a default investment option is measured at least in part by the makeup of a plan's participant population (SAC ¶ 82), which for the Plans are employees or agents of an insurance company or its affiliates, who may prefer to invest in an insurance product like the Fixed Dollar Account.  *Infra* p. 17.  It is simply

---

[15] *See also Ortiz v. Am. Airlines, Inc.*, No. 16-151, 2016 WL 8678361, at \*9 (N.D. Tex. Nov. 18, 2016) (noting statement in declaration that stable value funds returned an average of 2.25% with certain "well-performing" funds returning 2.97% and 3.03% in the five-year period before February 2016); *Rozo*, 2021 WL 1837539, at \*1, 2, 15 (annual return between 1.10% and 3.50% from November 2008 to April 2021 was "attractive to plan participants"); *Dezelan*, 2017 WL 2909714, at \*2 (dismissing ERISA claim where stable value fund had a 3.0% guaranteed gross return in 2014).

[16] The Court is "entitled to take judicial notice of well publicized stock prices without converting the motion to dismiss into one for summary judgment."  *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 37 n. 1 (2d Cir. 2012) (citing *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 n. 8 (2d Cir.2000)).

implausible to believe—as Plaintiffs ask the Court to do—that the fiduciaries of retirement plans designed for employees and agents of an insurance company would not have a reasonable basis to believe that the Plans and their participants would be better off with stable, insurance-based investment products as a default rather than exposure to wildly variable returns in the equities markets.  This is particularly true here, where the Plans otherwise make available the very funds that Plaintiffs suggestion should be the default—target-date funds and a balanced fund—in addition to a wide array of other investment choices, including other mutual funds that offer exposure to equity and bond investments, if those are what a participant preferred.

That the Fixed Dollar Account does not come within the limited QDIA safe harbor under ERISA § 404(c), 29 U.S.C. § 1104(c), does not compel a different result.  *See* SAC ¶¶ 78, 80. ERISA § 404(c) "is simply a safe harbor provision that limits the liability of fiduciaries in some instances."  *F.W. Webb Co. v. State St. Bank & Tr. Co.*, No. 09-1241-RJH, 2010 WL 3219284, at *14 (S.D.N.Y. Aug. 12, 2010).  It does not set the bounds of permissible fiduciary behavior under ERISA § 404(a) and a "a person does not 'violate' ERISA by straying from 404(c)'s guidelines."  *Id.* (dismissing claim); *see also Kokoshka v. Inv. Advisory Comm. of Columbia Univ.*, No. 19-10670-JPC, 2021 WL 3683508, at *7 n.6 (S.D.N.Y. Aug. 19, 2021) (rejecting plaintiff's argument that a "Committee's failure to administer the Retirement Plan in accordance with section 404(c) resulted in a breach of fiduciary duty").

### 3.      Plaintiffs' other allegations fail to give rise to an inference of breach.

Beyond their incorrect allegations that stable value funds like the Fixed Dollar Account are *per se* imprudent default investments for plans like the Plans, Plaintiffs' other allegations likewise fail to give rise to an inference of breach.

*First*, in a repackaging of their allegations that stable value funds are *per se* imprudent default investments because they are not QDIAs and that the Plans should have instead offered

as defaults balanced funds or target-date funds that are QDIAs, Plaintiffs compare the performance of the Fixed Dollar Account during the putative class period to that of one target date fund series, one balanced fund, and an intermediate bond index.  SAC ¶¶ 119–20, 127; Pls. Opp. to Defs. Mot. to Dismiss at 11-12, ECF No. 46 (describing similar allegations in the prior complaint).  These charts fail to give rise to an inference of breach because they do not even purport to compare the performance of the Fixed Dollar Account with comparable investments: "The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [at-issue funds] were an imprudent choice at the outset.  No authority requires a fiduciary to pick the best performing fund." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (affirming dismissal given lack of a comparable benchmark or fund alternative in the pleading) (internal marks and citations omitted); *Patterson v. Morgan Stanley*, No. 16-6568-RJS, 2019 WL 4934834, at *11–12 (S.D.N.Y. Oct. 7, 2019) (dismissing claims) (citing *Meiners*, 898 F.3d at 823)).

*Second*, Plaintiffs suggest that the Court can infer a breach because "[t]he investment of the majority of the Plans' assets into a stable value product like the Fixed Dollar Account made the Plans stark outliers among 401(k) plans," which Plaintiffs allege have 12 to 17% of their assets invested in stable value funds.  SAC ¶¶ 117–18.  But the figure they provide for the Plans is the percentage of ***all*** of the Plans' assets invested in the Fixed Dollar Account, including through the affirmative choices of the Plans' participants, not just the amounts contributed through operation of the Plans' default investment mechanisms.  *Id.* ¶ 117.  That the Plans' participants seemingly chose to invest more of their Plan account balances into the Fixed Dollar Account than participants of other plans (plans presumably offered to participants who are not in the insurance industry) chose to invest in other stable value funds with lower returns does not

permit an inference of breach in connection with the selection of the Fixed Dollar Account as a default for the Plans and their participants.  Instead, Plaintiffs' allegations suggest only that the Fixed Dollar Account was particularly well-suited for the Plans.  *See Tibble v. Edison Int'l*, 729 F.3d 1110, 1134–35 (9th Cir. 2013) ("participant choice is the centerpiece of what ERISA envisions for defined-contribution plans"), *overruled on other grounds*, 575 U.S. 523 (2015). Indeed, it is unsurprising that NY Life participants would be attracted to the Fixed Dollar Account given that it dramatically outperformed other stable value funds and provided a steady source of income and returns even in volatile and declining markets during the putative class period, including in 2015, 2018, and 2022.  *Supra* p. 12.

Furthermore, that the Plans had greater investments in a stable value fund—the Fixed Dollar Account—than did other plans relying on a QDIA does not establish a breach as a recent decision in the Northern District of California makes clear.  In *Anderson v. Intel Corp.*, No. 19-04618, 2021 WL 229235 (N.D. Cal. Jan. 21, 2021), *appeal docketed*, No. 22-16268 (9th Cir. Aug. 22, 2022), plaintiffs alleged that a high-technology company in Silicon Valley improperly used target-date funds that had up to 37.2% exposure in non-traditional assets like private equity and hedge funds, whereas other plans' funds "allocate[d] almost no assets to investments in hedge funds or private equity funds."  *Id.* at *2–3.  While plaintiffs argued that this difference allowed the court there to infer a deficient fiduciary process (in conjunction with allegations not present here as to the Fixed Dollar Account regarding alleged underperformance against comparable funds), the court held that such allegations did not state a claim of breach because "ERISA . . .  does not require that fiduciaries mimic the industry standard when making investments."  *Id.* at *10 (allegations regarding fiduciaries' "deviation[s] from industry allocation standards" do not state a claim for breaches of fiduciary duty) (*citing Barchock v. CVS Health*

15

*Corp.*, 886 F.3d 43, 55 (1st Cir. 2018) (affirming dismissal)).  If a participant does not state a claim in the Northern District of California against fiduciaries of a high tech company's plan for supposedly deviating from industry standards in using funds with high risk, then surely an insurance company in the Southern District of New York can deviate from supposed industry norms by offering a default investment that provides greater protection against market risk than other plan fiduciaries might choose.

*Third*, Plaintiffs ask the Court to infer a breach because the Fixed Dollar Account's assets were held in NY Life's general account.  SAC ¶¶ 106, 119.  But ERISA § 408(b)(5), 29 U.S.C. § 1108(b)(5), provides an express exemption that "allows plans sponsored by insurance companies to buy the sponsor's insurance products."  *Dupree*, 2007 WL 2263892, at *40.  These insurance products include products like the Fixed Dollar Account that have their assets held in the insurer's general account.  *See Rozo*, 2021 WL 1837539, at *3 (use of fund with the same structure did not violate ERISA).  Conduct expressly permitted by one section of ERISA cannot, by itself, give rise to an inference of the violation of another.  *Bekker*, 2018 WL 4636841, at *6.

## II.     Counts II, III, and IV Do Not State a Claim with Regard to the Fixed Dollar Account.

Plaintiffs also cannot maintain their claims as to the Fixed Dollar Account under the remaining three counts of the SAC.

### A.     Plaintiffs' Prohibited Transaction Claims as to the Fixed Dollar Account Fail.

Plaintiffs again press claims for prohibited transactions as to the funds whose inclusion on the Plans' lineups they challenge.  The Court allowed those same claims found in the First Amended Complaint to proceed because (i) it held that determining the existence of prohibited transaction exemptions ERISA § 408(b)(5), 29 U.S.C. § 1108(b)(5), and Prohibited Transaction Exemption 77-3 ("PTE 77-3"), is improper on a motion to dismiss given that they are affirmative

defenses, and (ii) it could infer from Plaintiffs' allegations that the selection of the challenged investments was "more than merely incidentally beneficial to Defendants." Order at 20–23. Notwithstanding that conclusion, the Court should dismiss Counts II and III here to the extent that they assert liability for the use of the Fixed Dollar Account as the Plans' default.

Defendants do not rely on PTE 77-3 for the Fixed Dollar Account. The only exemption at issue regarding the Fixed Dollar Account is ERISA § 408(b)(5), a straight-forward statutory exemption with uncomplicated conditions, *none* of which Plaintiffs even allege to be unsatisfied. Relevant here, that statutory provision allows a plan to offer "[a]ny contract for life insurance . . . with one or more insurers which are qualified to do business in a State, if the plan pays no more than adequate consideration, and if each such insurer or insurers is . . . the employer maintaining the plan." 29 U.S.C. § 1108(b)(5). Plaintiffs allege that the Fixed Dollar Account is a stable value product, which is an insurance product. *See* SAC ¶ 8; *Rozo*, 2021 WL 1837539, at *3. There is no question that NY Life is a licensed insurer and the employer maintaining the Plans. *See generally* SAC ¶ 60, 62. Plaintiffs make no allegations about the consideration paid in connection with the Fixed Dollar Account—as described above, the net return (after all fees) is well above other reported stable value funds, strongly implying reasonable expenses.

Making NY Life stand trial because ERISA § 408(b)(5) is an affirmative defense would be inconsistent with the statutory purpose. The Seventh Circuit recently affirmed dismissal of similar prohibited transaction claims on a Rule 12(b)(6) posture in *Albert v. Oshkosh Corp.*, No. 21-2789, 2022 WL 3714638, at *11 (7th Cir. Aug. 29, 2022). Under the Seventh Circuit's reasoning, if Defendants were prohibited from offering their own Fixed Dollar Account because it was a product sponsored by NY Life—and had to force participants into a stable value fund offered by a competitor that provided a lower return—that would be an "absurd result[] that [is]

inconsistent with ERISA's statutory purpose." *Id.* Forcing Defendants to stand trial here on the prohibited transaction counts relating to the Fixed Dollar Account would be just such an absurd result, and would be inconsistent with the Supreme Court's admonition that the motion to dismiss is an "important mechanism for weeding out meritless [ERISA] claims." *Dudenhoeffer*, 573 U.S. at 425–26 (2014); *accord PBGC*, 712 F.3d at 719.

      **B.**     **Plaintiffs' Co-Fiduciary Claim as to the Fixed Dollar Account Fails.**

Because, as described in Section I, *supra*, Plaintiffs have not stated a claim for a breach of ERISA's fiduciary duties as to the use of the Fixed Dollar Account as the Plans' default investment option, they similarly cannot state a claim for breach of any co-fiduciary duties as to the use of such fund as a default. *See, e.g.*, *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 617 (S.D.N.Y. 2015) ("Claims for . . . co-fiduciary liability require antecedent breaches in order to be viable."), *aff'd on other grounds*, 649 F. App'x 110 (2d Cir. 2016) (summary order).

## <u>CONCLUSION</u>

For these reasons, the Second Amended Complaint's claims regarding the Fixed Dollar Account should be dismissed with prejudice.

Dated: September 28, 2022

Respectfully submitted,

/s/ *James O. Fleckner*

James O. Fleckner, *admitted pro hac vice*
Dave Rosenberg, *admitted pro hac vice*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
jfleckner@goodwinlaw.com
drosenberg@goodwinlaw.com

William J. Harrington
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
Fax: (212) 355-3333
wharrington@goodwinlaw.com

*Counsel for Defendants*