## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------

Stuart Krohnengold, Wayne Antoine, Lee
Webber, Anthony Medici, Joseph Bendrihem,
Larry Gilbert, Rafael Musni, Thomas Lantz,
Sandra Scanni, and Claudia Gonzalez, as
representatives of a class of similarly situated
persons, and on behalf of the New York Life
Insurance Employee Progress Sharing
Investment Plan, and the New York Life
Insurance Company Agents Progress Sharing
Plan,

       Plaintiffs,

    v.

New York Life Insurance Company; the
Fiduciary Investment Committee; the Board
of Trustees; Katherine O'Brien; Anthony R.
Malloy; Yie-Hsin Hung; Arthur A. Seter; Scott
L. Lenz; Robert J. Hynes; and John and Jane
Does 1-20,

       Defendants.

Case No. 1:21-cv-01778 - JMF

------------------------------------

### DECLARATION OF KAI RICHTER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, Kai Richter, declare as follows:

1.    I am Of Counsel at Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and a member of the firm's Employee Benefits/ERISA Practice Group. Cohen Milstein is counsel for Plaintiffs in this action, and I have served as Cohen Milstein's lead counsel in the action.

2.    I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Cohen Milstein's accompanying request to be appointed Class Counsel for purposes of the Settlement.[1]

---

[1] All capitalized terms herein have the meaning ascribed to them in the Settlement Agreement.

**Settlement Terms**

3.      Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the proposed Class Action Settlement Agreement (the "Settlement"). The Settlement resolves Plaintiffs' class action claims against Defendants relating to the administration and management of the New York Life Insurance Company Employee Progress-Sharing Investment Plan and the New York Life Insurance Company Agents Progress-Sharing Investment Plan (the "Plans").

4.      The Settlement Agreement applies to the following Settlement Class:

> All participants and beneficiaries of the New York Life Insurance Company Employee Progress-Sharing Investment Plan or the New York Life Insurance Company Agents Progress-Sharing Investment Plan (the "Plans") who held assets in the MainStay Epoch U.S. All Cap Fund, MainStay Epoch U.S. Small Cap Fund, MainStay Income Builder Fund, any MainStay Retirement Fund, or the Fixed Dollar Account in the Plans at any time from March 2, 2015 to the Effective Date of Settlement, excluding Defendants, any of their directors, and any members of the Committees during the Class Period.[2]

*Settlement*, § 1.9. Based on preliminary information provided by Defendants in discovery, it is estimated that there are more than 40,000 Class Members.

5.      Under the terms of the proposed Settlement, Defendants or their insurers will pay a Gross Settlement Amount of nineteen million dollars ($19,000,000) into a Qualified Settlement Fund for the benefit of the Settlement Class. *Id*. §§ 1.33, 4.2. Prior to settlement, Plaintiffs' investment expert estimated that the losses associated with the alleged fiduciary breaches (i.e., the retention of the subject MainStay Funds and the continued designation of the Fixed Dollar Account as the default investment) totaled between $76,799,261 and $93,413,328 from the start of the class period through 3Q 2023, broken down as follows:

---

[2] For purposes of this class definition, the term "Committees" includes the Board of Trustees of the New York Life Insurance Company Employee Progress-Sharing Investment Plan, the Board of Trustees of the New York Life Insurance Company Agents Progress-Sharing Investment Plan, the Fiduciary Investment Committee of the New York Life Insurance Company Employee Progress-Sharing Investment Plan, and the Fiduciary Investment Committee of the New York Life Insurance Company Agents Progress-Sharing Investment Plan, as well as all subcommittees and other committees to the Committees. *Id*. § 1.14.

| Fund | Model #1 | Model #2 |
|---|---:|---:|
| All Cap | $61,271,209 | $54,989,635 |
| Small Cap | $10,031,357 | $9,568,683 |
| Income Builder | $12,033,171 | $4,647,776 |
| Retirement Funds | $3,490,229 | $3,490,229 |
| **TOTAL MAINSTAY FUNDS** | **$86,825,966** | **$72,696,323** |
| FDA default | $6,587,362 | $4,102,938 |
| **GRAND TOTAL** | **$93,413,328** | **$76,799,261** |

Based on this estimate, the $19 million recovery represents approximately 20–25% of the total calculated losses associated with the alleged fiduciary breaches.

6.      Plaintiffs' expert also estimated the profits to New York Life on *all* monies invested in the Fixed Dollar Account (not just defaulted assets) because Plaintiffs' prohibited transaction claims involving the Fixed Dollar Account were not limited to monies invested in the Fixed Dollar Account by default. Based on his analysis, these profits totaled between $8,265,491 and $9,512,443. If these amounts are added to the estimated losses above for purposes of analyzing the recovery, the $19 million Gross Settlement Amount represents a recovery rate of approximately 18–22%.

7.      After accounting for any Attorneys' Fees and Expenses, Administrative Expenses, and Class Representative service awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members in accordance with the Plan of Allocation in the Settlement. *Settlement*, §§ 5.1-5.4.

8.      In summary, the Plan of Allocation provides for calculation of a Settlement Allocation Score for each Class Member based on the sum of his or her underlying Fund Allocation Scores in connection with the Disputed Investments. The Fund Allocation Score for each Disputed Investment is calculated based on the Class Member's level of investment in such Disputed Investment on a monthly basis during the Class Period relative other Class Members, and the amount of estimated losses (or profits, in the case of the Fixed Dollar Account) associated with

such Disputed Investment.[3] *Id.* § 5.1(a). To account for the estimated losses specific to Class Members who were defaulted into the Fixed Dollar Account, any Class Members who were identified as defaulted by Plaintiffs' expert for purposes of his loss analysis (based on data provided by Defendants and the Plans' Recordkeeper) will have their underlying Fund Allocation Score specific to the Fixed Dollar Account multiplied by 1.5. *Id.* § 5.1(a)(v). This 50% enhancement reflects the fact that approximately $4.1 million in losses were calculated for such Fixed Dollar Account defaultees in addition to the approximately $8.2 million in profits from all Fixed Dollar Account investors (a ratio of 50%), based on the most conservative estimates of Plaintiffs' expert.

9.      Once these calculations are completed, the Settlement Administrator will then determine the Entitlement Amount of each Class Member (the amount they will be paid) by calculating each such Class Member's pro rata share of the Net Settlement Amount based on his or her Settlement Allocation Score compared to the sum of the Settlement Allocation Scores for all Class Members. *Id.* § 5.1(b). If the dollar amount of the settlement payment to a Class Member is calculated by the Settlement Administrator to be less than $2.00, then that Class Member's payment or pro rata share shall be zero for all purposes (to minimize administrative expenses associated with any *de minimis* payments), and shall be reallocated among the remaining Class Members on a pro rata basis. *Id.*

10.     Active and Inactive Participants (those with a Plan account balance greater than $0) will automatically receive their share of the Settlement via a deposit to their Plan account. *Id*. § 5.2. Former Participants will automatically receive their payment by check, unless they elect to have their distribution rolled over to an individual retirement account or other eligible employer

---

[3] For purposes of the allocation, the most conservative figures were used (i.e., $54,989,635 for the MainStay U.S. Epoch All Cap Fund, $9,568,683 for the MainStay U.S. Epoch Small Cap Fund, $3,490,229 for the MainStay Retirement Funds, $4,647,776 for the MainStay Income Builder Fund, and $8,265,491 (in profits) for the Fixed Dollar Account). *Id.* § 5.1(a)(i)-(v).

plan. *Id.* § 5.3. The Settlement Agreement also provides for automatic payments to Beneficiaries and Alternate Payees under a Qualified Domestic Relations Order. *Id.* § 5.4. Participants are not required to submit a claim form to receive payment.

11.    Given the risks of litigation (which are outlined in the accompanying Memorandum of Law), the costs and potential delays associated with prosecuting the case through trial and any appeals, and the amounts recovered in similar cases, I believe that the Settlement is fair, reasonable, and adequate. I also believe the plan of allocation and manner of distribution of funds are fair, reasonable, and equitable based on the claims asserted in the action.

## Case Investigation and Proceedings

12.    Cohen Milstein has vigorously prosecuted this action throughout the course of the litigation.

13.    Cohen Milstein conducted a thorough investigation of the relevant facts and claims, subsequently defeated two motions to dismiss (in whole or in part), and served multiple rounds of discovery requests on Defendants.  In addition, we sought third-party discovery from the Plans' current and former investment consultants, NEPC, LLC ("NEPC") and LCG Associates ("LCG"). In total, Defendants produced over 179,000 pages of documents, and the Plans' investment consultants produced over 100,000 pages of additional documents in response to subpoenas.

14.    Deposition discovery was also extensive. In total, we took the depositions of eight defense witnesses, deposed three third-party witnesses (from NEPC, LCG, and the Plans' recordkeeper, Alight Solutions, LLC), and defended ten named Plaintiff depositions.

15.    We also engaged two experienced experts (Dr. Steve Pomerantz as Plaintiffs' investment expert and Marcia Wagner as Plaintiffs' fiduciary process expert), submitted both initial reports and reply reports from those experts, and defended their depositions. In addition, we took the depositions of both of Defendants' rebuttal experts, after receiving their reports.

16.     By the time the Parties engaged in mediation and reached a settlement in this case, all of this work was complete, which helped to ensure the negotiations were fully informed.

**Mediation**

17.     On January 18, 2024, the Parties participated in a full-day mediation with Robert Meyer from JAMS. Mr. Meyer is an experienced mediator who has substantial experience mediating ERISA cases and other class action cases.[4] Following extensive arm's length negotiations throughout the day (which lasted approximately ten hours), the parties reached a settlement-in-principle. The Parties then negotiated the details of the comprehensive Settlement Agreement that is the subject of the present motion. For the reasons explained above and in Plaintiffs' motion papers, I believe the Settlement is fair, reasonable, and adequate.

**Personal Background**

18.     I am a member in good standing of the State Bar of Minnesota, and I am admitted to practice before this Court *pro hac vice*. I also have been admitted in numerous federal courts across the country, including the following:

| United States Supreme Court |
|---|
| 1st Circuit Court of Appeals |
| 2nd Circuit Court of Appeals |
| 3rd Circuit Court of Appeals |
| 4th Circuit Court of Appeals |
| 6th Circuit Court of Appeals |
| 8th Circuit Court of Appeals |
| 9th Circuit Court of Appeals |
| 10th Circuit Court of Appeals |
| District of Minnesota |
| District of Colorado |
| Eastern District of Michigan |
| Western District of New York |
| Eastern District of Wisconsin |

---

[4] Mr. Meyer's biography can be found at https://www.jamsadr.com/meyer/.

19.     I have been actively engaged in the practice of law since 1999, and have substantial class action experience and other complex litigation experience.

20.     For the past thirteen years, at both Cohen Milstein and my former law firm, my practice has focused exclusively on class action cases. I have been appointed class counsel for litigation or settlement purposes in over thirty class action cases in total. In connection with those cases, I have personally negotiated class action settlements providing for more than $450 million in available relief to class members nationwide.

21.     The principal types of class action cases that I have handled are consumer class actions and ERISA class actions. In the course of my former consumer practice, I spearheaded class action litigation against several major financial institutions, including JPMorgan Chase, Bank of America, U.S. Bank, Wells Fargo, Citibank, GMAC Mortgage, RBS Citizens, and MidFirst Bank. For example, I successfully argued contested class certification motions in *Hofstetter v. Chase Home Finance, LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) and *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014), successfully argued before the First Circuit Court of Appeals in *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012), and successfully argued and/or briefed dispositive motions in a number of other consumer class cases, including *Jackson v. Wells Fargo Bank, N.A.*, 2013 WL 5945732 (W.D. Pa. Nov. 6, 2013); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093 (N.D. Cal. 2013); *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255 (N.D.N.Y. 2013); *Berger v. Bank of America, N.A.*, 931 F. Supp. 2d 292 (D. Mass. 2013); *Morris v. Wells Fargo Bank, N.A.*, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012); *Ulbrich v. GMAC Mortgage, LLC*, 2012 WL 3516499 (S.D. Fla. Aug. 15, 2012); *Walls v. JPMorgan Chase Bank, N.A.*, 2012 WL 3096660 (W.D. Ky. July 30, 2012); *Skansgaard v. Bank*

*of America, N.A.*, 896 F. Supp. 2d 944 (W.D. Wash. 2011); and *Wulf v. Bank of America, N.A.*,
798 F. Supp. 2d 586 (E.D. Pa. 2011).

22.     More recently, I have focused on ERISA class action litigation. I was a co-founder
of the ERISA litigation practice at my former law firm, and have continued to focus on ERISA
class action cases since joining Cohen Milstein in March 2022. I have served as counsel of record
in two dozen cases involving retirement plans where classes were certified for litigation and/or
settlement purposes, including *Andrus v. New York Life Ins. Co.*, No. 1:16-cv-05698 (S.D.N.Y.),
*Beach v. JPMorgan Chase Bank, N.A.*, 1:17-cv-00563 (S.D.N.Y.) (Furman, J.), and other cases in
the Southern District of New York. A list of these cases is provided below:

- *Andrus v. New York Life Ins. Co.*, No. 1:16-cv-05698 (S.D.N.Y.);

- *Main v. Am. Airlines, Inc.*, No. 3:16-cv-01033 (N.D. Tex.);

- *Sims v. BB&T Corp.*, No. 1:15-cv-00732 (M.D.N.C.);

- *Stevens v. SEI Invs. Co.*, No. 2:18-cv-04205 (E.D. Pa.);

- *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614 (C.D. Cal.);

- *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 5:16-cv-03698 (N.D. Cal.);

- *In re M&T Bank Corp. ERISA Litig.*, No. 1:16-cv-00375 (W.D.N.Y.);

- *Wildman v. Am. Century Servs., LLC*, No. 4:16-cv-00737 (W.D. Mo.);

- *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 1:15-cv-09936 (S.D.N.Y.);

- *Clark v. Oasis Outsourcing Holdings Inc.*, No. 9:18-cv-81101 (S.D. Fla.);

- *Velazquez v. Mass. Fin. Servs. Co.*, No. 1:17-cv-11249 (D. Mass.);

- *Beach v. JPMorgan Chase Bank, N.A.*, No. 1:17-cv-00563 (S.D.N.Y);

- *Intravaia v. Nat'l Rural Elec. Coop. Assoc.*, No. 1:19-cv-00973 (E.D. Va.);

- *Larson v. Allina Heath Sys.*, No. 17-cv-03835 (D. Minn.);

- *Brotherston v. Putnam Invs., LLC*, No. 1:15-cv-13825 (D. Mass.);

- *Mass v. The Regents of the Univ. of Cal.*, No. RG17-879223
  (Alameda Cnty. Sup. Ct.);

- *Moitoso v. FMR LLC*, No. 1:18-cv-12122 (D. Mass.);

- *Reetz v. Lowe's Cos., Inc.*, No. 5:18-cv-00075 (W.D.N.C.);

- *Toomey v. Demoulas Super Mkts., Inc.*, No. 1:19-cv-11633 (D. Mass);

- *Bhatia v. McKinsey & Co., Inc.*, No. 1:19-cv-01466 (S.D.N.Y.);

- *Kirk v. Ret. Comm. of CHS/Cmty. Health Sys., Inc.*, No. 3:19-cv-00689 (M.D. Tenn.);

- *Baker v. John Hancock Life Ins. Co. (U.S.A.)*, No. 1:20-cv-10397 (D. Mass.);

- *Kinder v. Koch Indus., Inc.*, No. 1:20-cv-02973 (N.D. Ga.); and

- *Hill v. Mercy Health Sys. Corp.*, No. 3:20-cv-50286 (N.D. Ill.).

23.    I have tried three ERISA class action cases: the *Putnam* case in 2017, the *American Century* case in 2018, and the *Lowe's* case in 2021. I also have negotiated numerous settlements that have received final court approval, including in *Andrus v. New York Life*, *American Airlines*, *SEI*, *Allianz*, *Fujitsu*, *M&T*, *Deutsche Bank*, *Oasis Outsourcing*, *Massachusetts Financial Services*, *National Rural Electric Cooperative Association* ("NRECA"), *Putnam*, *Huntington*, *FMR* ("Fidelity"), *Lowe's* (partial settlement with one defendant), *Demoulas*, *McKinsey*, *CHS*, *John Hancock, Koch*, and *Mercy Health*.[5]

24.    In several of the above cases, I successfully briefed and/or argued contested class certification motions, including *BB&T*, *Allianz*, *American Century*, *Deutsche Bank*, *JPMorgan Chase*, *Putnam*, and *University of California*, and reached stipulations concerning class certification in cases with Massachusetts Financial Services, Fidelity, Lowe's, and John Hancock.

25.    I have spoken by invitation at several national conferences and seminars on ERISA litigation, including: (1) a Practicing Law Institute seminar on ERISA Investment Basics, where I served on a panel regarding "401(k) Plan Fiduciary Fundamentals" (March 21, 2023); (2) five annual employee benefits programs sponsored by the American Law Institute (September 2018 –

---

[5] In addition to the foregoing, I also helped litigate *BB&T*, *JPMorgan Chase*, and *Allina* to court-approved settlements, but did not serve as lead counsel and was not directly involved in the negotiation of those settlements.

October 2022); (3) a webinar on "Fee Litigation" sponsored by the American Bar Association (November 12, 2019); (4) a Professional Liability Directors & Officers conference on a panel regarding "Plan Fee Litigation" (February 6, 2019); (5) an American Bankers Association Insurance Risk Management Conference on a panel concerning excessive fee ERISA class actions (February 5, 2019); (6) an American Law Institute webcast on Excessive Fee Litigation (November 28, 2018); (7) the American Conference Institute's National Forum on ERISA Litigation (on both March 1, 2017 and November 2, 2017), where I was a member of the "Fiduciary Investment Litigation Update" panel; and (8) the Retirement Advisor Council's annual meeting (May 22, 2018), where I was a member of a panel on "The Moving Litigation Frontier."

26.     Prior to my work at Cohen Milstein and my former firm, I served as the Manager of the Complex Litigation Division of the Office of the Minnesota Attorney General. During my tenure (from February 2008 to March 2010), I supervised and handled a large number of complex matters. For example, in June and September of 2009, I co-chaired a three-week trial involving claims for fraudulent sales of annuities and legal plans to over 1,200 Minnesota senior citizens, which ultimately resulted in a favorable judgment from the trial court. In addition, I handled a significant consumer enforcement action against Sprint Nextel relating to wrongfully imposed contracts and termination fees, which resulted in a comprehensive settlement in October 2009.

27.     I also had significant prior class action experience, including two multi-week class action trials: a statewide wage and hour class action against Wal-Mart Stores in Minnesota (tried in 2007) and a landmark class action against the University of Michigan Law School, *see Grutter v. Bollinger*, 539 U.S. 306 (2003).

28.     I received my law degree from University of Minnesota Law School in 1999, and my B.A. from Dartmouth College in 1995.

**Law Firm Background**

29.    I am honored to be a member of Cohen Milstein's ERISA litigation team. Cohen Milstein is widely-recognized as a leader in class action litigation, and has a highly-regarded ERISA class action practice.

30.    Cohen Milstein was named one of the ten "Most Feared Plaintiffs Firms" by *Law360*, and *Forbes* has called the firm a "class action powerhouse." In 2022, the *U.S. News - Best Lawyers* "Best Law Firms" rankings recognized Cohen Milstein among the "Top Firms Nationally."

31.    Cohen Milstein's Employee Benefits/ERISA Practice Group has been specifically recognized for the quality of its work. In 2022, our Practice Group was named by *Law360* as "Practice Group of the Year – Benefits" and earned that distinction for three out of four years. *Chambers USA* has also given Cohen Milstein its highest ranking for ERISA litigation on behalf of plaintiffs nationwide (Band 1). In conferring this honor, *Chambers USA* noted that "Cohen Milstein Sellers & Toll is highly regarded for its representation of plaintiffs in ERISA class actions. The firm is regularly sought out to represent plan participants and beneficiaries in a range of ERISA claims including breach of fiduciary duty."

32.    Cohen Milstein's Employee Benefits/ERISA Practice Group has successfully litigated and resolved numerous ERISA cases on behalf of its clients, including in the area of proprietary funds affiliated with 401(k) plan sponsors. Within the past 2½ years alone, the Group received final approval of three class action settlements in cases involving proprietary funds: *Becker v. Wells Fargo & Co.*, No. 0:20-cv-02016, ECF 283 (D. Minn. Aug. 31, 2022) ($32.5 million); *Feinberg v. T. Rowe Price Group, Inc., et al.*, No. 1:17-cv-00427, ECF 258 (D. Md. July 6, 2022) ($7 million); and *Baird v. BlackRock Institutional Trust Co.*, No. 4:17-cv-01892, ECF 490

(N.D. Cal. Nov. 3, 2021) ($9.65 million). Moreover, the Group previously has achieved extraordinary results in other ERISA cases as well, including *In re Merrill Lynch, & Co., Inc. Securities, Derivative and ERISA Litigation*, No. 07-cv-10268 (S.D.N.Y.) ($75 million settlement), and *In re Beacon Associates Litigation*, No. 09-cv-00777 (S.D.N.Y.) ($219 million).

33.    We also have achieved favorable pretrial rulings in several recent ERISA cases, including this case, *see* ECF 58 (denying motion to dismiss in part); ECF 93 (denying motion to dismiss in full); and *Lloyd v. Argent Tr. Co.*, 2022 WL 17542071 (S.D.N.Y. Dec. 6, 2022) (denying motions to compel arbitration and motion to dismiss for lack of standing). Further, we achieved a favorable appellate ruling in *Harrison v. Envision Management Holding, Inc. Board of Directors*, 59 F.4th 1090 (10th Cir. 2023).

34.    Each of my colleagues who are counsel of record in this case are seasoned class action litigators with experience handling high-profile ERISA cases such as this.

35.    The Chair of the Practice Group, Michelle Yau, has approximately 20 years of ERISA litigation experience since graduating from Harvard Law School in 2003 (including as an Honors Program attorney at the Department of Labor before joining Cohen Milstein), and also has financial expertise as a former financial analyst in the Financial Institutions Group of the Investment Banking Division at Goldman Sachs. Like myself, Ms. Yau is a frequent speaker at ERISA seminars across the country.

36.    Eleanor Frisch was a lead author of plaintiffs' appeal brief in *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17, 31 (1st Cir. 2018), a successful appeal that resulted in a partial vacatur of the trial court's adverse judgment on plaintiffs' ERISA claims (and ultimately, to an eight-figure settlement post-appeal). Ms. Frisch also has significant additional class action

experience since graduating *magna cum laude* from the University of Minnesota Law School in 2014 and clerking for the Eighth Circuit.

37.     Daniel Sutter was recently named by *Chambers USA* as an "Associate to Watch" in the area of plaintiff-side ERISA Litigation, and has extensive experience litigating ERISA class action cases since graduating from George Washington University Law School in 2016 and joining our Practice Group. Before that, he also worked for Cohen Milstein as both a law clerk and analyst.

38.     Jacob Schutz served with me on the *Putnam* trial team and also served as counsel of record in several ERISA class cases with me, including the *Deutsche Bank* case in this District and the *M&T Bank* case in the Western District of New York. Mr. Schutz earned his undergraduate degree from the University of Pennsylvania and his law degree from the University of Minnesota.

39.     Caroline Bressman also has experience litigating multiple ERISA class actions, and is an adjunct faculty member at the University of Minnesota Law School. Ms. Bressman earned her undergraduate degree from St. Olaf College and her law degree from the University of Minnesota Law School.

40.     Further information regarding Cohen Milstein's Employee Benefits/ERISA Practice Group and the attorneys in the Group is available at https://www.cohenmilstein.com/practice-area/employee-benefits-erisa.

41.     If appointed Class Counsel, Cohen Milstein will continue to diligently handle this Action and attend to matters relating to the Settlement as provided by the Settlement Agreement.

42.     I am not aware of any conflicts of interest that would impair or impede our ability to represent Plaintiffs and the Class Members as we have done to date.

### Settlement Administrator and Escrow Agent

43.     Plaintiffs solicited bids from three potential settlement administrators, and have retained Analytics Consulting LLC ("Analytics") as the Settlement Administrator. Analytics

provided the lowest bid among the candidates and has extensive experience handling similar ERISA settlements, including the court-approved settlements in *Andrus v. New York Life Ins. Co.*, No. 1:16-cv-05698 (S.D.N.Y.) and *Beach v. JPMorgan Chase Bank, N.A.*, 1:17-cv-00563 (S.D.N.Y.) (among others).

       44.      Plaintiffs have retained Eagle Bank as the Escrow Agent for the Qualified Settlement Fund. Eagle Bank previously served as the escrow agent in connection with the ERISA class action settlement in *Becker v. Wells Fargo Co.*, No. 0:20-cv-02016 (D. Minn.) (another case involving funds affiliated with the plan sponsor), and has agreed to serve as the Escrow Agent for a fraction of the amount that other financial institutions have charged for this service.

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: February 26, 2024                        */s/ Kai Richter*
                                            Kai Richter